UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United Central Bank, | ) |
| Plaintiff, | ) Case No. 10-C-331 |
| v. | ) Hon. Judge Robert W. Gettleman |
| Kanan Fashions, Inc. et al., | ) Mag. Judge Michael T. Mason |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge.

Presently before this Court is a motion to vacate expedited discovery filed by defendants Kanan Fashions, Inc. ("Kanan Fashion"), Creative Warehousing (Chicago) LLC ("CWC") and Kanan Holdings, LLC (collectively the "Kanan entities"), and Varsha Shah and Mehul Shah, and plaintiff United Central Bank's ("plaintiff" or "United Central") motion to compel responses to its expedited discovery requests. For the reasons set forth below, defendants' motion is denied and plaintiff's motion is granted in part and denied in part.

### I.  BACKGROUND

United Central filed this action on January 18, 2010, seeking to recover approximately $26.5 million in loans issued to and/or guaranteed by defendants. In the complaint, plaintiff alleges that it entered into a purchase agreement with the Federal Deposit Insurance Corporation ("FDIC") on or around July 31, 2009, by which it acquired certain assets of "Mutual Bank" and became the successor in interest to Mutual Bank with regard to the obligations at issue in this lawsuit. Those assets include

four loan agreements (the "Loans") entered into by the Kanan entities as borrowers. The individual defendants guaranteed the Loans (the "Guaranty Agreements"). Plaintiff avers that the largest loan is to Kanan Fashions. In subsequent briefing before this Court, plaintiff elaborates on that loan, and explains that it is the holder of a promissory note executed by Kanan Fashions which matured on August 22, 2009. That loan is currently in default. According to plaintiff, as of January 1, 2010 the amount due under the loan exceeded $24.2 million. Plaintiff further states that the loan is secured by a recorded commercial security agreement against Kanan Fashions' "current and future inventory, accounts receivable, instruments, documents, chattel paper and other rights to payment."

On January 19, 2010, plaintiff filed a verified emergency motion for temporary restraining order ("TRO") and preliminary injunction. In that motion, plaintiff alleged that Kanan Fashions had been and would continue liquidating its inventory of clothing and secured collateral by selling the clothing at a "make-shift garage sale for prices far below manufacturer suggested retail prices." Plaintiff further stated that Kanan Fashions was storing additional inventory with Chetak Chicago, LLC, a non-party, which violated Kanan Fashions' obligations to the plaintiff. United Central argued that defendants "continued liquidation, and transfer to third parties of its inventory, raw materials, work in progress and all other secured collateral . . . violates [plaintiff's] interest in this property," and that it would suffer irreparable injury unless Kanan Fashions was "restrained from wrongfully liquidating its inventory." In the emergency motion, plaintiff requested that the District Court require Kanan Fashions to allow an inspection of the inventory and collateral, produce "all documentation regarding the

2

contracts for purchase of the inventory," and produce information regarding prior warehouse or garage sales. Plaintiff asked the District Court to restrain the Kanan entities from any future sales, and set this matter for an evidentiary hearing on a preliminary injunction.

Defendants opposed plaintiff's motion. On January 20, 2010, defendants filed the affidavit of defendant Mehul Shah ("Shah"). In that affidavit, Shah states that he "own[s] and control[s]" all of the Kanan entities, and that Varsha Shah ("Varsha") is his wife. Shah averred that the Kanan entities had gross revenues in excess of $45 million in 2008. He further avers that the clothing sale identified in plaintiff's motion for a TRO was in fact a sale held by the First Free Methodist Church of Aurora, to whom Kanan Fashions had donated "about 1,500 to 2,000 pieces of obsolete, damaged and out-of-date clothing." Finally, Shah stated that after the donation "Kanan was left with over 200,000 pieces of good, salable inventory" which it moved to "secure locations to protect from theft."

