# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 10 C 331 | **DATE** | 8/12/2010 |
| **CASE TITLE** | United Central Bank vs. Kanan Fashions, Inc. Et al | | |

**DOCKET ENTRY TEXT**

Plaintiff's Corrected Motion for Protective Order Limiting Discovery [89] is granted in part and denied in part. For further details, see below.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Plaintiff United Central Bank ("the Bank") moves this Court for a protective order placing certain limitations on the discovery of electronically-stored information ("ESI") pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. In particular, the Bank is seeking the following limitations: (1) that discovery of ESI be limited to the time frame of June 1, 2009 through November 19, 2009; (2) that the Bank be permitted to produce ESI in TIF format rather than native format; and (3) that the Court shift to Defendants the cost of producing ESI.[1] For the reasons set forth below, this Court: (1) grants the Bank's request to limit the time frame for ESI to June 1, 2009 to November 19, 2009; (2) grants the Bank's request to produce ESI in TIF format; and (3) denies the Bank's request for cost-shifting. We address each issue below.

Date Range for ESI

In its Complaint, the Bank alleges that it entered into a purchase agreement with the FDIC on or around July 31, 2009 by which it acquired certain assets of Mutual Bank. Those assets include four loan agreements (the "Loans") extending funds and/or letters of credit to Defendants. The Bank alleges that the Loans are all in default, and seeks damages in excess of $26 million, plus interest, attorneys' fees and costs. Defendants have denied the Bank's material allegations. Defendants have also filed a counterclaim asserting that the Bank's failure to open, process or honor any existing or new letters of credit in favor of the Defendants was a material breach of the Loans, which led to the collapse of Defendants' business.

Defendants have served the Bank with three sets of document requests (the "Requests"), which seek the production of documents dating back as far as January 1, 2004. The Bank argues that this date range is too broad and goes well beyond the relevant time frame for Defendants' counterclaims. Instead, the Bank argues that the relevant time period begins when the Defendants' first sought renewal of one of the Loans

from Mutual Bank and when the Bank acquired the loans in July, 2009. The Bank further states that the relevant time frame ends when Defendants defaulted on the last of the Loans in November of 2009. The Bank argues that, given the cost of ESI and the minimal relevance of any documents outside of this date range, producing the requested ESI without further limitation would be unduly burdensome. We agree. We adopt the Bank's proposed date range and limit the Bank's ESI production to the period of June 1, 2009 (which includes a full month prior to the date on which Defendants allege Mutual Bank agreed to renew one of the Loans) though November 19, 2009 (the date on which Defendants were notified the last Loan was in default).

Defendants argue that the relevant time frame for ESI should at least date back to February 1, 2009 because the Bank's affirmative defenses assert that, prior to June 1, 2009, Defendants provided the Bank with incorrect or false statements about the inventory used to secure the Loans. Defendants also state that Mutual Bank hired an accounting firm, Wolf & Co, to investigate Defendants' operations and inventory, and Defendants argue that they should be entitled to any documents regarding Wolf & Co.'s work in 2009. In its Reply brief, the Bank states that it will provide Defendants with any non-privileged documents regarding the Wolf & Co. report. The Court also orders that the Bank provide Defendants with any documents supporting its affirmative defenses, if it has not already done so.

Defendants also argue that the time frame for ESI discovery should extend beyond November 19, 2009 because sometime after this date, the Bank hired a private investigator to look into the issues regarding Defendants' collateral. The Bank responds that it has already produced all unprivileged documents regarding this investigation. Therefore, we are not inclined to extend the relevant date range beyond November 19, 2009.

Finally, Defendants request, without any discussion, that this ESI date range apply to Defendants' ESI production as well. The Defendants' request is denied. The Bank's acquisition of Mutual Bank's assets occurred in July of 2009; therefore, the Bank's proposed time frame is adequate to capture the entire time period for which it would have relevant electronic documents. Conversely, based on the nature of the claims and counterclaims at issue, the Bank is entitled to request discovery from Defendants regarding Defendants' relationship with Mutual Bank prior to the date of the Bank's acquisition.

