UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED CENTRAL BANK, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 10 cv 00331 ) |
| KANAN FASHIONS, INC., CREATIVE WAREHOUSING (Chicago), LLC, KANAN CRUISES, INC., KANAN HOLDINGS, LLC, VARSHA SHAH, AND MEHUL SHAH, | ) Judge Gettleman ) Magistrate Judge Mason ) ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO VACATE CERTAIN PART OF 8-27-10 ORDER AND ADVISE COURT RE WAREHOUSE SERVER**

Now come Defendants-Counterclaimants Kanan Fashions, Inc., Creative Warehousing (Chicago), LLC, Kanan Holdings, LLC, and Defendants Varsha Shah and Mehul Shah ("Defendants"), by their attorneys, and respectfully request that the Court vacate that part of the Court's August 27, 2010 order requiring Defendants to obtain its server or a forensic image of its server at Creative Warehousing by September 15, 2010. In support, Defendants state as follows:

1. The Court entered an order dated August 27, 2010 requiring Defendants to obtain its server or a forensic image of its server at Creative Warehousing by September 15, 2010. At the time of the order, the server was not in the custody of any of the Defendants. Defendants believed that the computer was in the custody of First Midwest Bank ("FMB"), which had foreclosed upon a warehouse previously acquired by one of the Defendants. Defendant Mehul Shah had been negotiating with FMB for some time to obtain the server. Three days later on August 30, 2010, FMB advised Mr. Shah that FMB had sold the server at the end of July to an entity named Bi Agems, located in Dubai and that FMB did not have any contact information for

Bi Agems. As explained below, efforts to obtain further information concerning the whereabouts of the server have been refused by FMB.

2. Accordingly, as shown below, Defendants do not have access to the server and therefore cannot meet the Court's order since none of them had custody of the server at the time of the order or since.

3. Defendants' counsel understands the timeline to be as follows.

4. Defendants' counsel is informed that or about March 24, 2010, First Midwest Bank ("FMB") took possession of the warehouse owned by Defendant Creative Warehousing (Chicago), LLC pursuant to an order of eviction (preceded by a March 11, 2010 Deed in Lieu of Foreclosure Agreement). Kanan Fashions, Inc. ("KFI") had a server at the warehouse used for its business. The server was leased from Associated Bank, believed to be located in Minnesota.

5. First Midwest Bank thereafter refused to release the server to KFI due to money KFI owed Associated Bank for the lease of the server. As stated above, Defendant Mehul Shah sought to negotiate with Dave Clark, a vice-president of FMB, for the release of the server. Mr. Shah has known Mr. Clark for some period of time and Mr. Clark in fact filed an affidavit herein attached to Defendants' reply brief filed on March 2, 2010.

6. On August 25, 2010, Mr. Shah forwarded to Defendants' counsel his e-mails with Dave Clark reflecting the negotiations (attached as Exhibit A). These e-mails received by Defendants' counsel on August 25, 2010 show the following:

   A. In e-mails dated June 4, 2010 and June 25, 2010, Tina Jacobs, counsel to Associated Bank, and William Serritella, counsel to FMB, communicated about the subject, followed by a June 26, 2010 e-mail from Mr. Serritella to Mr. Clark.

2

B.  By a June 28, 2010 e-mail to Mr. Shah, Mr. Clark forwarded the foregoing e-mails and advised Mr. Shah that Associated Bank had reduced its demand from $370,000 to $65,000, apparently for a debt owed for the server. Mr. Clark further advised that "The offer from Associated is now at $65,000 so I think we should settle". Mr. Clark's email read:

> "The offer from Associated is now at $65,000 so I think we should settle. Then you should talk to Darwin about the lease."[1]

C.  In an e-mail of the same date, June 28 (Ex. A), Mr. Shah confirmed that he phoned Mr. Clark in response that he would accept Associated Bank's offer for $65,000 but that he would like Mr. Clark to see if he could settle it for $60,000. Mr. Shah further advised that he was traveling overseas not to return until mid-July and would be in a position to close on the transaction no later than the end of July:

> "As discussed over the phone I would appreciate if associated can be settled at $ 60,000. If you feel it is not working out than we should accept this offer from Associated at $65,000 and proceed to purchase the lease and guaranty.
>
> As you know I am traveling overseas and won't return until mid July. While I want to work out lease terms with Darwin Realty when I return, I want to keep the lease separate from this matter with Associated. So if possible I would like to have FMB buy the lease and guaranty from Associated as quickly as Bill can arrange it and once I return to Chicago, I will arrange to repay FMB the $65,000 and repurchase the lease and guaranty from you at that time. You can assume I will be in a position to close on this aspect with you no later than July end, 2010. Please let me know if this arrangement is satisfactory to you. Thanks again."

D.  In an August 9, 2010 e-mail to Mr. Clark, Mr. Shah advised Mr. Clark that he would be in position to close the transaction by the early part of the week of August 16. Mr Shah's e-mail read (Ex. A):

---

[1] The reference to "Darwin" is a reference to FMB's real estate broker working on FMB's sale of the warehouse and refers to Mr. Shah's hope to possibly obtain a lease of the warehouse from any new buyer of the warehouse.

