**Subject: Fwd: Kanan Fashions Lease with Associated Bank**
**Date:** Wednesday, August 25, 2010 4:00 PM
**From:** Mehul Shah <mshah@kanangroup.com>
**To:** "Eric G. Grossman" <egrossman@bbn-law.com>
**Conversation:** Kanan Fashions Lease with Associated Bank


---------- Forwarded message ----------
From: **Mehul Shah** <mshah@kanangroup.com>
Date: Mon, Aug 9, 2010 at 9:46 AM
Subject: Re: Kanan Fashions Lease with Associated Bank
To: dave.clark@firstmidwest.com


Dave,
I will be in a position to raise the funds necessary to buy back the lease & the guarantee from FMB by early part of August 16 week.
I am sorry it took me longer than I anticipated to raise these funds contrary to the end of July as I mentioned on my last email dated June 28,10.

Thank you.

Mehul Shah

On Mon, Jun 28, 2010 at 3:55 PM, Mehul Shah <mshah@kanangroup.com> wrote:
Dave,
As discussed over the phone I would appreciate if associated can be settled at $ 60,000. If you feel it is not working out than we should accept this offer from Associated at $ 65,000 and proceed to purchase the lease and guaranty .
As you know I am traveling overseas and won't return until mid July. While I want to work out lease terms with Darwin Realty when I return, I want to keep the lease separate from this matter with Associated. So if possible  I would like to have FMB buy the lease and guaranty from Associated as quickly as Bill can arrange it and once I return to Chicago, I will arrange to repay FMB the $65,000 and repurchase the lease and guaranty from you at that time.  You can assume I will be in a position to close on this aspect with you no later than July end, 2010.  Please let me know if this arrangement is satisfactory to you.  Thanks again.

Regards,

Mehul



**Page 1 of 4**

On Mon, Jun 28, 2010 at 8:58 AM, <Dave.Clark@firstmidwest.com> wrote:
The offer from Associated is now at $65,000 so I think we should
settle. Then you should talk to Darwin about the lease.

Dave Clark
Vice President
First Midwest Bank
One Pierce Place
Suite 1500
Itasca, Illinois  60143
Phone: (630) 875-7400
----- Forwarded by Dave Clark/FMBCERT on 06/28/2010 08:55 AM -----

From:       William Serritella <wserritella@agdglaw.com>
To:         "'Dave.Clark@firstmidwest.com'" <Dave.Clark@firstmidwest.com>
Date:       06/26/2010 06:53 AM
Subject:    Fw: Kanan Fashions Lease

Let's talk.

**From**: Tina Jacobs
**To**: William Serritella
**Cc**: Dieterich, James
**Sent**: Fri Jun 25 15:31:08 2010
**Subject**: FW: Kanan Fashions Lease
Bill,

After careful consideration and analysis, Associated Bank has authorized me to
revise the purchase price for the assignment of lease and guaranty of the Kanan
Fashions lease from $370,000.00 to $65,000.00.  This is obviously a significant
reduction in the amount due to the Bank and a minimum amount it can accept to
complete this assignment transaction.  This counter-offer is being tendered in good
faith and is not intended to solicit further offers, as the Bank is looking to keep all
fees and expenses to a minimum.  Please discuss this counter-offer with your client
and advise me as soon as possible whether this matter can be settled for the
proposed amount.  Thank you.

Tina

**From:** Tina Jacobs [mailto:tjacobs@jonesandjacobs.com
<mailto:tjacobs@jonesandjacobs.com> ]
**Sent:** Friday, June 04, 2010 4:46 PM
**To:** 'wserritella@agdglaw.com'
**Cc:** 'Dieterich, James'
**Subject:** Kanan Fashions Lease

Please see attached.

Tina M. Jacobs, Esq.
Jones & Jacobs
77 W. Washington Street
Suite 2100
Chicago, Illinois 60602
(312) 419-0700 phone
(312) 419-9114 fax

IMPORTANT: This e-mail transmission is intended only for the use of the individual or entity
to which it is addressed and may contain information that is privileged, confidential and
exempt from disclosure under applicable law. If the reader of this message is not the
intended recipient, you are hereby notified that any dissemination, distribution or copying of
this communication is strictly prohibited. If you have received this e-mail in error, please
notify me immediately by responding to this e-mail or by telephone, and delete the material
from your computer. Thank you.


_____ Information from ESET NOD32 Antivirus, version of virus
signature database 5173 (20100604) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com <http://www.eset.com/>


_____ Information from ESET NOD32 Antivirus, version of virus
signature database 5229 (20100625) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com <http://www.eset.com/> [attachment "Serritella
2.pdf" deleted by Dave Clark/FMBCERT]
--------------------------------------- This electronic message and
any files transmitted with it are the property of First Midwest Bank
and/or its affiliate, are confidential and/or privileged, and/or

intended solely for the use of the individual(s) and/or entity(ies) to whom this message is addressed. If you are not the addressee or one of the named addresses or otherwise have reason to believe that you have received this message in error; please notify the sender by replying to this message and deleting it immediately from any computer. Any review, retention, dissemination, retransmission or other use of this information is strictly prohibited.

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3   UNITED CENTRAL BANK,            )
                                     ) Docket No. 10 C 331
 4              Plaintiff,           )
                                     ) Chicago, Illinois
 5        v                          ) August 26, 2010
                                     ) 9:39 a.m.
 6   KANAN FASHIONS, INC.,           )
                                     )
 7              Defendant            )

 8                   TRANSCRIPT OF PROCEEDINGS
 9           BEFORE THE HONORABLE MICHAEL T. MASON

10
     PRESENT:
11
     For the Plaintiff:        VILIA M. DEDINAS
12                             NADA DJORDJEVIC
                               Boodell & Domanskis LLC
13                             205 North Michigan Aenue
                               Suite 4307
14                             Chicago, Illinois  60601

15   For the Defendant:        ALAN R. BORLACK
                               ERIC G. GROSSMAN
16                             Bailey, Borlack and Nadelhoffer
                                 and Carroll
17                             135 South LaSalle Street
                               Suite 3950
18                             Chicago, Illinois  60603

19
     (TRANSCRIBED FROM DIGITAL RECORDING.
20    PLEASE SUPPLY CORRECT SPEAKER IDENTIFICATION)

21
     Court Reporter:           Lois A. LaCorte
22                             219 South Dearborn  Room 1918
                               Chicago, Illinois 60604
23                             (312) 435-5558

