UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED CENTRAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 10 CV 331 |
| v. | ) | |
| | ) | Judge Feinerman |
| KANAN FASHIONS, INC. | ) | |
| CREATIVE WAREHOUSING(Chicago), LLC, | ) | Magistrate Judge Mason |
| KANAN CRUISES, INC., | ) | |
| KANAN HOLDINGS, LLC, VARSHA SHAH, | ) | |
| AND MEHUL SHAH, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS

Now come defendants Kanan Fashions, Incorporated ("Kanan"), Creative Warehousing (Chicago), LLC ("CW"), Kanan Cruises, Inc. ("Kanan Cruise"), Kanan Holdings, LLC ("KH"), Varsha Shah ("Mrs. Shah"), and Mehul Shah ("Mr. Shah"), (collectively "Defendants"), and for their response to Plaintiff's Motion for Discovery Sanctions state as follows:

### BACKGROUND

Plaintiff filed its Motion for Discovery Sanctions on September 24, 2010. Within their motion, Plaintiff alleges failures of the Defendants and their former counsel to preserve ESI and the CW server. In response, Defendants' former counsel ("Respondents") filed their motion to withdraw that very same day. Current counsel for the Defendants was granted leave to file their appearance on October 7, 2010. At that time, this Court ordered the Defendants (through new counsel) and the Respondents

(Defendants' former counsel) to separately file responses to Plaintiff's Motion for Discovery Sanctions.

## ARGUMENT

**A.  Defendants' actions do not warrant sanctions under Rule 37.**

Rule 37 authorizes a court to order sanctions in cases where there is evidence of contumacious conduct, dilatory tactics, the failure of less drastic sanctions, bad faith, or willfulness. China Ocean Shipping Co. v. Simone Metals, 1999 U.S. Dist. LEXIS 966443 (N.D.Ill. 1999).  There is no evidence of that conduct by the Defendants in this case.  Further, to prove sanction-worthy spoliation, a party must show: (1) the party having control over the evidence had an obligation to preserve when it was destroyed; (2) the loss was accompanied by a "culpable state of mind;" and (3) the lost evidence was relevant to the claims.  Jones v. Bremen High School District 228, 2010 WL 2106640, at *5 (N.D. Ill. 2010).  Without addressing other parties, Plaintiff has not and cannot meet that burden against the Defendants

In the instant case, the joint ESI was entered into on February 19, 2010.  Between February 2010 through April 2010, Respondents and Defendants engaged in occasional emails and discussions regarding general ESI.  As attorney-client privilege is clearly an issue, the details of these discussions will not be detailed so as not to waive that privilege.  However, a full copy of the Amended Chronology of ESI outlining the communications has been attached.  See attached Amended Chronology of ESI, Exhibit A.

Without waiving privilege, but in response to information raised by Respondents, Defendants immediately called First Midwest Bank representative Dave Clark at the end of April (possibly beginning of May) and told him they needed to get access to the server.

In that phone call, First Midwest Bank representative Dave Clark told Defendants that the server belonged to Associated Bank. Mr. Clark further told Defendants that he would need a court order or subpoena to allow them access to the server in the CW Warehouse. Deposition of Dave Clark, Exhibit C, 128: 6-21. Mr. Clark then told Defendants that he had also informed Plaintiff of the same procedure to have access to the server. In response, Defendants immediately third-party conference called their former counsel (Respondents) so that they could hear what the bank had told them regarding the server and act accordingly. Following that phone call, Defendants reasonably believed that either Respondents or Plaintiff would present Associated Bank or First Midwest Bank with a subpoena for the server. See attached Affidavits of Mehul Shah and Paresh Joshi, Exhibits F and G. Yet nothing was done.

