IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED CENTRAL BANK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KANAN FASHIONS, INC., CREATIVE ) <br> WAREHOUSING (Chicago), LLC, ) <br> KANAN CRUISES, INC., KANAN ) <br> HOLDINGS, LLC, VARSHA SHAH, ) <br> AND MEHUL SHAH, ) <br> Defendants. ) <br> ) <br> UNITED CENTRAL BANK, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ALAN R. BORLACK, ERIC G. ) <br> GROSSMAN, and DAVID E. ) <br> MUSCHLER, ) <br> ) <br> Respondents. | Case No. 10 cv 00331 <br> Judge Feinerman <br> Magistrate Judge Mason |

**POST-HEARING BRIEF ON LAW APPLICABLE TO RESPONDENTS**

Respondents, ALAN R. BORLACK, ERIC G. GROSSMAN, and DAVID E. MUSCHLER, by and through their attorneys, Alan R. Lipton and Thomas P. McGarry, file their Post-Hearing Brief on Law Applicable to Respondents, as follows:

**INTRODUCTION**

The Court has requested a post-hearing brief addressing the law applicable to Respondents as applied to the facts adduced during the recent sanctions hearing. Defendants' brazen conduct is unprecedented, and Respondents have been unable to

find case law directly on point.  But the Court can and should rely on existing law as discussed below.

Without reciting the facts adduced at the hearing, the following conclusions can be applied to generally applicable principles in existing law:

1. Respondents acted at all times in good faith;

2. Unknown to Respondents, Defendants willfully ignored Respondents' repeated instructions to preserve and protect ESI;

3. Unknown to Respondents, willfully orchestrated and engaged in a scheme to obstruct justice by spoliating the CW server and its contents; and

4. Defendants actively concealed their criminal spoliation scheme from Respondents.

Plaintiff's motion [Doc. #206] at paragraph 3 asserts four alleged bases for sanctions against Defendants under Rule 37(b) and the Court's inherent authority.  But nowhere does the  Notice allege any wrongful conduct or violations on the part of Respondents.[1]

---

[1] Plaintiffs allege that Defendants (not Respondents) violated: (1) the common law duty to preserve the evidence stored on the CW server; (2) the Court's Standing Order for ESI (although the exact violation was not described in UCB's motion or raised either in briefing or during the hearing); (3) "…the Court's August 27, 2010 'instruction' that no spoliation of Defendants' computer servers occur…"; and (4) "…the Court's August 27, 2010 order requiring Defendants to obtain the computer server located at Creative Warehousing's Aurora warehouse…or a forensic image…by September 15, 2010."  Of course compliance with the August 27, 2010 order was impossible because the server had been sold by FMB to Diagems, FZC and transferred to a man named Jim by the end of July, 2010.

130060532v1 0916885 58355

**APPLICABLE LAW**

A.     **There is no authority to sanction an attorney for mere negligence, there must be "willful disobedience or bad faith" and attorneys may not be sanctioned for "fault"**

In *Maynard v. Nygren*, 332 F.3d 462, 470-71 (7th Cir. 2003), the Seventh Circuit held that to assess sanctions against counsel, there must be "willful disobedience or bad faith." The court also specifically found ". . . no authority under the [Federal] Rules [of Civil Procedure] or under the inherent powers of the court to sanction attorneys for mere negligence." *Id.*

Plaintiff, on the other hand, incorrectly asserts that *Maynard* merely addresses whether a court can assess monetary sanctions against an attorney for violations of Rule 37(c). But *Maynard* does not merely address whether an attorney can be sanctioned for violations of Rule 37(c). *Maynard* expressly states that attorneys may not be sanctioned for mere negligence under [any of] the Federal Rules or the court's inherent authority.

Plaintiff also wrongly cites *Marrocco v. Goodyear Tire & Rubber Co.*, 966 F.2d 220, 224 (7th Cir. 1992), as authority for the proposition that attorneys can be sanctioned for noncompliance with a court order based on fault. *Marrocco* merely states the general proposition that under Rule 37(b) *parties* can be sanctioned for noncompliance with a court order based on willfulness, bad faith, or fault. *Marrocco* does not, however, address the standard for sanctioning *attorneys* for their client's failure to comply with a court order.

In its analysis of the basis for sanctioning parties, *Marrocco* defined "fault" as "[not] speak[ing] to the noncomplying party's disposition at all, but rather only

describes the reasonableness of the conduct-or lack thereof-which eventually culminated in the violation." *Id.* at 224. Fault is thus a negligence standard. If fault were applicable to attorneys, it would eviscerate *Maynard's* admonition that attorneys may only be sanctioned for "willful disobedience or bad faith" and not "mere negligence".

In this case, Respondents acted at all times in good faith. No evidence has been adduced which suggests that Respondents acted in willful disobedience of a court order or in bad faith. Rather, the evidence unequivocally shows that Respondents diligently sought to *implement* ***all*** of this Court's orders to the best of their abilities.

