UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED CENTRAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 331 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| KANAN FASHIONS, INC., CREATIVE WAREHOUSING (Chicago), LLC, KANAN CRUISES, INC., KANAN HOLDINGS, LLC, VARSHA SHAH, and MEHUL SHAH, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff United Central Bank ("United") brought this action against four entities—Kanan Fashions, Inc. ("Fashions"), Creative Warehousing (Chicago), LLC ("Creative"), Kanan Cruises, Inc. ("Cruises"), and Kanan Holdings, LLC ("Holdings")—and two individuals—Varsha Shah and Mehul Shah—alleging breach of contract and replevin. The case concerns four loans issued by United's predecessor, Mutual Bank, to the entity defendants (collectively, "Borrowers"). Loan No. 1, for $26.5 million, was made to Fashions on June 26, 2006, for the purpose of maintaining working capital. Loan No. 2, for $591,000, was made to Creative and Fashions on June 23, 2004, for the purpose of building out Creative's warehouse. Loan No. 3, for $1,776,000, was made to Creative and Fashions on June 23, 2004, for the purpose of purchasing equipment for Creative's warehouse. Loan No. 4, for $2,320,000, was made to Holdings and Cruises on March 8, 2005, for the purpose of funding the purchase of a cruise ship.

Count I of the complaint alleges that the Borrowers" defaulted on the loans by failing to make payments when due. The answer admits that the Borrowers failed to make payments on

-1-

Loan Nos. 2-4, but as an affirmative defense alleges that United materially breached its obligations under Loan No. 1, thereby excusing the Borrowers' alleged default on Loan Nos. 2-4. The Borrowers also brought counterclaims, including for United's alleged breach of Loan No. 1. United has moved under Fed. R. Civ. P. 12(c) for partial judgment on the pleadings on Count I, solely as it pertains to Loan Nos. 2-4, and on the counterclaims. Defendants since have voluntarily dismissed their counterclaims, so all that remains of United's motion is the request for partial judgment on Count I.

Before addressing that motion, it is necessary to resolve Defendants' challenge to subject matter jurisdiction. The complaint invokes the diversity statute, 28 U.S.C. § 1332, alleging that the amount in controversy exceeds $75,000 and that the parties are diverse, with United being a Texas citizen and Defendants being Illinois citizens. *See* Doc. 4, ¶¶ 1, 3-10. Because the complaint did not properly allege the citizenship of Creative and Holdings, which are limited liability companies, the court gave United the opportunity to file an addendum making the proper jurisdictional allegations. *See* Doc. 203. United filed an addendum (Doc. 214) that identified the members of Creative and Holdings and alleged that the members are citizens of Illinois. *See Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006) (for diversity purposes, the citizenship of an LLC is the citizenship of its members).

Although United's addendum properly alleged Creative's and Holdings's citizenship, Defendants have moved to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on a different ground—that United is a citizen of both Texas and Illinois, and thus not diverse from Defendants. United has responded on the merits, and for good measure has moved to amend its complaint to provide further detail supporting its position that it is a citizen of Texas and not Illinois.

Defendants' motion rests on the premise that United is an "association," not a corporation. From that premise, Defendants maintain that the citizenship of an association is the citizenship of its members; that a bank association is a citizen of any state where it has a branch; that United has branches in Illinois; and therefore that United is a citizen of Illinois as well as of Texas. United retorts that although it is a "banking association," Texas law deems a "banking association" to be a "corporation," and that because United is organized under Texas law and has its principal place of business in Texas, it is a Texas citizen only. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business," with exceptions not pertinent here).

State law determines whether an entity is a "corporation" for diversity purposes. *See Mut. Serv. Cas. Ins. Co. v. Country Life Ins.*, 859 F.2d 548, 550 (7th Cir. 1988). A "banking association," which United alleges itself to be (*see* Doc. 377 at 2; Doc. 377-1 at 3), is an entity recognized by the Texas Finance Code. *See* V.T.C.A., Fin. Code § 32.001(a) ("One or more persons, a majority of whom are residents of this state, may organize a state bank as a banking association or a limited banking association."). Defendants fixate on the word "association," but the Code defines "banking association" to be "a state bank that is *organized under this subtitle as a corporation*, authorized to issue shares of stock, and controlled by its shareholders." *Id*. § 31.002(a)(5) (emphasis added). The Code adds that "[f]or purposes of other state law, a banking association is considered a corporation," that "[t]o the extent consistent with this subtitle, a banking association may exercise the powers of a Texas business corporation," and that with inapplicable exceptions, "[t]he [Texas] Business Organizations Code applies to a banking association as if it were a for-profit corporation." *Id*. §§ 32.001(c), 32.008(a). Consistent with these statutory provisions, United's predecessor's "Articles of Association"

repeatedly refers to the entity as "the corporation" and states that the document's purposes include "incorporating and operating the [entity] under and by virtue of the laws of the State of Texas." Doc. 377-1 at 6, 9, 11, 16.