After a hearing, the District Court denied plaintiff's motion for a TRO and granted the parties leave to conduct expedited discovery. The Court instructed plaintiff to file a motion for a preliminary injunction, if necessary, after conducting "a little" discovery, and referred this case to Magistrate Judge Mason for discovery supervision. In a joint status report filed before this Court, the parties explained that expedited discovery "will relate to the location, value and disposition of the collateral and proceeds thereof." We generally adopted the parties' agreement regarding the scope of expedited discovery, and ordered the parties to complete that discovery by March 15, 2010. Nothing in that Order, or in any other order issued by this Court or the District Court, precludes the

3

parties from issuing non-expedited discovery (*i.e.* discovery on the merits) or relieved the parties of their obligation to provide initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A).

On February 22, 2010, following the entry of the expedited discovery schedule, defendants filed their answer and counterclaim. In the counterclaim, defendants assert that Kanan Fashions in an apparel importer and wholesaler who purchases fabric in China, India and other countries. Kanan Fashions ships the fabric to Sri Lanka and parts of China to be manufactured into garments, and then ships those garments to the United States where they are stored in a warehouse pending delivery to apparel retailers such as Kohl's. Defendants contend that at all times relevant, Kanan Fashions financed these activities through letters of credit issued through Mutual Bank and its agents. Defendants allege that Mutual Bank also financed CWC's purchase of a warehouse in Aurora, Illinois. CWC leases that warehouse to Kanan Fashions, which uses it to store the aforementioned garments. Defendants allege that on August 5, 2009, United Central advised Kanan Fashions' representatives that it would not open, process or honor any letters of credit. Defendants assert that plaintiff's actions were a material breach of the Loans and led to the "destruction and collapse" of Kanan Fashions and CWC's business. Defendants seek damages for plaintiff's breach of the Loans, and argue, as an affirmative defense, that any amounts owed by defendants under the Loans are to be set off by the damages alleged in the counterclaim.

## II.     MOTION TO VACATE

Defendants move to vacate the District Court's January 20, 2010 Order granting leave to conduct expedited discovery and, by extension, the expedited discovery

schedule set by this Court on February 11, 2010. Defendants argue that expedited discovery should not be had because "there does not appear to be a basis as a matter of law for the requested TRO/preliminary injunction." Defendants request that if this Court "disagrees," we enter a modified TRO or preliminary injunction and require plaintiff to place a security bond. In the alternative, defendants argue that expedited discovery is unduly burdensome in light of Kanan Fashions' staffing shortages and limited resources. Finally, defendants contend that plaintiff has abused the discovery process. Each of these arguments is addressed below.

### A. The Merits of the Parties' Claims and Defenses Are Not Before this Court

Defendants devote a significant portion of their briefing to arguing the merits of plaintiff's claims and their counterclaim. These issues are not properly before this Court. We will not determine if there is any merit to defendants' assertion that plaintiff "materially breached the Loan" through its purported "refusal to honor lifeblood letters of credit." That, and all other dispositive issues, are best reserved for summary judgment or trial before the District Court.

In their motion, defendants suggest that they may be prejudiced by the March 15, 2010 expedited discovery cut-off since, after they file their (now filed) February 22, 2010 counterclaim, "plaintiff will . . . presumably have 21 days to answer. By then the expedited discovery will be closed and the unnecessary damage done." In order to resolve this concern, defendants ask this Court to "require" plaintiff to advise us "now of a sufficient summary of its defenses, if any, for the Court to consider whether there is a viable defense" and, if there is no defense, "the security agreements which plaintiff

seeks to enforce . . . must be deemed a nullity." This request is denied for the reasons stated above. However, this Court credits defendants' concerns regarding their ability to review plaintiff's answer to the counterclaim before serving any expedited discovery requests – to the extent such requests are available under the limited scope of expedited discovery. We also recognize that defendants cannot instantaneously produce the additional discovery responses ordered below, and that plaintiff will require additional time to review the amended responses. Accordingly, the close of expedited discovery is extended to April 5, 2010.