For these reasons, we grant the Bank's Motion for Protective Order on this issue and limit the Bank's ESI discovery responses to those documents within the June 1, 2009 to November 19, 2009 time frame. In addition, we order that the Bank produce any non-privileged documents regarding Wolf & Co.'s 2009 investigation of Defendants and any documents supporting their affirmative defenses, if they have not already done so.

Format of ESI

The Bank also requests that the Court allow it to produce ESI in TIF format rather than in native format, as Defendants have requested. The Bank argues that it should be permitted to produce the data in TIF format for ease of use (ability to bates stamp, redact, and insure uniform presentation as to exhibits) and to prevent manipulation of the documents. The Bank explains that TIF format allows for easier redaction and many of the documents at issue contain confidential information (social security numbers, account numbers and other personal customer information).

Defendants argue that the Bank should produce the documents in native format because TIF format does not include metadata. We disagree. Generally, metadata is not produced as a matter of course. *Wyeth*

| STATEMENT |
|---|

*v. Impax Labs, Inc*. 248 F.R.D. 169, 171 (D. Del. 2006) ("[e]merging standards of electronic discovery appear to articulate a general presumption against the production of metadata"). Defendants have not articulated any particular need for metadata at this time. *Kingsway Financial Serv., Inc. v. Pricewaterhouse-Coopers LLP*, 2008 WL 5423316, at *6 (S.D.N.Y. Dec. 31, 2008) ("[i]n light of the dubious value of metadata and plaintiffs' total failure to explain its relevance to the claims and defenses..., plaintiffs' application to compel its production is denied."); *Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.*, 248 F.R.D. 556, 560 (N.D. Ill. 2008) (denying a motion to compel production of metadata). If Defendants can make a particularized need for metadata for certain documents, the Bank has stated that it will produce those documents in native format. Absent a showing of particularized need at this time, the Court grants this portion of the Bank's Motion.

Shifting of ESI Costs

Finally, the Bank requests that this Court shift the cost of producing ESI to Defendants. The Bank argues that it is extremely costly to load, search, process, review and produce ESI. The Bank also notes that Defendants have a significantly smaller universe of electronic documents to process for production because they have stated that one of their servers is now defunct and back-up tapes are not available; therefore, the Bank argues, Defendants should have to share the Bank's financial burden of producing ESI.

Although we find some merit to the Bank's arguments, we do not believe that the facts of this case warrant the shifting of costs at this time. As set forth above, limitations on the date range for responsive documents should significantly reduce the scope and cost of ESI discovery for the Bank. In addition, this Court has ordered the parties (by separate minute order) to meet and confer regarding a limited number of search terms that will further reduce the scope and the cost of ESI. These limitations should ensure that Defendants' discovery requests are narrowly tailored to the discovery of relevant information. *Wigington v. CB Richard Ellis,* 229 F.R.D. 568, 573 (7th Cir. 2004) (the first factor a Court should consider on a request for cost shifting is "the extent to which the request appears to be specifically tailored to discover relevant information."). It should also be noted that the Bank has requested to produce ESI in TIF format (over Defendants' objection) and this is a more expensive format than the native format requested by Defendants.

The Bank argues that even after limiting its production with search terms and a more restrictive time frame, it will still have 6,064,000 pages of documents to process, produce and review. The Bank states that this production will cost approximately $130,856.06, plus the additional expense of attorney review. The Bank has not adequately supported its assertion that it has over 6 million pages of documents related to these four Loans. Indeed, the Bank's ESI liaison states in his affidavit that these numbers are merely estimates. Therefore, for the reasons stated above, the Bank's request for cost-shifting is denied.

[0]The Bank's motion also requested that it be permitted to use search terms to limit its production to only those documents containing the words "Kanan," "Creative" and/or "Shah." The Court addressed this portion of the motion in a separate minute order dated 07/30/10 [134].