> "I will be in a position to raise the funds necessary to buy back the lease & the guarantee from FMB by early part of August 16 week.
>
> I am sorry it took me longer than I anticipated to raise these funds contrary to the end of July as I mentioned on my last email dated June 28,10."

7. At the status hearing on August 26, 2010, there was the following colloquy in which Defendants' counsel advised that Mr. Shah had not received a response from Mr. Clark to Shah's August 9 e-mail:

> "MR. GARY [Defendants' ESI Liaison]: And with regard to the warehouse server, I have informed counsel and they have been working on it, getting access to that server. We simply don't have access. I have informed Counsel Grossman of this. And that's where that stands. I can't speak to anything with regard to that.
>
> THE COURT: And can you tell me why you don't have access?
>
> MR. GARY: I defer to counsel. I don't know.
>
> THE COURT: All right.
>
> MR. BORLACK: This particular server is in the warehouse. That was foreclosed upon by First Midwest Bank.
>
> THE COURT: And this was done back in March?
>
> MR. BORLACK : Yes. And I can't verify a particular date. Maybe counsel has a date, but I thought they had spoken with them. Maybe I'm wrong.
>
> In any event, there is a lien on the server, not by First Midwest Bank, by Associated Bank, which I think is the seller. We have been, my client Mr. Shaw, has been negotiating to purchase it back from Associated Bank.
>
> THE COURT: Since when?
>
> MR. BORLACK: For months. He was out of the country, however, in July. We understand that in August, I believe on or about August 9th, Mr. Shaw was able to send an e-mail saying we now have, we think we have a deal. We have a purchase price we can agree to in principle. But we haven't heard back from them.
>
> THE COURT: That's since August 9th?

4

> MR. BORLACK: August 9th sir. And Mr. Shaw advised us he has called again and, several times, and he has not been able to receive anything other than a voice mail. It may be that somebody is on vacation. We tried again yesterday."

Ex. B, pp. 10-12.[2]

8. The next day on August 27, 2010 the Court issued an order which included the order that "Defendants are to obtain its server or a forensic image of its server at Creative Warehousing by 9/15/10".

9. On Monday, August 30, 2010, Mr. Clark sent to Mr. Shah an e-mail which advised that at the end of July Mr. Clark had sold the server, stating that "he finalized the transaction with Associated Bank for a buyer in Dubai":

> "Mehul
> I am very sorry, but as I told you back in July, I was very anxious to sell the building. As I was entering into a contract to sell the warehouse, I had to find someone to take the server. I finalized the transaction with Associated Bank for a buyer in Dubai. The money was wired and they picked up the server the following day. Again, I am sorry, but I waited through the end of July and could not wait any longer."

Ex. C.

---

[2] Defendants' counsel did not know of the e-mails in Exhibit A until they were forwarded on August 25, 2010, the day before the court status hearing. Similarly, Defendants' counsel did not know of Clark's failure to respond to the August 9 e-mail until counsel was so advised on August 25, 2010. In the prior August 24, 2010 Joint Status Report to the Court, Defendants' counsel advised:

> "Specifically, the Kanan Defendants are attempting to gain access to its server located at the former Creative Warehousing site in Aurora, which was foreclosed upon and is now owned by First Midwest Bank. The Kanan Defendants are negotiating with the third party lender, Associated Bank, which has asserted a lien on the server, to gain access."

Ex. D (p. 2). Although counsel referred to a "lien", this characterization of Associated Bank's interest in the server may have been mistaken, as Defendants have advised counsel that neither Associated Bank nor First Midwest Bank ever served upon them any papers reflecting a lien upon the server.

10. Accordingly, Defendants did not have custody of the server at the time of the hearing or the subsequent order, nor have they had custody since.

11. In the hope that the server could be located, Defendants' counsel have since attempted to investigate the sale asserted by Mr. Clark in his August 30, 2010 e-mail. As set forth in the August 30, 2010 e-mails attached as Exhibit E, Defendants' Counsel followed-up a voicemail message to William Serritella, counsel to FMB, with the following e-mail:

> "Bill, per my voicemail a few minutes ago, I would like your permission to speak with Dave Clark about the sale of the Associated Bank computer; of course you have every right to be privy to any such conversation if you desire. If for any reason you refuse to grant me such permission, I would at least like to discuss the subject with you. Please get back to me as soon as you can."

Mr. Serritella responded in e-mails advising that "[t]he only information FMB has regarding the entity that purchased the servers is that the name of the company is Bi Agems, located in Dubai". Mr. Serritella further advised that otherwise FMB does not have "have any telephone number or address or other contract information such as email". Ex. E.

12. Defendants and Defendants' ESI Liaison sought to locate the entity Bi Agems in Dubai through search tools on the internet but were unable to locate such entity.