24
25
```

EXHIBIT

"B"

2

1      THE CLERK:   10 C 331, United Central Bank v Kanan

2  Fashions.

3      MR. BORLACK:   Good morning, your Honor, Alan Borlack

4  and Eric Grossman on behalf of the defendants.  We also have our

5  liaison Mr. Daniel Gary with us.

6      THE COURT:   Good morning.

7      MS. DEDINAS:  Vilia Dedinas and Nada Djordjevic, counsel

8  for United Central Bank, and we have also brought our liaison

9  David Aberman.

10      THE COURT:   Well, let's get your liaison up here too

11  and then get out the boxing gloves and let's have this thing

12  resolved here right now.

13      MR. WOLF:  Your Honor, John Wolf on behalf of Western

14  Springs National Bank & Trust, who just intervened.

15      THE COURT:   Thank you for being here, Mr. Wolf.

16      And your expert's name again?

17      MR. GARY:   Daniel Gary.

18      THE COURT:   Why don't you get over closer to the

19  podium.  Let him in here.  You're the liaison?  I'm sorry.  Why

20  don't you go in here by the microphone, if you will.  Thank you.

21      MR. BORLACK:  This morning Judge Gettleman granted

22  Western Springs' to intervene.

23      THE COURT:   All right.

24      MR. BORLACK:   They have been given two weeks to file

25  their complaint.

3

1    THE COURT:    Was that granted orally or by minute order?

2    MR. BORLACK:    Orally.

3    THE COURT:    Okay.  Well, let's go to the ESI issues.

4  At the last status, the defendants reported that the inoperable

5  server apparently cannot be reconstructed as a result of the hard

6  drive failure.  Is that still the situation?

7    MR. GARY:    Yes, it is, your Honor, but we have made

8  progress with regard to identifying with regard to whether or not

9  user files, where their local directories were mapped to that and

10  we have reviewed all 20 plus computers and looked at their

11  install scripts and have determined that in fact they were stored

12  on a different server and so we have their home directory files

13  mapping.

14    THE COURT:    And?

15    MR. GARY:    And we have collected them and put them on a

16  disc.

17    THE COURT:    And have you turned that over yet?

18    MR. GARY:    We're waiting for, counsel is waiting for

19  receipt of key words and dates so that we can begin the culling

20  and review.

21    THE COURT:    Can you provide those?

22    MR. ABERMAN:  Yes, we will provide the key words.  My

23  question is, this is actually the first I have heard of that.

24    THE COURT:  It's the same with me.

25    MR. ABERMAN:  About ten seconds ago, so my curiosity is,

4

1    they had purported that the file server which was defunct stored
2    the majority of their E docs, if you will.  So is that to say
3    that that's not any more accurate or just the personal shares
4    were mapped to that?

5              MR. GARY:    The personal file shares were all mapped to
6    the S-4 server.  On the backup, the defunct server, we found the
7    backup tapes and it I think was disclosed we have turned them
8    over to Digital Reef and we have --

9              THE COURT:    When were those turned over?

10             MR. GROSSMAN:    Your Honor, we will be sending --

11             THE COURT:    So they haven't been turned over yet.

12             MR. GROSSMAN:    -- the backup tapes which are sitting
13   right now at the client's Oak Brook office along -- and it does
14   appear that on the backup tapes there is reference to the file
15   server 01, FS 01.  We're not sure yet what the contents or the
16   data consists of with respect to that file server, but we will be
17   turning it over to Digital Reef, which is our digital ESI, our
18   ESI provider that will be assisting us with loading the data from
19   those backup tapes as well as the other exchange database that we
20   do have.

21             Once they load that, we will be able to determine what
22   the data from the FS 01 consists of.  As Mr. Gary just indicated,
23   we do not believe at this point that the personal computers that
24   the file shares were pointed to that as one server.  We believe
25   that they were on the S4 server.

5

1   THE COURT:   How long have you had this information?

2   MR. GARY:   Well, we actually just verified it all again

3   two days -- what's today -- Thursday -- Monday.

4   THE COURT:   Now, you're telling me that it has been

5   turned over, he is telling me it hasn't yet.

6   MR. GARY:   Well, your Honor what's happened is we have

7   collected --

8   THE COURT:   What I would like is a straight answer.

9   MR. GROSSMAN:   We have collected the -- we hired a

10  replacement for the former employee who was no longer available.

11  His name was William --

12  THE COURT:   I don't care what his name is.

13  MR. GROSSMAN:   That was pursuant to the court's order.

14  They did retain an IT person to go on site to examine the systems

15  there and the configuration and what was left.

16  THE COURT:   And when was that?

17  MR. GROSSMAN:   The exact dates were I believe June 24th

18  he was retained.

19  MR. GARY:   Your Honor, so specifically answering your

20  question, what we have done is we have collected the user e-mails

21  in their account, we have collected their files, their personal

22  files and their file shares that were stored.

23  THE COURT:   When?

24  MR. GARY:   That was finished and completed, I don't

25  know the exact date, but a couple weeks ago.

6

1      THE COURT:   Get the exact date and provide that to

2  them.

3      MR. GARY:   And then what we're waiting on is to get the

4  dates and the search terms to look at that information.

5      THE COURT:   And when is that going to be done?

6      MR. GARY:   We are waiting to get the date range and the

7  search terms so we can then analyze the information using those

8  terms.

9      THE COURT:   When can you give them those dates and the

10  search range?  Speak, whoever wants to.

11      MS. DEDINAS: Your Honor, one problem that we have first

12  of all is that we don't even know what all their systems are.  So

13  it's very difficult.  We have not only the defunct server, but

14  there is also another server that they claim they have no access

15  to, and that's the Creative Warehousing server.

16      I want to point out to this court that the last time we

17  were here on May 19th, they represented that they have all

18  servers under their custody and control.

19      It turns out that on March 24th they entered into an

20  agreed order of eviction allowing that server to be turned over

21  to a bank that foreclosed on that property.

22      THE COURT:   That was on March 24th?

23      MS. DEDINAS: 24th, two months before we were in this

24  hearing.  And now we learn, I got a letter last Friday evening

25  after business hours, looked at it over the weekend, it's the

7

1    first information I'm getting about their computer system.  I'm
2    learning that that server, they don't have access to so we don't
3    know what's on it.  They claim that they have provided the
4    back-up tapes that they have had now for five or six months,
5    which they are now providing to Digital Reef, but now I'm hearing
6    that they haven't even done that yet.
7            THE COURT:    That's what I'm hearing also.
8            MS. DEDINAS: So we don't know -- you know, they made the
9    argument when they were here in May, which was they can't give us
10   key word searches or anything until we give them a database.
11           THE COURT:    Do you have a transcript of that, by the
12   way?
13           MS. DEDINAS: Yes, I do.
14           THE COURT:    All right.
15           MS. DEDINAS: Would you like it?
16           THE COURT:    I would.  I would like -- here is what I
17   would like you to do.  I don't need it right now.  Provide a copy
18   to the court today if you could please.  All right.
19           Let her finish.
20           MS. DEDINAS: So my point, your Honor, is that as far as
21   coming up with comprehensive key word searches, they don't even
22   have their ESI available yet.  We don't know what it is, it's not
23   loaded, and we don't really know what the universe is of what we
24   are going to look for.
25           Now, Mr. Grossman told me in a conversation that we had

8

1  a while ago that they had located the e-mails from the exchange
2  server and they had loaded those and those were available for
3  searching.  And at that time I let him know that one thing I'm
4  interested in is I want to see all the e-mails from the companies
5  from the date they allege that we destroyed their businesses,
6  which was August 31st to the present.  The reason I gave was that
7  if their businesses were up, they were going out of business,
8  then everything should be relevant to this lawsuit.  It was
9  either damages, mitigation of damages, or how we destroyed their
10 business.  And I have had no response to that.
11       And I indicated that with respect to prior date ranges,
12 I would get a date range and key word searches on e-mail and I'm
13 working on that and I can get that to them very shortly.
14       THE COURT:  How long is shortly, if you can say.
15       MS. DEDINAS:  Three or four days.
16       THE COURT:  Okay.  Business days?
17       MS. DEDINAS: Sure.
18       THE COURT:  All right.
19       MS. DEDINAS:  But with respect to the remaining ESI, I
20 mean, it's still on back-up tapes.  We don't know what's on
21 there.  We don't know -- there is a server in a warehouse in
22 Aurora that they don't even have access to.  So it's very