Between May 2010 and August 2010, again Respondents and Defendants engaged in occasional emails and discussions regarding ESI. These interactions are outlined in the Amended Chronology of ESI, Exhibit A. At no time did Respondents or Plaintiffs issue a subpoena or provide a court order to the owner of the server or warehouse where it was stored to obtain the server. On August 30, Defendants are informed by Dave Clark of First Midwest Bank that the server has been sold to a buyer in Dubai. See attached, Exhibit B.

While Plaintiff relies heavily on the China case for support, we find the facts as applied to the current case are distinguishable. The item of dispute in China, a container, was not produced because it was destroyed during the pendency of litigation. Defendants argued that because they did not have possession of the container, sanctions were not warranted. The similarities in facts end here.

Defendants allege they did not own the warehouse and had no control over the server within that warehouse. Dave Clark confirms that First Midwest Bank owned the building that the server was located in. See Exhibit C, 65:24, 66:1-3. Associated Bank was the owner of the server. See Exhibit C, 81:3-15, 122:5-15. Perhaps the most important difference in our case from the defendants in China is that our Defendants sought access to the server, but were refused access to it. See Exhibit C, 128:6-21. See also Exhibits E and F. Dave Clark further informed Plaintiff that they, too, would need a court order to access the server. See Exhibit C, 68: 9-20, 71: 23-24, 72:1-13, 17-24, 73:1-2, 128:6-21, 129: 2-24, 130:1-12.

In China, the court reasoned that it was "more important" that the China defendant never alleged that another party prevented defendant from taking possession and control of the container. See China, 1999 U.S. Dist. LEXIS 966443 at *2. It is clear that Defendants in the instant case allege that they attempted to access and preserve the server, but were denied the access by First Midwest Bank. Therefore, even if Defendants are deemed to be in control of the server (which Defendants deny), there is no culpable state of mind.

Defendants even took additional proactive steps to obtain the server. Mr. Shah entered into negotiations with First Midwest Bank representative Dave Clark to attempt to re-lease the server contract so that he could have possession of the server. It appeared that a deal was coming close to fruition at the end of June 2010. See attached, Exhibit D. Mr. Shah began to seek the funds to close the deal. However, upon his return from a trip home overseas, Mr. Clark of First Midwest Bank informed Mr. Shah that the server had been sold to a buyer in Dubai. See attached, Exhibit B. Dave Clark sold the server

despite being informed to preserve the server and allow access of it to UCB or Defendants in connection with the litigation on March 16, 2010. See attached, <u>Exhibit E</u>. That email notification by Steve Blumenthal, counsel for Kanan, on March 16, 2010 served as notice to First Midwest Bank to preserve the server. See <u>Exhibits F</u> and <u>G</u>. (There was other ESI related correspondence among the Plaintiff, Respondents and Defendants. We have addressed the issues surrounding the warehouse server in this argument. See <u>Exhibit A</u> for Defendants' full Amended Chronology of ESI.). It is not reasonable to believe that Defendants who actively sought possession of the server could at the same time have a culpable state of mind to lose the same server.

    In another glaring difference between the <u>China</u> case and the instant case, there is no evidence yet that the server has been destroyed, is unrecoverable. All parties are currently working toward locating the server. In fact, discovery depositions and subpoenas for records have been ongoing. Unlike the destroyed and disposed container in <u>China</u>, we do not yet even know that the server has been destroyed or may not be recovered. We will not know until discovery on these matters has been completed.

    The evidence thus far has only shown that Associated Bank, not the Defendants, was the owner of the server. The evidence further shows that the warehouse that stored the server was owned and controlled by First Midwest Bank, not the Defendants. The evidence further proves that First Midwest Bank was informed of the duty to preserve the server as far back as March 16, 2010. The Defendants claim that upon knowledge of a request to get that server in April, they made the request of the person in control and were denied. Finally, it is clear that the sale of the server in question was by Associated Bank

to First Midwest Bank, then First Midwest Bank to a buyer from Dubai, not the Defendants.