**B.     Assessing sanctions against an attorney under Rule 37(b) requires a causal relationship between an attorney advising a party and that party's disobedience of a court order.**

Under the facts of this case, the express language of Rule 37(b)(2)(C) is particularly appropriate:

> . . . the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

The Rule specifically refers to ". . . the attorney advising the disobedient party . . ." No evidence has been adduced that Respondents ever advised Defendants to do anything which would have resulted in disobedience of a court order or knowingly tolerated such contumacious conduct by Defendants. To the contrary, the evidence is that Respondents conscientiously sought to compel the Defendants to obey the Court's orders concerning preservation and production of ESI.

4

However, there was a second attorney, Steven Blumenthal, who, advised Defendants with regard to ESI in this case. Mr. Blumenthal's advice on ESI was provided to Defendants secretly, without the knowledge or consent of Respondents and was limited to providing advice on "preserving and protecting" the CW server and its contents. This secret advice was provided by Mr. Blumenthal despite his knowledge that Defendants were represented by Respondents in this litigation, that the information stored on the CW server was relevant to this litigation, that Respondents had issued repeated litigation holds to Defendants concerning ESI generally and the CW server, in particular. Mr. Blumenthal's advice was directly contrary to and conflicted with Respondents' advice concerning the preservation and protection of the information stored on the CW server. Unknown to Respondents, Defendants secretly followed Mr. Blumenthal's advice which led directly to the spoliation of the CW server and its contents.

Because Rule 37(b)(2)(C) imposes expenses "caused by" an attorney advising a disobedient party, the Rule expressly requires a causal relationship between the disobedience and the advising attorney's conduct or advice. In this case, Respondents always urged Defendants to adhere to the Court's orders. There is no causal relationship between Respondents' conduct or advice concerning the preservation of ESI and the spoliation of the CW server and its contents, and certainly no causation that rises to the level of the requisite bad faith or willfulness. Mr. Blumenthal's secret advice to Defendants, however, was a direct and proximate cause of the spoliation of the CW server and its contents which resulted in disobedience of this Court's ESI orders. By the

5

express terms of the Rule, absent a causal relationship between Respondents and Defendants' disobedience, Respondents cannot be assessed expenses under Rule 37(b).

The language of the Rule exempts an advising attorney from an assessment of expenses if the party's failure to comply with the court order was ". . . substantially justified or other circumstances make an award of expenses unjust." An award of expenses against Respondents would constitute a miscarriage of justice. Not only does the evidence show that Respondents acted at all times in good faith seeking to implement the Court's ESI orders, but the evidence also shows that Respondents were lied to and deceived by their own clients. These lies paved the way for Defendants to spoliate the CW server, because to successfully eliminate the server and its contents, it was first necessary to deceive Respondents, who in turn, unwittingly passed Defendants' misrepresentations on to the Court and counsel. In short, Respondents were victimized by Defendants' fraud on the Court in exactly the same way as were the Court and Plaintiff. It would be a miscarriage of justice to assess expenses against Respondents for Defendants' violation of the Court's orders when Respondents were victimized by the same fraudulent conduct as were the Court and counsel.

Defendants' fraudulent misrepresentations to Respondents and ultimately to the Court allowed them to spoliate the CW computer and its contents in order to conceal evidence fatal to their case. This conduct constitutes the crime of obstruction of justice. It is elementary that criminal conduct is an unforeseeable, superseding, intervening cause of damages. It would be the height of injustice to make Respondents the guarantors of damages arising from a crime perpetrated by Defendants. If Rule

6

37(b)(2)(C) sanctions may only be assessed against an advising attorney for willful disobedience or bad faith, it is axiomatic that advising attorneys cannot be sanctioned for the unforeseeable, superseding criminal conduct of their clients.

C. **Respondents' efforts to preserve ESI met the standards of *Zubulake*, and Defendants acted at their own peril in disregarding Respondents' preservation instructions.**

*Zubulake v. UBS Warburg, LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004 ) outlines counsel's duties with respect to preservation of ESI. The evidence shows that Respondents faithfully adhered to the common law duties discussed in *Zubulake.* But that adherence is almost beside the point because Defendants continually lied to Respondents about their alleged efforts to preserve and protect ESI and secretly ignored Respondents' instructions concerning the CW server. According to *Zubulake*:

> At the end of the day, however, the duty to preserve and produce documents rests on the party. Once that duty is made clear to a party, either by court order or by instructions from counsel, that party is on notice of its obligations and acts at its own peril. . . .

*Id.* at 432.

There is no doubt that Defendants acted contrary to Respondents' many instructions concerning ESI and in particular the CW server. Rather, Defendants followed the conflicting advice of another attorney. According to *Zubulake,* Defendants were fully on notice of their discovery obligations and acted at their own peril when they rejected Respondents' instructions concerning the CW server and chose instead to follow the conflicting advice of a different legal counsel.