Texas law, then, deems United to be a corporation, which means that United is a citizen of its state of incorporation (Texas) and the state of its principal place of business (also Texas), not of the states where it maintains branches. *See Mut. Serv. Cas. Ins. Co.*, 859 F.2d at 550 (holding that Minnesota insurance entity is a "corporation" because Minnesota law considers it to be a corporation). This conclusion is fully consistent with *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006), where the Supreme Court observed:

> A business organized as a corporation, for diversity jurisdiction purposes, is "deemed to be a citizen of any State by which it is incorporated" and, since 1958, also "of the state where it has its principal place of business." § 1332(c)(1). State banks, usually chartered as corporate bodies by a particular State, ordinarily fit comfortably within this prescription.

*Id*. at 306. After articulating this understanding of the citizenship of state banks, the Court rejected the notion that "a national bank" should be deemed "a citizen of every State in which it has established a branch," reasoning that if the notion were accepted, "the access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state-incorporated entities." *Id*. at 307.

The principle underlying *Wachovia Bank* is that a state bank is a citizen of its state of incorporation and its principal place of business, not of the states where its branches are located. In setting forth this principle, *Wachovia Bank* ratified what appears to have been the unanimous consensus among federal courts. *See, e.g., Horton v. Bank One, N.A.*, 387 F.3d 426, 431 (5th Cir. 2004) ("a state bank, under 28 U.S.C. § 1332(c)(1), may be a citizen of no more than two states—the state where its principal place of business is located and its state of incorporation");

*First Ala. Bank of Montgomery, N.A. v. First State Ins. Co., Inc.*, 899 F.2d 1045, 1049 n.1 (11th Cir. 1990) ("First Alabama Bank is a state banking association with its principal place of business in Montgomery, Alabama."); *Johnson Bank v. George Korbakes & Co., LLP*, 2005 WL 4983515, at *1 (N.D. Ill. Aug. 3, 2005) ("The Bank is a state banking association, chartered pursuant to Chapter 221 of the Wisconsin Statutes … [and] maintains its principal place of business in Racine, Wisconsin."); *RDC Funding Corp. v. Wachovia Bank, N.A.*, 2004 WL 717111, at *6 (D. Conn. Mar. 31, 2004) ("The location of branch banks does not control the citizenship of state banks; instead, as with any other diversity question, citizenship is determined by the bank's organizational structure. Thus, if a state bank is a corporation, then its citizenship would be its principal place of business and place of incorporation."); *U.S. Shoe Corp. v. Beard*, 463 F. Supp. 754, 755 (S.D. Ala. 1979) ("Defendant Wilcox County Bank was at all times relevant to the events leading up to the institution of this lawsuit a state banking association organized under the laws of the State of Alabama with its principal place of business in Alabama."); *see also Heil v. Iron Cnty.*, 376 Fed. Appx. 868, 871 (10th Cir. 2010) (in finding diversity jurisdiction, noting that "the Bank was formed pursuant to Utah's banking laws and had its principal place of business in Utah").

Defendants cite no case law to the contrary. Instead, they invoke Section 5-116 of the Uniform Commercial Code, which reads as follows:

> § 5-116.  Choice of Law and Forum
>
> (a) The liability of an issuer, nominated person, or adviser for action or omission is governed by the *law of the jurisdiction chosen by an agreement* in the form of a record signed or otherwise authenticated by the affected parties in the manner provided in Section 5-104 or by a provision in the person's letter of credit, confirmation, or other undertaking. *The jurisdiction whose law is chosen* need not bear any relation to the transaction.