### B. Defendants Have Not Shown that the Burden of Expedited Discovery Outweighs its Likely Benefit

Next, defendants argue that expedited discovery should not take place due to the undue burden. See Fed. R. Civ. P. 26(b)(2)(C)(iii) (authorizing the court to limit the frequency or extent of discovery where "the burden or expense of the proposed discovery outweighs its likely benefit considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues"). In their motion, defendants state that Kanan Fashions "had to terminate virtually all of its employees, in excess of 60" and that only one employee, Paresh Joshi ("Joshi"), remains. Defendants contend that it is "simply impossible" for Joshi, Shah and defense counsel to meet the expedited discovery schedule, especially in light of "the demands of filing an answer and counterclaim (due February 22, 20[10]), other requirements of federal court procedure and investigate and prosecute the merits of this multimillion dollar dispute." During a status hearing before this Court, defense counsel reported that Joshi

is suffering from certain medical problems which further limits defendants' ability to respond to outstanding discovery.

Defendants do not cite any authority in support of their request. See *Silva v. Fortis Benefits Ins. Co.*, 437 F. Supp. 2d. 819, 827 (N.D. Ill. 2006) (stating that the burden is on the party seeking protection from discovery that it claims is unduly burdensome). Moreover, this Court is not convinced that defendants' staffing shortage is an appropriate basis to vacate Judge Gettleman's Order. As plaintiff persuasively argues in its response, the expedited discovery directly relates to the issues at stake in this multi-million dollar action. Further, from a practical standpoint, Joshi and Shah need only pull the inventory, sales and accounting documents from defendants' files and/or computer system. It is defense counsel, not defendants' employees, who must spend time reviewing the documents for relevance and privilege. To the extent that Joshi and Shah's health problems and/or other obligations do not allow them sufficient time to locate potentially responsive materials, defendants may need to engage temporary assistance. Similarly, if current defense counsel is unable to review the potentially responsive materials within the time frame set by the court, defendants must involve additional attorneys in this case. Alternatively, counsel could discuss the feasibility of entering into a "clawback" agreement.

This Court is sympathetic to the challenges imposed under an expedited discovery schedule. We also recognize the significance of the amount in controversy, and plaintiff's contention that Kanan Fashions may be selling its inventory at drastic reductions, or otherwise disposing of the collateral without the bank's prior written consent. This Court's February 11, 2010 Order setting the expedited discovery

schedule reflected a balancing of those concerns. That is why we determined that the parties should respond to expedited discovery in ten days, rather than in seven as advocated by plaintiff or fourteen as requested by defendants. Defendants' request to vacate the expedited discovery as unduly burdensome is denied. To the extent defendants challenge the scope of expedited discovery and/or specific discovery requests, those issues are discussed below.

Defendants also contend that the District Court's Order should be vacated because plaintiff "may seek strategic advantages in putting defendants . . . through such extensive discovery on an expedited basis." As the sole example of this purportedly improper conduct, defendants state that "by notice dated January 15, 20[10]," and prior to commencing this action, United Central noticed a UCC sale of Kanan Fashions' inventory for January 26, 2010. Defendants' representatives appeared for the sale, but "plaintiffs' employees knew absolutely nothing of any sale and no sale was in fact even undertaken." Defendants state, without further explanation, that it is "also more than curious" that plaintiff did not explain, in its response brief, why the sale did not occur. We disagree. Defendants' argument regarding the UCC sale is a petty dispute which does not establish any abuse of the discovery process. This Court will not concern itself with such trifles.

**C.      Defendants Cannot Avoid Discovery by Agreeing to a Modified TRO**

Defendants state that if this Court determines plaintiff "has a viable defense to the charge that it materially breached the Loan Agreements," then they have "no choice to accept the TRO that [the District Court] properly denied." However, defendants request that this Court impose "minor and appropriate modifications" to the TRO and

8

order plaintiff to post a bond.