13. Defendants' counsel also contacted Tina Jacobs, counsel for Associated Bank, who advised that Associated Bank had made a July 15, 2010 assignment of the lease of the server to FMB. See e-mails dated August 31-September 2, 2010 attached as Exhibit F. In an August 31, 2010 email to Ms. Jacobs, Defendants' counsel wrote:

> "We understand from your June 4, 2010 email below to William Serritella that you represent Associated Bank which leased a certain computer system to our client Kanan Fashions, Inc. We were advised yesterday by Dave Clark and William Serritalla of First Midwest Bank that someone named Bi Agems in Dubai purchased and took the computer. Due to the above entitled litigation, we need to get in contact with such purchaser immediately. We ask that you advise of us all the contact information you and your client have so that we can contact Bi Agems immediately. We also ask that you advise us the amount of the purchase price that was wired to Mr. Clark.

6

Ms. Jacobs responded in a September 1 email that Associated Bank did not sell any equipment but had assigned its lease to FMB and has no contact information for Bi Agems:

> "I'm sorry, but I'm not sure what you're referring to. Associated Bank assigned its lease of the equipment owned by Kanan Fashions, Inc. to First Midwest Bank. Associated Bank did not sell any equipment to Bi Agems and have no contact information for Mr. Agems."

In response, Defendants' counsel e-mailed Ms. Jacobs asking for the date of the Associated Bank assignment to FMB and in an September 2 e-mail, she responded that "The Assignment is dated 7/15/10". Ex. F.

15. On September 2, 2010, Defendants' counsel again asked FMB's counsel, Mr. Serritella, for permission to discuss the incident with Mr. Clark (Ex. G):

> "Bill, per my voicemail a few minutes ago, I would like your permission to speak with Dave Clark about the sale of the Associated Bank server; of course you have every right to be privy to any such conversation if you desire. If for any reason you refuse to grant me such permission, I would at least like to discuss the subject with you. Please get back to me as soon as you can. "

Mr. Serritella declined to produce Mr. Clark but responded that he himself would discuss the incident with Defendants' counsel on September 7. See e-mails attached as Ex. G.

15. During the telephonic discussion on September 7, Mr. Serritella advised that the only information FMB had with respect to the buyer of the server was that on a day that Dave Clark was to meet with the buyer of the warehouse a man whose first name was "Jim" showed up unannounced, purchased the server with a wire transfer from Standard Charter Bank of DuBai, and left with the server. Defendants' counsel again asked Mr. Serritella to consider permitting counsel to meet with Mr. Clark and also to obtain the name of the buyer of the warehouse from FMB, and Mr. Serritella advised that he would respond. Not hearing from Mr. Serritella, Defendants' counsel e-mailed him on September 10:

7

"Bill, on Tuesday we spoke and you advised that on a day that Dave Clark was to meet with the buyer of the warehouse a man whose first name was Jim showed up unannounced and purchased the server with a wire transfer from Standard Charter Bank of DuBai and left with the server.

I asked to meet with Mr. Clark, you being welcome to attend of course, and for the name of the buyer of the warehouse. You said you would get back to me but as of today, Friday, I have not heard back from you. I assume that you have decided not to permit me to meet with Mr. Clark or wish to further communicate regarding the incident."

See e-mails attached as Exhibit H.

16. Mr. Serritella did not respond. But later that day September 10, Mr. Shah advised Defendants' counsel that Mr. Clark had called Mr. Shah that day to say that Mr. Clark had given Defendants counsel all the information Defendants' counsel needed, that Mr. Clark is busy, and that Mr. Clark cannot afford to keep paying his lawyer about this.

17. Based upon the foregoing, Defendants do not have access to the server and therefore cannot comply with the Court's August 27, 2010 order that "Defendants are to obtain its server or a forensic image of its server at Creative Warehousing by 9/15/10" as the server was not at the time of the order or thereafter in the custody and control of FMB. Defendants therefore respectfully request that the Court vacate that part of its August 27, 2010 order.

WHEREFORE, for the foregoing reasons, Defendants respectfully request that the Court vacate that part of the Court's August 27, 2010 order requiring Defendants to obtain its server or a forensic image of its server at Creative Warehousing by September 15, 2010.

       KANAN FASHIONS, INC., CREATIVE WAREHOUSING (Chicago), LLC, KANAN CRUISES, INC., KANAN HOLDINGS, LLC, VARSHA SHAH, and MEHUL SHAH

       By:   /s/ Eric G. Grossman
            Alan R. Borlack
            Bailey Borlack Nadelhoffer LLC
            135 South LaSalle, Suite 3950
            Chicago, Illinois 60603

Phone: (312) 629-2700
Fax:　 (312) 629-0174
e-mail: aborlack@bbn-law.com

James A. Flesch
Don E. Glickman
Glickman, Flesch & Rosenwein
230 West Monroe Street, Suite 800
Chicago, Illinois 60606
(312) 346-1080

## **CERTIFICATE OF SERVICE**

I, Eric Grossman, an attorney, hereby certify that on September 13, 2010, I filed the foregoing with the Clerk of the Court and served such filing via the Court's ECF system to all attorneys of record in this matter.

/s/ Eric Grossman
    Eric Grossman