23 difficult for us to come up with a more comprehensive ESI search.
24       THE COURT:   Now, this gentleman back here who is being
25 so obnoxious has got something to say.  Let's hear it.

9

1         MR. GARY:   Yes, I do, your Honor.  I apologize.

2         THE COURT:   And you better not let it happen again.

3 I'm telling you that right now.  Understood?

4         MR. GARY:   Yes, your Honor.

5         THE COURT:   What is your name again?

6         MR. GARY:   Daniel Gary.

7         THE COURT:   All right.  I'm telling you, you better get

8 that chip off your shoulder in this courtroom or there will be

9 consequences.  I'll tell you that right now.

10        MR. GARY:   Yes, your Honor.

11        May I respond, your Honor?

12        THE COURT:   Yes.

13        MR. GARY:   We provided the back-up tapes and a catalog

14 of the back-up tapes.

15        THE COURT:   When?

16        MR. GARY:   One week --

17        MR. GROSSMAN:   May 28th.

18        THE COURT:   I want dates for everything that both sides

19 tell me now.

20        MR. GARY:   Of course, your Honor.  Sorry I didn't bring

21 the dates with me.  I apologize.

22        THE COURT:   Well, get them and provide them to chambers

23 today, both sides.

24        MR. GARY:   Yes, your Honor.  With regard to the back-up

25 tapes, the back-up tapes have back-ups of the files that we

10

1  actually have that are active files.  So on the back-up tapes are
2  just copies of the files we already had, which is in the list we
3  sent them of all the, the catalog on May 28th, it listed them
4  out.  And we then collected the files and the e-mails and have
5  put them on a drive and have, with regard to the server at the
6  warehouse, I haven't been directly involved beyond working with
7  counsel.

8           THE COURT:  Let me go back one step.  You put them on a
9  tape?

10          MR. GARY:  No, on a separate drive.

11          THE COURT:  All right.  And what did you do with that?

12          MR. GARY:  Counsel -- gave them to counsel.

13          THE COURT:  You gave them to whom?

14          MR. GARY:  To Counsel Grossman.

15          MR. GROSSMAN:  They are at the Oak Brook office.  They
16  will be shipped to Digital Reef.

17          THE COURT:  Okay.  So they're still in your possession.

18          MR. GROSSMAN:  They are in our possession.

19          THE COURT:  This is what I'm trying to find out, okay?
20  Go ahead now.  And when are they going to be shipped?

21          MR. GROSSMAN:  Monday, your Honor.

22          THE COURT:  All right.

23          MR. GARY:  And with regard to the warehouse server, I
24  have informed counsel and they have been working on it, getting
25  access to that server.  We simply don't have access.  I have

11

1  informed Counsel Grossman of this. And that's where that stands.

2  I can't speak to anything with regard to that.

3         THE COURT: And can you tell me why you don't have

4  access?

5         MR. GARY: I defer to counsel. I don't know.

6         THE COURT: All right.

7         MR. BORLACK: This particular server is in the

8  warehouse. That was foreclosed upon by First Midwest Bank.

9         THE COURT: And this was done back in March?

10        MR. BORLACK: Yes. And I can't verify a particular

11  date. Maybe counsel has a date, but I thought they had spoken

12  with them. Maybe I'm wrong.

13       In any event, there is a lien on the server, not by

14  First Midwest Bank, by Associated Bank, which I think is the

15  seller. We have been, my client Mr. Shaw, has been negotiating

16  to purchase it back from Associated Bank.

17        THE COURT: Since when?

18        MR. BORLACK: For months. He was out of the country,

19  however, in July. We understand that in August, I believe on or

20  about August 9th, Mr. Shaw was able to send an e-mail saying we

21  now have, we think we have a deal. We have a purchase price we

22  can agree to in principle. But we haven't heard back from them.

23        THE COURT: That's since August 9th?

24        MR. BORLACK: August 9th, sir. And Mr. Shaw advised us

25  he has called again and, several times, and he has not been able

1 to receive anything other than a voice mail. It may be that

2 somebody is on vacation. We tried again yesterday.

3       THE COURT:    You know what? Vacations are going to have

4 to come to an end then because this thing has dragged out far too

5 long. So you put your people on notice and you put your people

6 on notice. We are going to move this along.

7       Now, what I want from both sides, and I don't want you

8 to be talking to each other about this, I want your version of

9 what has occurred since March and I want a chronology of that,

10 dates and times as to when you received certain information, what

11 you have been doing with it since you received it, and when it's

12 going to be turned over to the other side and vice versa.

13       Any questions about that? I want a chronology from both

14 sides as to what's been going on here.

15       MS. DEDINAS: Your Honor, may I clarify?

16       THE COURT:    Sure.

17       MS. DEDINAS:  Is this chronology regarding --

18       THE COURT:    Everything that has gone on since you have

19 been coming in here telling me that you can't get this and you

20 can't get that. I want to know what conversations you have had

21 with them. I want a regular diary from both sides.

22       MS. DEDINAS: I'm sorry, but I don't --

23       THE COURT:    Go right ahead and ask.

24       MS. DEDINAS: I don't know that there is any issue with

25 respect to the bank's production.

13

1        THE COURT:   Well, then you don't have much to give me I

2   guess.

3        MS. DEDINAS: But I just wanted to make sure that we are

4   focusing on that issue, and if I may just very briefly raise my

5   concern.

6        THE COURT:   Were you finished?

7        MR. BORLACK:  Yes.

8        THE COURT:  Go ahead.

9        MS. DEDINAS: My concern here, your Honor, is that with

10  respect to this server that is in Creative Warehousing, this

11  litigation began in January.  There was a litigation hold that

12  they say that they put out soon thereafter, I believe right after

13  the litigation started.

14       THE COURT:   It was January 18th.

15       MS. DEDINAS:   Right.  So they had that server for awhile

16  and they had access to it.

17       THE COURT:   From January 18th until March something

18  evidently.

19       MS. DEDINAS: They entered into an agreed order of

20  eviction on March 24th in Kane County and it would seem hard for

21  me to understand why a forensic image of that server was

22  not made.

23       THE COURT:   Well, I'm sure they will get a chance to

24  respond to that unless you want to respond to it now.  It's up to

25  you.

14

1          MR. BORLACK:  No.

2          THE COURT:  That's fine.  So why don't you give me a

3    chronology of events that you believe occurred from your

4    standpoint, and you give me whatever you can from your

5    standpoint.  And I'll give you 10 days to do that, how is that?

6          MR. BORLACK:   That would be the day after Labor Day.

7          THE COURT:   That's fine.  Do you want a few more days

8    beyond that due to the Labor Day weekend?  Make it due that

9    following Friday, how's that?

10          Go ahead.

11          MR. BORLACK: I just want to apologize to the extent the

12    court perceived any disrespect.  Please forgive us.

13          THE COURT:   Don't worry about that.  Don't worry about

14    that.  Do you have any questions that -- and would you put your

15    name on the record since we don't have a court reporter.

16          MR. ABERMAN:  David Aberman.

17          THE COURT:   Thank you, sir.

18          MR. ABERMAN:   So we met back on February 17th with

19    opposing counsel as well as their IT individual, who explained

20    that --

21          THE COURT:   Which is a month after it was filed, right?

22          MR. ABERMAN:   Correct.  Who explained that there were

23    these back-up tapes and that this defunct server was not working.

24          We then met back here on May 19th in court in which

25    opposing counsel had explained to us that this defunct server

15

1  after their numerous methods of attempt to repair it was

2  inoperable, which left the only source of that data those back-up

3  tapes.  And that was May 19th.  And it's now late August, and

4  from what I understand --

5         THE COURT:    Three months later.

6         MR. ABERMAN:    -- I just want to make sure, those

7  back-up tapes have yet to make it out of the company, and I

8  understand there is a small subset of those to even find out what

9  information or dates are applicable to those tapes.

10         THE COURT:    I think I understand the same thing.  Are

11  we right on that?

12         MR. GROSSMAN:    Your Honor, I was taking some notes --

13         THE COURT:    Okay.

14         MR. GROSSMAN:    -- but I believe that that recitation is

15  correct.  We would like to obviously add that there is no IT

16  department at Kanan Fashions.  Kanan Fashions is a defunct

17  business and has been defunct since it was put out of business

18  last September or October.

19         There was an IT employee.  He is a former IT employee.

20  He has been subpoenaed to provide the deposition.  Pursuant to

21  the court's order on May 19th, we proceeded, or May 20th, we did

22  proceed to retain Robert Calf International to provide an