Plaintiff has not proven that the "missing server" has any information relevant to their claim of default of the loans it made the Defendants that are the subject of this lawsuit. The testimony thus far provided that the server contained the inventory system for the warehouse. This information has no relevance to a breach of loan. To be successful on the breach of loan claims, Plaintiff must prove (in simplified terms) that Defendants did not make the payments on the loan as required. There has been no evidence introduced why this server would have any relevant information on the repayment of the loans. Therefore, there is no prejudice to the Plaintiff in its ability to prove default of the loans.

Ultimately, Defendants' actions do not warrant sanctions. Unlike the defendants in China, these Defendants have alleged, supported with affidavit and email correspondence and been corroborated by witness testimony that they did not ignore the Court's order. In fact, they took proactive steps and reached out to the owner and possessor of the server on numerous occasions, but were refused. This conduct is not willful or in bad faith. Defendants' actions are quite the opposite. Defendants acted in good faith to obtain the server.

### B. Even if Defendants are found to have failed to preserve the server, Respondents have the duty to take responsibility of the discovery.

As Plaintiff points out, "counsel have an obligation to press their clients, take supervisory responsibility over discovery and not accept unsubstantiated assurances that the client is producing discovery." See Qualcomm, Inc. v. Broadcom Corp., 2008 U.S. Dist LEXIS 911 (S.D. Cal. Jan 7, 2008), vacated in part on other grounds, 2008 U.S. Dist

LEXIS 16897 (S.D. Cal. March 5, 2008); Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 433 (S.D. N.Y. 2004)("active supervision of counsel' is of particular importance when ESI is involved). While we do not concede Defendants gave respondents unsubstantiated assurances, it was clearly Respondents duty to take the lead and control over the ESI discovery. The burden should not fall to the client to comply with the rules of this Court when they have hired and paid substantial fees to an attorney for that purpose.

Respondents failed in their actions, or lack thereof, on numerous occasions. Respondents failed to notify Defendants of access of the CW server until April 26, 2010. By this time, Defendants had already consented to foreclosure on the CW warehouse. When Defendants informed Respondents in April that the person in possession required a subpoena or court order to access the server, Respondents did not issue a subpoena or request a Court order. Again in May when Defendants informed Respondents that it was not able to get access to the server, the Respondents did not issue a subpoena or request.

Plaintiff makes many allegations in its Motion for Discovery Sanctions about the incorrect information they received regarding the server. This information, and all information flow, was from the Respondents to Plaintiff. Defendants were not in control of what Respondents said or drafted in letters and status reports.

## CONCLUSION

Defendants conduct does not reach level of sanctions. Plaintiff has not proven that Defendants were in control over this server. Further, it was not "extreme" as the law requires, to impose sanctions, especially sanctions as damaging as dismissal. Defendants did not hide anything. In fact, Defendants, without the assistance or direction of counsel,

were left to navigate the rules of ESI on their own. Defendants actively pursued locating and obtaining the server, but were denied. Again, this was all done without guidance from counsel, where the law requires it. It would be disproportionate to dismiss their claim based on these facts.

WHEREFORE, Defendants KANAN FASHIONS, INC., CREATIVE WAREHOUSING (Chicago), LLC, KANAN CRUISES, INC., KANAN HOLDINGS, LLC, VARSHA SHAH, AND MEHUL SHAH, pray this Honorable Court deny Plaintiff's Motion for Discovery Sanctions, and for any other relief this Court deems just.

Respectfully submitted,

KANAN FASHIONS, INC., CREATIVE WAREHOUSING (Chicago), LLC, KANAN CRUISES, INC., KANAN HOLDINGS, LLC, VARSHA SHAH, AND MEHUL SHAH,

_____/s/ James J. Roche_____
By: One of their attorneys

James J. Roche
James J. Roche & Associates
642 North Dearborn Street
Chicago, IL 60654
Phone: (312) 335-0044
Fax:    (312) 335-9009
e-mail: jroche@jjroche.net
Atty. No. 2359162

**COUNSEL FOR DEFENDANTS**

Dated: December 8, 2010