7

Plaintiff has suggested that Respondents did not "monitor" compliance with the litigation hold, apparently implying that monitoring compliance would have uncovered Defendants' criminal intent. But *Zubulake* defines "monitoring compliance with the litigation hold" as taking "affirmative steps" to monitor compliance " . . . so that all sources of discoverable information are identified and searched . . . counsel and client must take some reasonable steps to see that sources of relevant information are located." *Id.* at 432. Under *Zubulake's* definition, Respondents complied with the duty to monitor once the CW server was located and counsel instructed Defendants to get control of the server so that its contents could be reviewed.

*Zubulake* also addresses the continuing duty to preserve ESI: "[A] lawyer cannot be obligated to monitor his client like a parent watching a child. At some point, the client must bear responsibility for a failure to preserve." *Id.* at 433. The case before this Court is unprecedented in the sense that existing case law has not addressed a situation where a party arranges behind his lawyers' backs for a computer server containing damaging or incriminating ESI to simply disappear. In such a case, the party who has engaged in the deceptive, criminal conduct must "bear responsibility for a failure to preserve." It would be inequitable and unjust to make that party's counsel the insurer of evidence that, unknown to counsel, was destined for oblivion.

**D.    A client's lack of candor is a factor to be weighed when evaluating whether counsel has acted in willful disobedience of a court order or in bad faith.**

In *Qualcomm Inc. v. Broadcom Corp.*, 2010 WL 1336937 (April 2, 2010 S.D.Cal., 2010) ("*Qualcomm III*"), the district court reversed its earlier decision to impose

8

sanctions upon the attorneys for an inadequate document search, an inadequate investigation when unproduced documents were discovered, and failure to ensure that there was a legitimate factual basis for their legal argument. *Id.* at *1-5. In reversing the attorneys' sanctions, the court noted that the discovery failures "were exacerbated by an incredible lack of candor on the part of [their client]." *Id.* at *4. The court went on to hold "that, although a number of poor decisions were made, the involved attorneys did not act in bad faith." *Id.* at *6-7. Although these were "significant errors," the court concluded that "there is insufficient evidence to prove that any of the Responding Attorneys engaged in the *requisite* 'bad faith'." *Id.* at *7 (Emphasis added). In this case, Defendants did not merely display a "lack of candor" to Respondents, they made *fraudulent misrepresentations.* In short, they lied to conceal their scheme.

The finding in *Qualcomm III* should be contrasted with the district court's affirmance of a Special Master's award of attorneys' fees under Rule 37(b)(2) jointly and severally against an attorney and his client for the client's disobedience of an order:

> We also affirm the Special Master's finding that defendants' attorney . . . should be held jointly and severally liable for the expense award, because he was the attorney advising the party failing to obey the order, because the Master found that he "contributed significantly to the pattern of delay and defiance," and because there appear no other circumstances making such an award unfair or unjust.

*Chesa Int'l, Ltd. v. Fashion Associates, Inc.*, 425 F.Supp. 234, 237 (S.D.N.Y. 1977). *Chesa* is cited with approval in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-764, 100 S.Ct. 2455 (1980), as a case in which both parties and counsel may be held personally liable under Rule 37(b) for expenses caused by a failure to comply with discovery orders.

9

In the case before the Court, there is no evidence that Respondents "contributed significantly" *or in any other way* to Defendants' scheme to spoliate the CW server and its contents. To the contrary, the only reasonable interpretation of the evidence is that Respondents were intentionally cut out of the loop with respect to Defendants' nefarious plans and as a result cannot be shown to have caused the spoliation in any way let alone acted in willful disobedience of a court order or in bad faith.

## CONCLUSION

For all of the foregoing reasons, the applicable law clearly does not permit an award of sanctions of any kind against Respondents including under Rule 37(b), the court's inherent authority or under any other legal theory. Plaintiff has failed to show by any burden of proof or to any standard of fairness or justice applicable to discovery sanctions against attorneys that Respondents acted in willful disobedience of a court order or in bad faith. To the contrary, the only reasonable interpretation of the evidence is that Respondents not only discharged their ESI duties at all times in good faith, but that they were intentionally cut out of the loop with respect to Defendants' nefarious plans. As a matter of aw and equity and award of sanctions against them is neither warranted nor just under the circumstances.

**WHEREFORE,** Respondents respectfully request that because of Defendants' inequitable, unjust and criminal conduct that led to the need for Respondents to defend against a clearly unmeritorious sanctions motion, the Court issue a Rule to Show Cause why Defendants should not be required to pay Respondents' expenses, including attorneys' fees and costs incurred in the defense of this motion. Respondents also

10

respectfully request that the Court award them such other and further relief as is just and proper in the premises.

                                        Respectfully submitted,

                                        ALAN R. BORLACK, ERIC G. GROSSMAN, and DAVID E. MUSCHLER

                                        By: /s/ Alan R. Lipton
                                               One of their Attorneys

Thomas P. McGarry
Alan R. Lipton
HINSHAW & CULBERTSON LLP
222 N. LaSalle St., Suite 300
Chicago, IL  60601-1081
Phone:  312-704-3000
Fax:    312-704-3001