> (b) Unless subsection (a) applies, the liability of an issuer, nominated person, or adviser for action or omission *is governed by the law of the jurisdiction in which the person is located*. The person is considered to be located at the address indicated in the person's undertaking. If more than one address is indicated, the person is considered to be located at the address from which the person's undertaking was issued. *For the purpose of jurisdiction, choice of law, and recognition of interbranch letters of credit, but not enforcement of a judgment, all branches of a bank are considered separate juridical entities and a bank is considered to be located at the place where its relevant branch is considered to be located under this subsection.*
>
> (c) Except as otherwise provided in this subsection, the liability of an issuer, nominated person, or adviser is governed by any rules of custom or practice, such as the Uniform Customs and Practice for Documentary Credits, to which the letter of credit, confirmation, or other undertaking is expressly made subject. If (i) this article would govern the liability of an issuer, nominated person, or adviser under subsection (a) or (b), (ii) the relevant undertaking incorporates rules of custom or practice, and (iii) there is conflict between this article and those rules as applied to that undertaking, those rules govern except to the extent of any conflict with the nonvariable provisions specified in Section 5-103(c).
>
> (d) If there is conflict between this article and Article 3, 4, 4A, or 9, this article governs.
>
> (e) The forum for settling disputes arising out of an undertaking within this article may be chosen in the manner and with the binding effect that governing law may be chosen in accordance with subsection (a).

U.C.C. § 5-116 (emphasis added); *see* V.T.C.A., Bus. & Comm. Code § 5-116 (adopting this UCC provision); 810 ILCS 5/5-116 (same). Defendants interpret the last sentence of subsection (b)—"For the purpose of jurisdiction, choice of law, and recognition of interbranch letters of credit, but not enforcement of a judgment, all branches of a bank are considered separate juridical entities and a bank is considered to be located at the place where its relevant branch is considered to be located under this subsection"—to say that, for purposes of *federal diversity* jurisdiction, a "bank" is a citizen of every state where it has a branch. That cannot possibly be correct, as *Wachovia Bank* and the other cases cited above hold that a state bank's citizenship for

diversity purposes turns on ordinary principles of corporate citizenship, not on the location of its branches. Defendants do not cite, and the court is unaware of, any reported decision adopting their interpretation of Section 5-116(b), and no case where a party even attempted to advance that interpretation. The likely reason is that the context of Section 5-116 as a whole plainly shows that the word "jurisdiction" in subsections (a) and (b) connotes not federal subject matter jurisdiction, but the jurisdiction (state) whose law applies to a given letter-of-credit relationship. There is no indication in the provision's text or its Official Comment that the drafters, or the legislatures of Texas and Illinois, thought that Section 5-116 would govern the citizenship of state banks for purposes of the federal diversity statute.

Because diversity jurisdiction lies over this action, Defendants' motion to dismiss is denied. To ensure that the pleadings fully reflect the basis for deeming United a citizen of Texas only, United's motion to amend the complaint is granted, so that Paragraph 1 now alleges: "Plaintiff United Central Bank ('United') is a state banking association organized and existing as a Texas corporation under §§ 32.001(a), (c) and 32.008 of the Texas Finance Code, with its principal place of business at 4555 W. Walnut Street, Garland, Texas 75042." *See Mut. Serv. Cas. Ins. Co.*, 859 F.2d at 550 (allowing plaintiff to amend jurisdictional allegations on appeal); 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").

With subject matter jurisdiction secure, the merits of United's Rule 12(c) motion may be addressed. As noted above, Defendants admit that the Borrowers failed to make payments on Loan Nos. 2-4 when due. *See* Answer ¶¶ 19, 23, 27 (Doc. 28 at 5-8); Counterclaims ¶¶ 29, 42 (Doc. 28 at 28, 32). The Borrowers' defense turns on what they call a "one contract defense," which posits that because all four loans were effectively a single contract, United's alleged

breach of Loan No. 1 constitutes a material breach of Loan Nos. 2-4, thereby excusing the Borrowers from making further payments on Loan Nos. 2-4. *See* Doc. 125 at 14-15; Answer ¶¶ 19, 23, 27 (Doc. 28 at 5-8); Affirmative Defense ¶ 1 (Doc. 28 at 19); Counterclaims ¶¶ 29, 42 (Doc. 28 at 28, 32). The defense, as Defendants concede, is ineffective unless all four loans are deemed to be a single contract. *See* Doc. 125 at 14-15.