Plaintiff's motion for a TRO [10] requested seven specific types of relief. The modified TRO defendants propose includes only two of them. Plaintiff asked the District Court to restrain Kanan Fashions from "further garage or warehouse sales or liquidation of its inventory other than sales to customers in the ordinary course of business." Defendants state that they will agree to refrain from "any sales of inventory not in the ordinary course of business." Defendants argue that this concession renders the remaining relief requested in the TRO moot or "unnecessary."

Plaintiff responds that the proposed TRO is "inadequate" and defendants' interpretation of sales in the "ordinary course of business" is overly broad. Plaintiff also states that without the requested expedited discovery, it could not develop the factual record regarding the secured collateral as would be required for an evidentiary hearing.

Defendants are critical of plaintiff's objection to their proposed modified TRO. They contend, in the reply brief, that it is "eminently clear" that plaintiff's refusal to "accept any preliminary restraints" is "so that they can roam free and crush the defendants with expedited discovery." Defendants state that plaintiff's "thinly-veiled purpose" to "crush[] defendants before they can get to the merits of the action" is "now clear as a bell" and "simply extraordinary." In support, defendants rely on the "simply explosive" Affidavit of David Clark (the "Clark Affidavit"), a former employee of Mutual Bank and United Central. Defendants assert that the Clark Affidavit "makes clear that of course plaintiff had an obligation to so act but refused to do so without any legal basis" and "puts to rest any doubt what plaintiff's true purpose is and that it has no

9

defense." Having "smoked out" plaintiff, defendants ask this Court to stop plaintiff's ability to "roam free with a blank check for expedited discovery before eventually deciding on what, if any, restraints to seek." This Court does not appreciate such hyperbole.

Defendants have not provided any legitimate basis for this Court to vacate the District Court's Order authorizing expedited discovery. We are not convinced by defendants' request that this Court reconsider the District Court's denial of plaintiff's request for a TRO, or otherwise preclude plaintiff from discovering information regarding the "location, value and disposition of the collateral [used to secure the Loans] and proceeds thereof." The statements in plaintiff's response brief and accompanying exhibits, including the summary of shipments from the U.S. Department of Customs, further convince us of the need for expedited discovery. Finally, defendants' request that we require plaintiff to post a security bond pursuant to Fed. R. Civ. P. 65(c) is denied without prejudice. Defendants may raise that issue with the District Court in connection with the proposed preliminary injunction hearing.

## III. MOTION TO COMPEL

Also before this Court is plaintiff's motion to compel defendants to respond to its expedited discovery requests served on February 8, 2010. Defendants served their objections to United Central's expedited discovery requests on February 12, 2010. Copies of those objections are attached as exhibit B to plaintiff's motion. On February 17, 2010, defendants served their answers to interrogatories. Defendants attach those answers as exhibit 3 to their response brief. This Court also notes that defendants produced approximately three hundred pages of documents in response to plaintiff's

expedited discovery requests.

The parties dispute the scope of expedited discovery. The majority of plaintiff's discovery requests seek information dating back to July 31, 2008. In its motion, United Central states that it "needs this information to establish a baseline of normal operations so that it has context for the time period when its collateral[1] appears to have largely disappeared." Defendants contest plaintiff's efforts to discover information regarding the past value of the collateral and accounts receivable. In their response brief, defendants argue that "this supposed need for 'context' may be a justification for discovery o[n] the merits, but it has nothing to do with expedited discovery." Relying on a limited reading of the relief sought in the previously denied TRO, defendants posit that the "past value" of the inventory is "irrelevant to plaintiff's request to restrain Kanan [Fashions] from conducting any further garage or warehouse sales," as "plaintiff's restraint does not depend on the 'value' of the inventory." Defendants' underlying assumption – that expedited discovery is limited to plaintiff's efforts to preclude future sales – is simply not correct. Nevertheless, this Court credits defendants' argument that information regarding the collateral and their accounts receivable prior to July 31, 2009, the date upon which plaintiff acquired certain assets of Mutual Bank, is beyond the scope of expedited discovery. Plaintiff has not shown that expedited discovery of these materials is warranted.