23  individual who could come in and take a look at this system,

24  including the backup tapes and whatever data was available in

25  order so we could be provided with some insight.  We began that

16

1  task in, on June 24th.

2      THE COURT:   A month later.

3      MR. GROSSMAN:   It took us a little while to find a

4  person who had the requisite expertise.

5      THE COURT:   I thought you had him in May.  This is what

6  I don't understand.

7      MR. GROSSMAN:   Your Honor, you had ordered us to

8  provide that person in May.  We had, if I recall, advised the

9  court that Ray Fugel, who was the former IT person, was no longer

10 available to provide any services and you instructed us to go out

11 and find somebody that could provide some insight into the

12 configuration and status of Kanan's IT systems.

13     He was on site there for about the entire month of July

14 trying to reconstruct and reconfigure an IT infrastructure that

15 essentially had had no guidance for months, and he made a lot of

16 progress in doing that and working under the supervision of

17 Daniel Gary with respect to the tasks that should be

18 accomplished.

19     So during the month of July, and we are now into August,

20 we obtained the information.  Ms. Dedinas I believe on August

21 14th or 17th, correct me if I'm wrong, sent her e-mail where she

22 requested "We want all e-mails.  We want every single of your

23 client's e-mails from July 1, 2009 to the present."

24     Your Honor, there have been a lot of privileged

25 communications with our client.  And that's a huge request.  We

1  have got to mull that over a little bit --

2         THE COURT:  I understand that.

3         MR. GROSSMAN:  -- before we decide to do that.  So I

4  understand that there has been some delay, and it appears to the

5  court that we have been dragging our heels, your Honor.

6         THE COURT:  It does, it does.

7         MR. GROSSMAN:  But we have not.

8         THE COURT:  That's why I want a chronology from you, to

9  lay this stuff out.  And you know what I want you to do?  I want

10  you to provide them with a copy of that because I'm sure that

11  you're going to disagree with some of this.

12         MR. GROSSMAN:  I'll give a chronology, sure.

13         THE COURT:  Yes.  And that's due the Friday after Labor

14  Day here.  And you should provide them with a copy of whatever

15  chronology you're going to present to the court by the same date,

16  okay?  And then if there is any disagreement, motion it up and

17  let's hear about it.

18         Now, is there anything else from you on this subject?

19         MS. DEDINAS: On the ESI?

20         THE COURT:  Yes.  We have got to get this ironed out

21  folks and get it moved on.

22         Do you have anything else that you want to ask?

23         MR. GARY:  No, your Honor.

24         THE COURT:  Do you have anything else that you would

25  like to ask?

18

1       MR. ABERMAN:  No, your Honor, thank you.

2       THE COURT:    And aren't you glad that you intervened?

3       MR. WOLF:  That's the thought that has been going

4    through my head this whole time.

5       (Laughter)

6       THE COURT:    Well, and I have been pleasant today.

7    Okay.  We have problems with the motion for the protective order.

8       MR. GROSSMAN:  Yes, your Honor.

9       THE COURT:    You get to stay here and talk about that

10    with my law clerk Maura here, okay?    You're going to do that

11    right after we have this status.  So don't leave, please.

12       And the parties' proposed discovery schedule, that's

13    fine, we will adopt that, as you put out in your joint status

14    reports here.  And I don't think I need to put that on the

15    record, we are just going to adopt it and it will come out in a

16    minute order.

17       MS. DEDINAS: Your Honor, there is one other thing I

18    would like to clarify.

19       THE COURT:    I would like to clarify a million things,

20    to be honest with you.  But go ahead.

21       MS. DEDINAS: From the last order it's my understanding

22    that we pushed off to today a cutoff on written discovery, and I

23    know that's not in there.  One of the things that we ended up

24    doing because we were having trouble getting compliance and

25    didn't see what -- to be honest, we didn't have that much

19

1   confidence in what we might get, was a large number of

2   third-party customers that had damage information and as

3   information comes in, we have (inaudible) parties, so I just

4   wanted to make sure we weren't cut off from doing that.  I mean,

5   we have done a lot and there isn't a lot more to do done, but

6   occasionally we get something in and it points to a new source.

7           THE COURT:  So bring it up and if you have a good

8   reason for it, I'll grant it.  If you don't, I'll deny it.

9           MS. DEDINAS: Okay.

10          THE COURT:  Goes true for both sides.  How is that?

11  But try to work it out before you come in here.

12          Now, I have another case I have to call, let me take

13  care of that, and then Maura is going to sit down with you and

14  let's keep them in here because it's cooler in here than it is --

15  actually, we should put them in the supply room over there.  We

16  have a very warm room.  I'm sure we could get your agreement much

17  closer.

18          You know, looking at this, do you understand why I have

19  questions about what appears to be very lengthy delays in turning

20  over this information?

21          MR. BORLACK:  Yes, your Honor, I understand just how

22  you think, how you see this.  We have tried very hard to comply

23  with your orders, I want to say that.  Just like with Mr. Fugel,

24  replacing him, we had to find a suitable replacement.  That could

25  not be done quickly.  We needed somebody who we thought could do

20

1 this job.

2        THE COURT:   Do you still feel that way?

3        MR. BORLACK:   What's that, sir?

4        THE COURT:   That you have someone who can do this job?

5        MR. BORLACK:   We have no reason to doubt that.

6        THE COURT:   Okay.  Well, that's good then.  That's

7 good.

8        All right, anything else?  I want you to sit down with

9 Maura here after I finish with this next case and then we will

10 set another date, what?  Are we done?  What are these -- are you

11 here for -- they're your clients?

12        MR. BORLACK:  Mr. Shaw --

13        THE COURT:  Hasn't this been interesting?  You can sit

14 down.  Go ahead and have a seat at the tables.

15        And then when should we -- the question is when we

16 should bring you back.  Your chronologies are due to me --

17 they're due to the court here, if I have it correct, that would

18 be the 10th of September.  So don't we set it for a status the

19 following week on a Thursday if that's okay.

20        You know what I think we will do, since we always seem

21 to take so much time here, why don't we set this group for 9:30.

22 Or would you rather come in earlier?

23        MS. DEDINAS: As you wish.

24        THE COURT:   It's not as I wish, whatever is comfortable

25 for all of you.

21

1      MR. BORLACK:   9:00 is fine too.

2      THE COURT:   The only trouble is at 9:00, then you have

3  got to sit around and wait for everybody else to get through.

4      THE CLERK:  9:15. 9:15.

5      THE COURT:  There you go.  She is the boss.

6      THE CLERK:  September 16th.

7      THE COURT:   September 16th, does that work for

8  everybody?

9      MR. GROSSMAN:  Your Honor, would you like the ESI

10 liaisons here again on September 16th?  Mr. Gary is generally out

11 of the state.

12     THE COURT:   Where are you coming from, Mr. Gary?

13     MR. GARY:   I think the Jewish holidays -- Seattle.

14     THE COURT:   Well, then no, no.  Would it be better if

15 we set it for a different date?  You're going to be involved --

16     MR. GARY:   I'm looking at the calendar now.

17     THE COURT:   Tell us what dates are good because I'm not

18 sure.

19     MR. GARY:   If I could check my calendar --

20     THE COURT:   Sure.

21     MR. GARY:   -- I can tell you.

22     THE COURT:   Take a look at your dates.

23     MR. GARY:   The 16th isn't very good.

24     THE COURT:   We will give you a different date.  Where

25 are you coming from?

1          MR. GARY:   I'll be in Seattle for Rosh Hashanah.

2          THE COURT:   Do we need him here the next time?  And

3   where is your expert from?  Right here I'm sure.

4          MS. DEDINAS: We have the same holidays, so I would

5   recommend because if we are going to be talking about the

6   chronology and what needs to be done and where we still are, it

7   might be helpful.

8          THE COURT:   I hate to put you to that expense, but I

9   think she is right, counsel is right.  But give us a date that

10  doesn't interfere with any of your holidays.

11         MR. GROSSMAN:   I don't have any problems.

12         THE COURT:   But I thought he did.

13         MR. GARY:   Can we do the 15th or the following week on

14  the 22nd?

15         THE COURT:   As far as I'm concerned.  Really, Rosa

16  knows when the dates are.

17         THE CLERK:   The 23rd is a Thursday.

18         THE COURT:   How does that look?

19         THE CLERK:   Another Jewish holiday.

20         THE COURT:   Okay.

21         (Inaudible conversation of attorneys with deputy clerk).

22         THE COURT:   I want Maura to be here for this, so it has