The loan agreements provide that they are governed by Illinois law. *See* Doc. 4-1 at 10, 28, 38; Doc. 4-2 at 4. "Under Illinois law, 'where different instruments are executed at the same time between the same parties for the same purpose and in the course of the same transaction, all instruments must be read and construed together' as constituting but one single contract." *Home Ins. Co. v. Chicago & Nw. Transp. Co.*, 56 F.3d 763, 766 (7th Cir. 1995) (quoting *McKown v. Davis*, 454 N.E.2d 1086, 1088 (Ill. App. 1983)). In *Home Insurance Company*, the Seventh Circuit considered whether three contracts between Chicago and North Western Transportation Company ("CNW") and Metropolitan Rail-Metra ("Metra") were effectively a single contract. The three contracts were: (1) an Equipment Purchase Agreement, dated June 1977, under which CNW sold commuter railroad equipment to Metra; (2) an Equipment Lease, dated December 1977, under which CNW leased the same equipment back from Metra; and (3) a Purchase of Service Agreement, dated December 1976, under which CNW provided commuter transportation services for Metra. *Id*. at 765. Although the three contracts were between the same two parties, two of the contracts pertained to the same railroad equipment, and the latest contract referenced the two earlier contracts, the Seventh Circuit held that they were separate agreements that could not be deemed a single contract. The court reasoned that "the three agreements were not executed contemporaneously or entered into in the course of the same transaction," and that "the

three documents cover three distinct legal relationships between Metra and CNW with distinct purposes." *Id*. at 766-77.

The four loan agreements here present an even weaker case for treatment as a single contract than did the three agreements in *Home Insurance Company*. As an initial matter, Loan No. 1—the loan United is alleged to have materially breached, and thus the lynchpin of Defendants' "one contract theory"—was entered over a year after Loan No. 4 and two years after Loan Nos. 2-3. *See* Doc. 4-1 at 18, 25, 35; Doc. 4-2 at 2. Moreover, Loan No. 1 had a different purpose than Loan Nos. 2-4: Loan No. 1 was to Fashions for maintaining working capital; Loan Nos. 2-3 were to Creative and Fashions for building out and purchasing equipment for Creative's warehouse; and Loan No. 4 was to Holdings and Cruises for purchasing a cruise ship. *See* Doc. 4-1 at 21, 27, 37; Doc. 4-2 at 4. Defendants themselves admit that Loan No. 1 had a different purpose and was entered into at a different time than Loan Nos. 2-4. *See* Doc. 125 at 15. That admission alone calls for the same result the Seventh Circuit reached in *Home Insurance Company*. Cementing the conclusion is the additional fact, not present in *Home Insurance Company*, that the parties to Loan No. 1 (the Bank and Fashions) are different than the parties to Loan Nos. 2-3 (the Bank, Fashions, and Creative) and Loan No. 4 (the Bank, Holdings, and Cruises). *See Ill. Hous. Dev. Auth. v. LaSalle Nat'l Bank*, 487 N.E.2d 772, 776 (Ill. App. 1985) ("two agreements executed by different parties cannot be regarded as one instrument"); *Susmano v. Assoc. Internists of Chicago*, 422 N.E.2d 879, 883 (Ill. App. 1981) (same).

Defendants put much stock in the loans' cross-default provisions, under which a given Borrower's default on one loan agreement constitutes a breach by that Borrower of the other loan agreements to which it is a party. In support, Defendants cite *In re Apollo Steel Co.*, 1994 WL 713697 (Bankr. N.D. Ill. Dec. 19, 1994), for the proposition that the presence of cross-

default provisions in two agreements creates a question of fact as to whether the agreements should be deemed a single contract. *Apollo Steel* does say that "the various contemporaneous agreements [at issue there] include cross-collateral and cross-default provisions that could be argued to implicate a single monetary obligation," thus making the separateness of the agreements a triable fact. *Id*. at *6. But the agreements in *Apollo Steel* were entered into by the same two parties on the same day, and both had the same purpose—easing a business partner out of stock ownership and into a consulting arrangement. *Id*. at *1-2. Absent those circumstances, the mere presence of cross-default provisions would not have sufficed to render the agreements a single contract. *See Ill. Hous. Dev. Auth.*, 487 N.E.2d at 776 ("Notwithstanding plaintiff's argument that form should not be elevated over substance, the fact that the trust agreement may have been drafted with the interests of [a third party] in mind does not make [it] a party to the trust agreement."). Defendants have not identified, and the court has not found, any authority holding on such a slim reed that two or more instruments constitute a single contract. To render such a holding in this case would be incompatible with the Seventh Circuit's decision in *Home Insurance Company*.

In sum, because the Borrowers admit that they failed to pay the amounts due and owing on Loan Nos. 2-4, and because the Borrowers' lone defense fails as a matter of law, United is entitled to partial judgment on the pleadings on Count I of the complaint as it pertains to Loan Nos. 2-4. United's motion is denied as moot as it pertains to the counterclaims, which Defendants have dismissed. Moreover, as held above, Defendants' motion to dismiss for lack of

subject matter jurisdiction is denied, and United's motion for leave to amend its complaint is granted.

February 18, 2011

_____
United States District Judge