---

[1] In its discovery requests, plaintiff defines "collateral" as "all property of any type (real or personal) pledged to secure indebtedness by any of the defendants to Mutual Bank or United Central, and includes but is not limited to the collateral described in the April 7, 2008 Promissory Note from Kanan Fashions Inc. to Mutual Bank, and the collateral described in the Commercial Security Agreement dated June 22, 2006, between Kanan Fashions, Inc. and Mutual Bank." The Court adopts this definition for purposes of this Opinion.

In their response brief, defendants state that "all of [their] objections [a]re to *expedited* discovery and *none* were addressing normal timetable discovery." Plaintiff served its expedited discovery requests on February 8, 2010. To the extent any of plaintiff's requests exceed the scope of expedited discovery, defendants must still respond to the requests under the normal discovery schedule. Those responses would be due by March 10, 2010. See Fed. R. Civ. P. 33(b)(2) (allowing the responding party 30 days to serve its answers and objections to interrogatories) and 34(b)(2) (stating that the party to whom requests to produce are directed must respond within 30 days). In recognition of the facts placed before this Court regarding defendants' computer and staffing problems, and in order to provide time for defendants to conduct a thorough and complete search for responsive materials, that deadline is extended by two weeks. Accordingly, defendants are to respond to discovery on the merits by March 24, 2010.

With regard to the specific discovery requests at issue, plaintiff seeks to compel discovery of the location, value and disposition of the collateral and defendants' accounts receivable since July 31, 2009. In opposing these requests, defendants rely on Judge Gettleman's instruction that plaintiff should "motion [this case] up for a preliminary injunction after you've done a little discovery." Defendants argue, with minimal explanation, the expedited discovery is limited to materials relating to "future garage or warehouse sales or liquidating of its inventory other than sales to customers in the ordinary course of business," and therefore does not encompass any past sales or disposition of the collateral. Thus, defendants state that plaintiff impermissibly "tries to bootstrap such limited expedited discovery into crushing wide-ranging expedited discovery way beyond that necessary." We disagree.

As plaintiff recognizes in its reply, there is no legal precedent that limits United Central to the specific relief sought in the motion for TRO. The parties' pleadings define the claims and defenses at issue in this case. Despite defendants' arguments to the contrary, it is not "clear" that the District Court intended to limit expedited discovery to "future sales of inventory not in the ordinary course of business." Judge Gettleman offered plaintiff an opportunity to conduct expedited discovery on defendants' alleged liquidation of the collateral, and did not otherwise specify the scope of that discovery. The District Court then referred this matter for discovery supervision. The parties advised this Court, in their initial status report, that expedited discovery will "relate to the location, value and disposition of the collateral and proceeds thereof." Thus, it is reasonable to conclude that the parties – and the District Court – anticipated that expedited discovery would encompass the location, value, and disposition, through any type of sale or donation, of the collateral subsequent to July 31, 2009.

Even if that was not the case, we nevertheless find that this type of expedited discovery is warranted. Accordingly, this portion of plaintiff's motion is granted. Defendants are to provide a complete response to interrogatory nos. 1, 2 and document request no. B.2 by March 12, 2010. To the extent they have not already done so, defendants must produce a witness to testify pursuant to Fed. R. Civ. P. 30(b)(6) on topics 2 and 4 on an agreed upon date no later than March 26, 2010. Defendants' objection to these requests as "beyond the scope of expedited discovery" is overruled. However, plaintiff has not shown that an expedited response to document request no. B.1.a., which seeks "detailed accounts payable aging reports," is necessary. Accordingly, defendants are to respond to that request in connection with discovery on

the merits.