23  either got to be a Wednesday or a Thursday.  Go the following

24  week.   If we have to do it --

25         (Multiple voices speaking)

23

1          THE COURT:   Is that an inconvenience for you, though?
2    I don't know if you have time to do that.
3          Maura is not here.  So it's an inconvenience for the
4    court.   Do you need to be here the next time?
5          MS. DEDINAS:  No.
6          THE COURT:  Do you want to be here the next time?
7          (Laughter)
8          THE COURT:   So far as I'm concerned, we can waive his
9    appearance.  Any problem with that? Unless you want to be here.
10   You can.   I don't blame you.  Neither do I.
11         THE CLERK:  How about the 13th?
12         THE COURT:  Okay.
13         MR. BORLACK:  9:15?
14         THE CLERK:  Okay.
15         MR. BORLACK:  9:15.
16         THE CLERK:  That's not a holiday, is it?
17         MR. GARY:  Unfortunately, yes.
18         THE COURT:  You know what?  So be it, so be it.  We'll
19   give you a different date.
20         MS. DEDINAS:  The 29th I would suggest, but we've got a
21   hearing in front of Judge Gettleman on a motion for partial
22   judgment on the pleadings at 10:00.
23         MR. BORLACK:  I also have a hearing in state court at
24   9:30 that day.
25         (Multiple voices speaking, inaudible to transcriber)

24

1        THE COURT:  You know what, if that would be necessary,

2  that's fine with me.  I don't care.

3        What you have to understand is two of my law clerks job

4  share and they flip-flop every other week because of families.

5  That's what is causing a problem with this.

6        THE CLERK:  So September 16th is out of the question.

7  So is the 22nd.  The 23rd?

8        MR. GARY:  I'm here, I'm back.

9        THE COURT:  On those days?

10       MR. GARY:  Yes.

11       THE CLERK:  23rd.

12       MR. GARY:  Jewish holidays with my family in Seattle.  I

13  can be here almost every other time you set.

14       THE COURT:  That's fine, that's fine.

15       THE CLERK:  Do you want to go into October then?

16       (Multiple voices speaking inaudible to transcriber).

17       THE COURT:  So do we have an agreed date then?

18       THE CLERK:  October 7th at 9:00.

19       THE COURT:  All right.  I'm sorry I had to raise my

20  voice.  I don't like doing that.  We have got to get this thing

21  moved.  Okay.  Anything else?  All right.

22       *                *            *

23

24

25

25

1    I certify that the above was transcribed from digital

2    recording to the best of my ability.

3                /s/ Lois A. LaCorte

4

5    _Lois A LaCorte_    _9-9-10_

6    Lois A. LaCorte              Date
     Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Mehul Shah, 8/30/10 8:36 AM -0500, Fwd: Fwd: Kanan Fashions Lease with Associated** 1

Date: Mon, 30 Aug 2010 08:36:35 -0500
Subject: Fwd: Fwd: Kanan Fashions Lease with Associated Bank
From: Mehul Shah <mshah@kanangroup.com>
To: "Alan R. Borlack" <aborlack@bbn-law.com>,
    "Steven H. Blumenthal" <sblumenthal@muchshelist.com>, Paresh Joshi
<pjoshi@kanangroup.com>

Alan /Steve ,
Please call me ASAP.
Mehul

---------- Forwarded message ----------
From: <Dave.Clark@firstmidwest.com>
Date: Mon, Aug 30, 2010 at 8:29 AM
Subject: Re: Fwd: Kanan Fashions Lease with Associated Bank
To: Mehul Shah <mshah@kanangroup.com>

Mehul
I am very sorry, but as I told you back in July, I was very anxious to sell the computer. As I was entering into a
contract to sell the warehouse, I had to find someone to take the computer. I finalized the transaction with
Associated Bank for a buyer in Dubai. The money was wired and they picked up the computer the following day.
Again, I am sorry, but I waited through the end of July and could not wait any longer.

Dave Clark
Vice President
First Midwest Bank
One Pierce Place
Suite 1500
Itasca, Illinois 60143
Phone: (630) 875-7400

| | |
|---|---|
| From: | Mehul Shah <mshah@kanangroup.com> |
| To: | dave.clark@firstmidwest.com |
| Date: | 08/28/2010 12:56 PM |
| Subject: | Fwd: Kanan Fashions Lease with Associated Bank |

Hello Dave,
I hope you have seen my email below.
I have a commitment for borrowing the funds to buy back the lease & the guarantee of
Associated bank .However, the lender may not wait for long.
Please advise.

Thank you.

EXHIBIT

"C"

**Mehul Shah, 8/30/10 8:36 AM -0500, Fwd: Fwd: Kanan Fashions Lease with Associated**     **2**

Mehul Shah


---------- Forwarded message ----------
From: **Mehul Shah** <mshah@kanangroup.com>
Date: Mon, Aug 9, 2010 at 9:46 AM
Subject: Re: Kanan Fashions Lease with Associated Bank
To: dave.clark@firstmidwest.com


Dave,
I will be in a position to raise the funds necessary to buy back the lease & the guarantee from
FMB by early part of August 16 week.
I am sorry it took me longer than I anticipated to raise these funds contrary to the end of July as
I mentioned on my last email dated June 28,10.

Thank you.

Mehul Shah

On Mon, Jun 28, 2010 at 3:55 PM, Mehul Shah <mshah@kanangroup.com> wrote:
Dave,
As discussed over the phone I would appreciate if associated can be settled at $ 60,000. If you feel it is not
working out than we should accept this offer from Associated at $ 65,000 and proceed to purchase the lease
and guaranty .
As you know I am traveling overseas and won't return until mid July. While I want to work out lease terms with
Darwin Realty when I return, I want to keep the lease separate from this matter with Associated. So if possible
I would like to have FMB buy the lease and guaranty from Associated as quickly as Bill can arrange it and
once I return to Chicago, I will arrange to repay FMB the $65,000 and repurchase the lease and guaranty from
you at that time. You can assume I will be in a position to close on this aspect with you no later than July end,
2010. Please let me know if this arrangement is satisfactory to you. Thanks again.

Regards,

Mehul



On Mon, Jun 28, 2010 at 8:58 AM, <Dave.Clark@firstmidwest.com> wrote:
The offer from Associated is now at $65,000 so I think we should settle. Then you should talk to Darwin about the
lease.

Dave Clark
Vice President
First Midwest Bank
One Pierce Place
Suite 1500
Itasca, Illinois 60143
Phone: (630) 875-7400
----- Forwarded by Dave Clark/FMBCERT on 06/28/2010 08:55 AM -----

From:    William Serritella <wserritella@agdglaw.com>
To:    '"Dave.Clark@firstmidwest.com"' <Dave.Clark@firstmidwest.com>

---

**Mehul Shah, 8/30/10 8:36 AM -0500, Fwd: Fwd: Kanan Fashions Lease with Associated**                    3

Date:       06/26/2010 06:53 AM
Subject:    FW: Kanan Fashions Lease

Let's talk.

**From**: Tina Jacobs
**To**: William Serritella
**Cc**: Dieterich, James
**Sent**: Fri Jun 25 15:31:08 2010
**Subject**: FW: Kanan Fashions Lease
Bill,

After careful consideration and analysis, Associated Bank has authorized me to revise the purchase price for the assignment of lease and guaranty of the Kanan Fashions lease from $370,000.00 to $65,000.00. This is obviously a significant reduction in the amount due to the Bank and a minimum amount it can accept to complete this assignment transaction. This counter-offer is being tendered in good faith and is not intended to solicit further offers, as the Bank is looking to keep all fees and expenses to a minimum. Please discuss this counter-offer with your client and advise me as soon as possible whether this matter can be settled for the proposed amount. Thank you.

Tina

**From**: Tina Jacobs [mailto:tjacobs@jonesandjacobs.com]
**Sent**: Friday, June 04, 2010 4:46 PM
**To**: 'wserritella@agdglaw.com'
**Cc**: 'Dieterich, James'
**Subject**: Kanan Fashions Lease

Please see attached.

Tina M. Jacobs, Esq.
Jones & Jacobs
77 W. Washington Street
Suite 2100
Chicago, Illinois 60602
(312) 419-0700 phone
(312) 419-9114 fax

IMPORTANT: This e-mail transmission is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify me immediately by responding to this e-mail or by telephone, and delete the material from your computer. Thank you.

_____ Information from ESET NOD32 Antivirus, version of virus signature database 5173
(20100604) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com


_____ Information from ESET NOD32 Antivirus, version of virus signature database 5229 (20100625) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com[attachment "Serritella 2.pdf" deleted by Dave Clark/FMBCERT]
--------------------------------------- This electronic message and any files transmitted with it are the property of First Midwest Bank and/or its affiliate, are confidential and/or privileged, and/or intended solely for the use of the individual(s) and/or entity(ies) to whom this message is addressed. If you are not the addressee or one of the named addresses or otherwise have reason to believe that you have received this message in error; please notify the sender by replying to this message and deleting it immediately from any computer. Any review, retention, dissemination, retransmission or other use of this information is strictly prohibited.

Case: 1:10-cv-00331 Document #: 170  Filed: 08/24/10 Page 1 of 6 PageID #:1383

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED CENTRAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No. 10 cv 00331 |
| | ) | |
| KANAN FASHIONS, INC., CREATIVE | ) | Judge Robert W. Gettleman |
| WAREHOUSING (CHICAGO), LLC, KANAN | ) | |
| CRUISES, INC., KANAN HOLDINGS, LLC., | ) | Magistrate Michael Mason |
| VARSHA SHAH and MEHUL SHAH, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT STATUS REPORT ON DISCOVERY

Pursuant to this Court's Orders of July 14 and August 12, 2010, Plaintiff United Central