Plaintiff also requests that we order defendants to provide a complete response to document request no. A.3 (seeking materials relating to the "disposition, donation or sale of any collateral and/or proceeds of collateral other than sale of inventory in the ordinary course of business") and interrogatory no. 2 (asking defendants to identify "all dispositions, donations or sales of collateral since July 31, 2009"). Defendants' objection to these requests as beyond the scope of expedited discovery is overruled for the reasons stated above. Defendants also object to interrogatory no. 2 "to the extent it requests any information regarding sales in the ordinary course of business." In their response brief, defendants argue that plaintiff "does not need evidence of *any* sales for its preliminary injunction to restrain certain future sales. Notwithstanding, defendants *have* still provided information for past non-ordinary course sales going back to July 31, 2009." Defendants do not identify "non-ordinary course" or "ordinary course" sales, or describe the differences between them.

We are not persuaded by defendants' efforts to limit plaintiff's requests to unidentified "non-ordinary course" sales. The materials sought through request no. A.3 and interrogatory no. 2, including any sales to "so-called secondary markets" and sales made in the ordinary course of business, are relevant and must be produced and/or identified. To be clear, this Court finds that information and materials related to the disposition, donation or sale of any collateral subsequent to July 31, 2009, regardless of the form or type of sale, is within the scope of expedited discovery. Defendants are to amend their responses to request no. A.3 and interrogatory no. 2 by March 12, 2010. The remaining materials that are responsive to request no. A.3 (*i.e.* those involving the

14

disposition, donation or sale of any collateral prior to July 31, 2009) should be produced in connection with discovery on the merits.

Next, plaintiff seeks information regarding the value of the collateral from June 30, 2008 to the present (request no. A.7) and various annual and monthly accounting reports relating to the collateral (request no. B.1.c). This request is granted in part for the reasons stated above. Defendants are to respond to the expedited portion of these requests by March 12, 2010 and produce responsive materials for the June 30, 2008 through July 30, 2009 time period by March 24, 2010.

Finally, plaintiff moves to compel a complete response to interrogatory no. 3 which asks defendants to "identify all customers, suppliers, and manufacturers," as well as requests to produce nos. A.4 and A.5, which seek materials relating to contracts and communications with suppliers, manufacturers and customers. Defendants argue that these requests are not within the scope of expedited discovery. We agree. Defendants are to respond to the requests by March 24, 2010, in connection with discovery on the merits.

In their response brief, defendants challenge this Court's *sua sponte* decision to grant plaintiff leave to issue additional interrogatories regarding the "Raven" matter. During the February 25, 2010 status hearing, plaintiff's counsel reported that while inspecting CWC's warehouse, United Central's representative observed several boxes labeled "Raven, Inc." Defendants assert that the Raven transaction "is entirely proper" and chastise plaintiff for "wait[ing] six days to raise a sound bite with the Court," rather than asking defense counsel for an explanation. Defendants request that plaintiff correct its statement to the Court, and explain "why it is that it did not contact

15

defendants' counsel for an explanation about Raven." This is unnecessary. To the extent defendants request further briefing of this issue and/or seek to quash this Court's Order granting plaintiff leave to issue the additional interrogatories, those requests are denied.

## IV. CONCLUSION

Wherefore, for the reasons stated above, defendants motion to vacate the order for expedited discovery is denied and plaintiff's motion to compel is granted in part and denied in part. Defendants are to serve amended responses to plaintiff's expedited discovery and produce all materials responsive to those requests by March 12, 2010. Unless otherwise agreed by the parties, defendants are to respond to the remaining discovery requests, including those which this Court has found to be more appropriate for discovery on the merits and any other requests not explicitly addressed herein, by March 24, 2010. Nothing in this Order is intended to preclude defendants from raising an objection on the basis of the attorney-client or work product privilege.

ENTERED:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

DATED: **March 5, 2010**