Bank (the "Bank") and Defendants Kanan Fashions, Inc., Creative Warehousing (Chicago), LLC.,

Kanan Cruises, Inc., Kanan Holdings, LLC., Varsha Shah and Mehul Shah ("the Kanan

Defendants"), provide this Joint Status Report of August 24, 2010 regarding discovery as follows:

A. **Current Status of Discovery**

1. *Paper Discovery*. Subject to supplementation and discovery of new documents, the parties

have completed an exchange of paper documents pursuant to document requests. The Bank has

produced over 25,000 pages of documents and Kanan Defendants have produced over 7700 pages

of documents.  Subpoenaed parties have also produced substantial numbers of paper documents

(see below).

2. *Interrogatories.* The parties have exchanged and answered numerous sets of interrogatories.

The Bank has propounded two expedited requests relating to inventory and Raven and two

additional sets of interrogatories, the latter two sets being comprised of 27 questions.  The Kanan

Defendants have propounded 17 interrogatories.  The parties are continuing to complete and



supplement answers to the interrogatories as new information becomes available through investigation.

3. *Third party subpoenas.*  The Bank has issued 30 subpoenas to the Defendants' customers and banking associations as they have become known to them.  It expects to issue several more to establish its affirmative defenses as investigation unveils new entities.  The Bank has received responses from over 18 of these entities and is reviewing and producing the documents received. The Kanan Defendants have subpoenaed 4 third parties and has received some responses and are awaiting the FDIC's response to the Subpoena issued to them on June 24.

4. *Review of the Parties' ESI Systems.*

The parties have sought to gain an understanding of each other's ESI systems with the assistance of liaisons and consultants through correspondence and meetings.  The Bank responded to a series of inquiries from the Kanan Defendants on May 4 and June 11.  The Kanan Defendants have responded to the Bank's inquiries on August 20, and due to the incomplete nature of the Kanan Defendants' access to its ESI, additional inquiries and discussions between the parties will be required regarding the Kanan Defendants' ESI.  Specifically, the Kanan Defendants are attempting to gain access to its server located at the former Creative Warehousing site in Aurora, which was foreclosed upon and is now owned by First Midwest Bank.  The Kanan Defendants are negotiating with the third party lender, Associated Bank, which has asserted a lien on the server, to gain access. The Kanan Defendants also expect to provide within the next two (2) days its back-up tapes to a third party data processor, Digital Reef, that will attempt  to restore the back up tapes and will assist the Kanan Defendants in determining if any defunct server back-up data is available.

5. *Electronic Discovery*.

a.  United Central Bank:

The Bank has two sources of ESI collected and available to it: (a) all emails from Chicago and Texas branches loaded on a cloud environment which is available for Boolean searches, which after search culling, will be loaded on a document review platform; and (b) remaining ESI (group shares and file shares) which are being prepared to be loaded on a document review platform maintained by its vendor, Document Technologies, Inc. (DTI).  Once these documents are loaded, DTI can cull the documents based upon the date range specified in this Court's Order of August 12, 2010, and based on key word and custodian searches to be specified by the Kanan Defendants.[1]  At this time, the Bank's document database exceeds 110 gigabytes.  The Bank cannot yet anticipate how large the database will be for review and production until said culling occurs.  The Bank and DTI anticipate that ESI loading and culling can be completed by September 10, 2010.  At that time, the Bank will be in a position to estimate how many attorney hours will be required to review and produce its ESI.

While its motion for protective order to limit discovery was pending before this Court in June and July, United Central Bank reviewed over 66,000 pages of limited date-range ESI in preparation for discovery production.  The Bank asserts that it needs to designate a significant portion of these documents under a protective order and has brought a motion seeking the entry of such an order. The Kanan Defendants have filed a motion contesting certain provisions of the Bank's proposed protective order and requested a briefing schedule.

---

[1] The parties have reached agreement on the Kanan Defendants' key word search request to the Bank, but are refining a few terms which appear to generate excessive hits of irrelevant data.  Accordingly, the final key word search list is still being formulated.

b. The Kanan Defendants:

The Kanan Defendants expect to provide within the next two days a copy of its exchange server database, which is comprised of 160 gigabytes of data, to the foregoing Digital Reef for loading.  The Bank has requested production of certain portions of this database.  Additionally, the Bank will be providing the Kanan Defendants with its proposed keyword, custodian and date range searches for the other portions of the exchange database.  The Bank expects to make additional search requests and more information about the Kanan Defendants' databases and ESI becomes available.

6. *Depositions.*

The Bank has scheduled the depositions of certain third parties who have produced documents pursuant to subpoena (Raven, Inc. and Kohls) and expects to schedule additional depositions when documents become available.  The parties believe it is necessary to first produce and review ESI before taking depositions of key parties and witnesses.  Accordingly, no depositions have been scheduled.

7. *Other Factors.*

a. Western Springs Bank has brought a claim for mortgage foreclosure against Kanan Fashions in state court and is now seeking to intervene as a party in this Action.  Their motion is pending before Judge Gettleman on August 26, 2010.  It is unknown how their involvement may affect the discovery efforts in this case.

b. The Bank has brought a motion for partial judgment on the pleadings on both its complaint and on certain claims of the counterclaim.  The motion is fully briefed and set for argument before Judge Gettleman on September 29, 2010.  Partial judgment on the pleadings on either the complaint or counterclaim could impact the scope of discovery in this action.

4

c.      The Bank requires a protective order to protect the confidential nature of its own documents and those of subpoenaed third parties before it can produce certain documents in discovery.  The parties attempted to work out their differences in drafting an agreed order but were unsuccessful in certain respects.  The Bank has therefore, presented a motion for entry of its version of the protective order.  The Kanan Defendants have filed a motion which attaches a redlined protective order delineating the differences and has requested a briefing schedule.

**B.  <u>Proposed Schedule for Discovery</u>**

Due to the fact that the parties are still at varying stages of identifying their ESI and its scope, the parties recommend the following immediate deadlines, and recommend that further deadlines be considered within 60 days:

1.      The Bank to identify the amount of culled and potentially responsive ESI by September 15 2010 together with an estimated review and production date.

2.      The parties to meet and confer with liaisons by September 15, 2010 for follow up regarding the Kanan Defendants' August 20, 2010 letter regarding its ESI systems.

3.      Kanan Defendants to obtain its server or a forensic image of its server at Creative Wearhousing by September 15, 2010.

4.      Kanan Defendants to catalogue its back-up tapes and provide information about the availability of defunct server data by September 15, 2010.

5.      Kanan Defendants and the Bank to reach agreement on production and search terms of Kanan Defendants' exchange server by September 10, 2010.

6.      The Court to set a further status date for Kanan Defendants' estimated review and production date for ESI.

7.      The parties to continue depositions of third party witnesses.

8.      The Court to set a further status on ESI discovery for a date in October, 2010.

August 24, 2010

UNITED CENTRAL BANK

KANAN FASHIONS, INC., CREATIVE WAREHOUSING (CHICAGO), LLC, KANAN CRUISES, INC., KANAN HOLDINGS, LLC, VARSHA SHAH and MEHUL SHAH


By: ___/s/ Vilia M. Dedinas_____
        One of its Attorneys

By: _/s/ Alan R. Borlack_____
One of their Attorneys


Alexander R. Domanskis
Vilia M. Dedinas
Bradley S. Block (of counsel)
Boodell & Domanskis, LLC
205 North Michigan Avenue, Suite 4307
Chicago, IL 60601
Phone: (312) 540-1075
Fax:    (312) 540-1162
e-mail: domanskis@boodlaw.com
          vdedinas@boodlaw.com
          bblock@boodlaw.com

Alan R. Borlack
David Muschler
Eric Grossman
Bailey Borlack Nadelhoffer LLC
135 South LaSalle Street, Suite 3950
Chicago, Illinois 60603
Phone: (312) 629-2700
Fax:    (312) 629-0174
email:  aborlack@bbn-law.com
          Cubmusch@aol.com
          egrossman@bbn-law.com

From: William Serritella <wserritella@agdglaw.com>
To: "Alan R. Borlack" <aborlack@bbn-law.com>
Date: Mon, 30 Aug 2010 13:33:25 -0500
Subject: RE: RE: united central bank  v kanan/Bi Agems

I am told that no such information exists.

**From:** Alan R. Borlack [mailto:aborlack@bbn-law.com]
**Sent:** Monday, August 30, 2010 1:32 PM
**To:** William Serritella
**Subject:** Fwd: RE: united central bank v kanan/Bi Agems

What about the names and contact informatin of the principals who FMB dealt with?

From: William Serritella <wserritella@agdglaw.com>
To: "Alan R. Borlack" <aborlack@bbn-law.com>
Date: Mon, 30 Aug 2010 13:26:42 -0500
Subject: RE: united central bank  v kanan/Bi Agems

You understand correctly.

**From:** Alan R. Borlack [mailto:aborlack@bbn-law.com]
**Sent:** Monday, August 30, 2010 1:25 PM
**To:** William Serritella
**Subject:** Re: united central bank v kanan/Bi Agems

Bill, do I understand correctly that you do not have any telephone number or address or other contract information such as email?  If not, how about the names and contact informatin of the principals who FMB dealt with?

Regards

Alan

At 12:24 PM -0500 8/30/10, William Serritella wrote:
Alan:

I received your message.  The only information FMB has regarding the entity that purchased the computers is that the name of the company is Bi Agems, located in Dubai.

**EXHIBIT**

**"E"**

**William Serritella, 8/30/10 1:33 PM -0500, Re: RE: united central bank v kanan/Bi Age**     **2**

Bill


**WILLIAM J. SERRITELLA, JR.**
wserritella@agdglaw.com

 **ARONBERG GOLDGEHN**

330 N. Wabash Ave. / Suite 1700 / Chicago, IL 60611-3586
Direct: (312) 755-3136 / Fax: (312) 222-6361 / www.agdglaw.com


This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

CIRCULAR 230 NOTICE: In accordance with current Treasury Regulations, please note that any tax advice given in this message (and in any attachments) is not intended or written to be used, and cannot be used by any person, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this message.


Content-Type: image/jpeg; name="image001.jpg"
Content-Description: image001.jpg
Content-Disposition: inline; filename="image001.jpg"; size=6021;
  creation-date="Mon, 30 Aug 2010 12:24:17 GMT";
  modification-date="Mon, 30 Aug 2010 12:24:17 GMT"
Content-ID: <image001.jpg@01CB483E.43555870>


--

Alan R. Borlack
Bailey Borlack Nadelhoffer LLC
135 South LaSalle St., Suite 3950
Chicago, IL 60603
Tel: (312) 629-2700
Fax: (312) 629-0174

The information contained herein is privileged and confidential. It is intended only for the named recipients. If the receiver of this is not such intended recipient, or an employee or agent responsible for delivering this to the intended recipient, dissemination, distribution or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone and delete this original transmission.

IRS TAX DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended to be, and cannot be, used for the purpose of avoiding penalties that may be imposed under the U.S. Internal Revenue Code or to promote, market, or recommend to another party any transaction or matter.

Content-Type: image/jpeg; name="image001.jpg"
Content-Description: image001.jpg
Content-Disposition: inline; filename="image001.jpg"; size=6021;
   creation-date="Mon, 30 Aug 2010 13:26:43 GMT";
   modification-date="Mon, 30 Aug 2010 13:26:43 GMT"
Content-ID: <image001.jpg@01CB4846.FC356760>

--
Alan R. Borlack
Bailey Borlack Nadelhoffer LLC
135 South LaSalle St., Suite 3950
Chicago, IL 60603
Tel: (312) 629-2700
Fax: (312) 629-0174

The information contained herein is privileged and confidential. It is intended only for the named recipients. If the receiver of this is not such intended recipient, or an employee or agent responsible for delivering this to the intended recipient, dissemination, distribution or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone and delete this original transmission.

IRS TAX DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended to be, and cannot be, used for the purpose of avoiding penalties that may be imposed under the U.S. Internal Revenue Code or to promote, market, or recommend to another party any transaction or matter.

Content-Type: image/jpeg; name="image001.jpg"
Content-Description: image001.jpg
Content-Disposition: inline; filename="image001.jpg"; size=6021;
   creation-date="Mon, 30 Aug 2010 13:33:25 GMT";
   modification-date="Mon, 30 Aug 2010 13:33:25 GMT"
Content-ID: <image001.jpg@01CB4847.EC15A330>

**Tina Jacobs, 9/2/10 12:19 PM -0500, Re: FW: Kanan Fashions Lease with Associated Ban**    1

From: "Tina Jacobs" <tjacobs@jonesandjacobs.com>
To: "'Alan R. Borlack'" <aborlack@bbn-law.com>
Cc: <randy.schooler@associatedbank.com>
Subject: RE: FW: Kanan Fashions Lease with Associated Bank/united central bank v kanan
Date: Thu, 2 Sep 2010 12:19:56 -0500

The Assignment is dated 7/15/10.
Tina

**From:** Alan R. Borlack [mailto:aborlack@bbn-law.com]
**Sent:** Thursday, September 02, 2010 10:43 AM
**To:** Tina Jacobs
**Subject:** RE: FW: Kanan Fashions Lease with Associated Bank/united central bank v kanan

Thank you Ms. Jacobs for your response. Can you tell us the date of the Associated Bank's assignment of the lease to FMB?

Alan R. Borlack

At 5:30 PM -0500 9/1/10, Tina Jacobs wrote:

> Mr. Borlack,


> I'm sorry, but I'm not sure what you're referring to. Associated Bank assigned its lease of the equipment owned by Kanan Fashions, Inc. to First Midwest Bank. Associated Bank did not sell any equipment to Bi Agems and have no contact information for Mr. Agems.


> Tina M. Jacobs, Esq.


> **From:** Alan R. Borlack [mailto:aborlack@bbn-law.com]
> **Sent:** Tuesday, August 31, 2010 3:55 PM
> **To:** tjacobs@jonesandjacobs.com
> **Cc:** Eric G. Grossman
> **Subject:** Fwd: FW: Kanan Fashions Lease with Associated Bank/united central bank v kanan


> Dear Ms. Jacobs,


> We understand from your June 4, 2010 email below to William Serritella that you represent Associated Bank which leased a certain computer system to our client Kanan Fashions, Inc. We were advised yesterday by Dave Clark and

EXHIBIT

"F"

William Serritalla of First Midwest Bank that someone named Bi Agems in Dubai purchased and took the computer. Due to the above entitled litigation, we need to get in contact with such purchaser immediately. We ask that you advise of us all the contact information you and your client have so that we can contact Bi Agems immediately. We also ask that you advise us the amount of the purchase price that was wired to Mr. Clark.

Thanking you in advance for you cooperation,

Alan R. Borlack

Bailey Borlack Nadelhoffer LLC

135 South LaSalle St., Suite 3950

Chicago, IL 60603

Tel: (312) 629-2700

Fax: (312) 629-0174

The information contained herein is privileged and confidential. It is intended only for the named recipients. If the receiver of this is not such intended recipient, or an employee or agent responsible for delivering this to the intended recipient, dissemination, distribution or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone and delete this original transmission.

IRS TAX DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended to be, and cannot be, used for the purpose of avoiding penalties that may be imposed under the U.S. Internal Revenue Code or to promote, market, or recommend to another party any transaction or matter.

**From:** Tina Jacobs

**To:** William Serritella

**Cc:** Dieterich, James

**Sent**: Fri Jun 25 15:31:08 2010

**Subject**: FW: Kanan Fashions Lease

Bill,


After careful consideration and analysis, Associated Bank has authorized me to revise the purchase price for the assignment of lease and guaranty of the Kanan Fashions lease from $370,000.00 to $65,000.00. This is obviously a significant reduction in the amount due to the Bank and a minimum amount it can accept to complete this assignment transaction. This counter-offer is being tendered in good faith and is not intended to solicit further offers, as the Bank is looking to keep all fees and expenses to a minimum. Please discuss this counter-offer with your client and advise me as soon as possible whether this matter can be settled for the proposed amount. Thank you.


Tina


**From:** Tina Jacobs [mailto:tjacobs@jonesandjacobs.com <mailto:tjacobs@jonesandjacobs.com> ]

**Sent:** Friday, June 04, 2010 4:46 PM

**To:** 'wserritella@agdglaw.com'

**Cc:** 'Dieterich, James'

**Subject:** Kanan Fashions Lease


Please see attached.


Tina M. Jacobs, Esq.

Jones & Jacobs

77 W. Washington Street

Suite 2100

Chicago, Illinois 60602

(312) 419-0700 phone

(312) 419-9114 fax

IMPORTANT: This e-mail transmission is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify me immediately by responding to this e-mail or by telephone, and delete the material from your computer. Thank you.

_____ Information from ESET NOD32 Antivirus, version of virus signature database 5173 (20100604) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com <http://www.eset.com/>

_____ Information from ESET NOD32 Antivirus, version of virus signature database 5229 (20100625) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com <http://www.eset.com/> [attachment "Serritella 2.pdf" deleted by Dave Clark/FMBCERT] ----------------------------------------- This electronic message and any files transmitted with it are the property of First Midwest Bank and/or its affiliate, are confidential and/or privileged, and/or intended solely for the use of the individual(s) and/or entity(ies) to whom this message is addressed. If you are not the addressee or one of the named

addresses or otherwise have reason to believe that you have received this
message in error; please notify the sender by replying to this message and
deleting it immediately from any computer. Any review, retention,
dissemination, retransmission or other use of this information is strictly
prohibited.

------ End of Forwarded Message

--

_____ Information from ESET NOD32 Antivirus, version of virus signature
database 5413 (20100831) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

--
Alan R. Borlack
Bailey Borlack Nadelhoffer LLC
135 South LaSalle St., Suite 3950
Chicago, IL 60603
Tel: (312) 629-2700
Fax: (312) 629-0174

The information contained herein is privileged and confidential. It is intended only for the
named recipients. If the receiver of this is not such intended recipient, or an employee or agent
responsible for delivering this to the intended recipient, dissemination, distribution or
reproduction of this communication is strictly prohibited. If you have received this
communication in error, please notify the sender immediately by telephone and delete this
original transmission.

IRS TAX DISCLOSURE: To ensure compliance with Treasury Department regulations, we

inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended to be, and cannot be, used for the purpose of avoiding penalties that may be imposed under the U.S. Internal Revenue Code or to promote, market, or recommend to another party any transaction or matter.

_____ Information from ESET NOD32 Antivirus, version of virus signature database 5418 (20100902) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

**William Serritella, 9/3/10 12:10 PM -0500, Re: united central bank v kanan/associated ba**     **1**

From: William Serritella <wserritella@agdglaw.com>
To: "'aborlack@bbn-law.com'" <aborlack@bbn-law.com>
Date: Fri, 3 Sep 2010 12:10:34 -0500
Subject: Re: united central bank v kanan/associated bank computer

Sure - call me Tuesday afternoon when you are free.

----- Original Message -----
From: Alan R. Borlack <aborlack@bbn-law.com>
To: William Serritella
Sent: Fri Sep 03 12:09:43 2010
Subject: Re: united central bank v kanan/associated bank computer

Tied up in the morning. How about 2 pm?...Of course I am also
available all day and during the weekend too if ok with you

>I can discuss this with you.  How about first thing on Tuesday.
>
>----- Original Message -----
>From: Alan R. Borlack <aborlack@bbn-law.com>
>To: William Serritella
>Sent: Fri Sep 03 11:58:29 2010
>Subject: united central bank v kanan/associated bank computer
>
>Bill, per my voicemail a few minutes ago, I would like your
>permission to speak with Dave Clark about the sale of the Associated
>Bank computer; of course you have every right to be privy to any such
>conversation if you desire. If for any reason you refuse to grant me
>such permission, I would at least like to discuss the subject with
>you. Please get back to me as soon as you can.
>
>Regards
>Alan
>
>
>--
>Alan R. Borlack
>Bailey Borlack Nadelhoffer LLC
>135 South LaSalle St., Suite 3950
>Chicago, IL 60603
>Tel: (312) 629-2700
>Fax: (312) 629-0174
>
>The information contained herein is privileged and confidential. It
>is intended only for the named recipients. If the receiver of this is
>not such intended recipient, or an employee or agent responsible for
>delivering this to the intended recipient, dissemination,
>distribution or reproduction of this communication is strictly
>prohibited. If you have received this communication in error, please
>notify the sender immediately by telephone and delete this original
>transmission.
>

EXHIBIT

"G"

---

**Printed for "Alan R. Borlack" <aborlack@bbn-law.com>**     **1**

>IRS TAX DISCLOSURE: To ensure compliance with Treasury Department
>regulations, we inform you that any U.S. federal tax advice contained
>in this correspondence (including any attachments) is not intended to
>be, and cannot be, used for the purpose of avoiding penalties that
>may be imposed under the U.S. Internal Revenue Code or to promote,
>market, or recommend to another party any transaction or matter.


--
Alan R. Borlack
Bailey Borlack Nadelhoffer LLC
135 South LaSalle St., Suite 3950
Chicago, IL 60603
Tel: (312) 629-2700
Fax: (312) 629-0174

The information contained herein is privileged and confidential. It
is intended only for the named recipients. If the receiver of this is
not such intended recipient, or an employee or agent responsible for
delivering this to the intended recipient, dissemination,
distribution or reproduction of this communication is strictly
prohibited. If you have received this communication in error, please
notify the sender immediately by telephone and delete this original
transmission.

IRS TAX DISCLOSURE: To ensure compliance with Treasury Department
regulations, we inform you that any U.S. federal tax advice contained
in this correspondence (including any attachments) is not intended to
be, and cannot be, used for the purpose of avoiding penalties that
may be imposed under the U.S. Internal Revenue Code or to promote,
market, or recommend to another party any transaction or matter.

**William Serritella, 9/10/10 11:06 AM -0500, Re: united central bank v kanan/associated**          1

To: William Serritella <wserritella@agdglaw.com>
From: "Alan R. Borlack" <aborlack@bbn-law.com>
Subject: Re: united central bank v kanan/associated bank computer
Cc:
Bcc:
Attachments:

---

Bill, on Tuesday we spoke and you advised that on a day that Dave Clark was to meet with the buyer of the warehouse a man whose first name was Jim showed up unannounced and purchased the computer with a wire transfer from Standard Charter Bank of DuBai and left with the computer.

I asked to meet with Mr. Clark, you being welcome to attend of course, and for the name of the buyer of the warehouse. You said you would get back to me but as of today, Friday, I have not heard back from you. I assume that you have decided not to permit me to meet with Mr. Clark or wish to further communicate regarding the incident.

Regards
Alan

At 12:10 PM -0500 9/3/10, William Serritella wrote:
Sure - call me Tuesday afternoon when you are free.

----- Original Message -----
From: Alan R. Borlack <aborlack@bbn-law.com>
To: William Serritella
Sent: Fri Sep 03 12:09:43 2010
Subject: Re: united central bank v kanan/associated bank computer

Tied up in the morning. How about 2 pm?...Of course I am also available all day and during the weekend too if ok with you

>I can discuss this with you.  How about first thing on Tuesday.
>
>----- Original Message -----
>From: Alan R. Borlack <aborlack@bbn-law.com>
>To: William Serritella
>Sent: Fri Sep 03 11:58:29 2010
>Subject: united central bank v kanan/associated bank computer
>
>Bill, per my voicemail a few minutes ago, I would like your
>permission to speak with Dave Clark about the sale of the Associated
>Bank computer; of course you have every right to be privy to any such
>conversation if you desire. If for any reason you refuse to grant me
>such permission, I would at least like to discuss the subject with
>you. Please get back to me as soon as you can.
>
>Regards
>Alan
>
>
>--



---

>Alan R. Borlack
>Bailey Borlack Nadelhoffer LLC
>135 South LaSalle St., Suite 3950
>Chicago, IL 60603
>Tel: (312) 629-2700
>Fax: (312) 629-0174
>
>The information contained herein is privileged and confidential. It
>is intended only for the named recipients. If the receiver of this is
>not such intended recipient, or an employee or agent responsible for
>delivering this to the intended recipient, dissemination,
>distribution or reproduction of this communication is strictly
>prohibited. If you have received this communication in error, please
>notify the sender immediately by telephone and delete this original
>transmission.
>
>IRS TAX DISCLOSURE: To ensure compliance with Treasury Department
>regulations, we inform you that any U.S. federal tax advice contained
>in this correspondence (including any attachments) is not intended to
>be, and cannot be, used for the purpose of avoiding penalties that
>may be imposed under the U.S. Internal Revenue Code or to promote,
>market, or recommend to another party any transaction or matter.


--
Alan R. Borlack
Bailey Borlack Nadelhoffer LLC
135 South LaSalle St., Suite 3950
Chicago, IL 60603
Tel: (312) 629-2700
Fax: (312) 629-0174

The information contained herein is privileged and confidential. It
is intended only for the named recipients. If the receiver of this is
not such intended recipient, or an employee or agent responsible for
delivering this to the intended recipient, dissemination,
distribution or reproduction of this communication is strictly
prohibited. If you have received this communication in error, please
notify the sender immediately by telephone and delete this original
transmission.

IRS TAX DISCLOSURE: To ensure compliance with Treasury Department
regulations, we inform you that any U.S. federal tax advice contained
in this correspondence (including any attachments) is not intended to
be, and cannot be, used for the purpose of avoiding penalties that
may be imposed under the U.S. Internal Revenue Code or to promote,
market, or recommend to another party any transaction or matter.

Alan R. Borlack
Bailey Borlack Nadelhoffer LLC

135 South LaSalle St., Suite 3950
Chicago, IL 60603
Tel: (312) 629-2700
Fax: (312) 629-0174

The information contained herein is privileged and confidential. It is intended only for the named recipients. If the receiver of this is not such intended recipient, or an employee or agent responsible for delivering this to the intended recipient, dissemination, distribution or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone and delete this original transmission.

IRS TAX DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended to be, and cannot be, used for the purpose of avoiding penalties that may be imposed under the U.S. Internal Revenue Code or to promote, market, or recommend to another party any transaction or matter.