UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED CENTRAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 331 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| KANAN FASHIONS, INC., CREATIVE WAREHOUSING (Chicago), LLC, KANAN CRUISES, INC., KANAN HOLDINGS, LLC, VARSHA SHAH, and MEHUL SHAH, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff United Central Bank ("United") brought this action against two individuals and four entities—Kanan Fashions, Inc. ("Fashions"), Creative Warehousing (Chicago), LLC ("Creative"), Kanan Cruises, Inc. ("Cruises"), and Kanan Holdings, LLC ("Holdings")—alleging breach of contract and replevin. The case concerns four loans issued by United's predecessor, Mutual Bank, to the entity defendants (collectively, "Borrowers"). Earlier this year, the court granted United partial judgment on the pleadings against the Borrowers on United's claims regarding what have been called Loan Nos. 2 and 3, which were made to Creative and Fashions, and Loan No. 4, which was made to Holdings and Cruises. *See* 2011 WL 686810 (N.D. Ill. Feb. 18, 2011). Judgment has not been granted to any party on Loan No. 1, which was made only to Fashions.

The Borrowers pleaded counterclaims at the inception of this litigation (Doc. 28 at 20-32), but voluntarily dismissed them without prejudice (Docs. 278, 297) during the pendency of United's motion for judgment on the pleadings, which addressed the counterclaims as well as

-1-

United's claims on Loan Nos. 2-4 (Doc. 102). The Borrowers now move for leave to file four counterclaims: (1) breach of the loan agreement embodying Loan No. 1; (2) violation of the Uniform Commercial Code's duty of good faith and fair dealing, *see* 810 ILCS 5/1-201(20), 5/1-203 (comment); (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*.; and (4) promissory estoppel. Doc. 416. The governing standard is familiar: "Although leave to amend shall be freely given when justice so requires, Fed. R. Civ. P. 15(a), leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991). For the reasons that follow, the court will allow Fashions to plead the first counterclaim, but will not permit the other Borrowers to plead the first counterclaim or any Borrower to plead the second, third, and fourth counterclaims.

In the first counterclaim, Fashions alleges that United breached the loan agreement embodying Loan No. 1 (Doc. 416 at 33-41) by unreasonably and in bad faith exercising its discretion to terminate the agreement without a valid business reason and without giving Fashions a commercially reasonable period to obtain a replacement line of credit. United maintains that allowing Fashions to revive this counterclaim, which was encompassed in the original counterclaims (Doc. 28 at 23-27), would be futile. The force of United's submission is diminished somewhat by the fact that its earlier motion for judgment on the pleadings expressly declined to seek dismissal of this counterclaim. Doc. 103 at 9 n.1 ("Kanan Fashions also brings a claim in Count I of the Counterclaim that the Bank allegedly breached Loan No. 1 by failing to honor certain existing obligations under Loan No. 1. That claim is not addressed in this

motion."). If the counterclaim truly were futile, United—which has vigorously litigated this matter from day one—surely would have sought its dismissal in the earlier motion for judgment.

In any event, United now argues that the Illinois Credit Agreements Act ("ICAA"), 815 ILCS 160/0.01 *et seq*., bars the counterclaim. The argument rests on the premise that the counterclaim alleges that United committed a contract breach by failing to implement an internal bank memorandum recommending that Loan No. 1 be extended for an additional year. If United's premise were correct, the ICAA would apply because the internal memorandum is not "signed by the creditor and the debtor." 815 ILCS 160/2. But the premise is wrong; Fashions cites the internal memorandum not as the agreement that United allegedly breached, but as evidence that Fashions was not in default under the signed loan agreement and therefore that United lacked a valid business reason for terminating the agreement. United alternatively argues that it was entitled as a matter of law to terminate Loan No. 1—and did not need to provide Fashions with time to arrange for new financing—since "Kanan Fashions was in default of Loan No. 1 because it made fraudulent representations in its Borrowing Base Certificates." Doc. 422 at 6. But whether Fashions made such fraudulent representations or was in default are factual issues that may not be resolved on the pleadings.

It follows that the first counterclaim, insofar as it is brought by Fashions, is not futile. Nor is it unduly delayed or unduly prejudicial. The counterclaim implicates the same loan agreement underlying United's pending claim that Fashions breached Loan No. 1. And it essentially duplicates not only Fashions' first affirmative defense—which was never abandoned, and which alleges in part that United materially breached Loan No. 1 prior to any default by Fashions (Doc. 28 at 19)—but also the original first counterclaim (Doc. 28 at 23-27). Far from raising different issues that would open a new discovery front and alter the focus of the

litigation, the first counterclaim presses an issue that has always been and will remain central to this case.

Creative, Cruises, and Holdings are not parties to Loan No. 1 and have not advanced any basis to pursue the first counterclaim other than the "one contract" theory expressly rejected in the court's earlier opinion. *See* 2011 WL 686810, at *7 ("In sum, because the Borrowers admit that they failed to pay the amounts due and owing on Loan Nos. 2-4, and because the Borrowers' lone defense [the 'one contract' defense] fails as a matter of law, United is entitled to partial judgment on the pleadings on Count I of the complaint as it pertains to Loan Nos. 2-4."). It therefore would be futile to permit those three Borrowers to join the first counterclaim. Accordingly, only Fashions may proceed with that counterclaim.

The second, third, and fourth counterclaims are futile as to all four Borrowers. The second counterclaim purports to bring a claim for violation of the Uniform Commercial Code's duty of good faith and fair dealing. Although the duty of good faith and fair dealing can bolster the first counterclaim (breach of contract) insofar as United is alleged to have unreasonably exercised its contractual discretion in deciding whether and how to terminate its loan agreement with Fashions, the duty "is a rule of construction, not a stand-alone obligation." *In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006). It "creates neither a cause of action sounding in tort nor its own *sui generis* cause of action." *Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1106 (7th Cir. 1997). United advanced this argument in its brief, and the Borrowers' failure to respond forfeits the point, *see Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039 (7th Cir. 1999); *Fifth Third Bank (Chicago) v. Stocks*, 265 F.R.D. 316, 318-19 (N.D. Ill. 2010), though the merits were a foregone conclusion even had the Borrowers put up a fight. The second counterclaim is futile.

In the third and fourth counterclaims, the Borrowers seek to bring ICFA and promissory estoppel claims based on a statement by United's Vice President—made after United acquired Mutual Bank, the entity that made the loans—that "everything would be business as usual with the new bank." Doc. 416 at 19; *see also* Doc. 423 at 11 ("The gravamen of [United's] deceptive acts is that [United] blatantly misrepresented with respect to Kanan Fashions' line of credit that 'everything would be business as usual with the new bank' and then terminated Kanan Fashions' line of credit without any justification based on discriminatory lending motives."); Doc. 416 at 29 (United "engaged in conduct and representations assuring Kanan Fashions that it would honor [its] line of credit"). That alleged statement cannot support an ICFA claim. At most, the statement that "everything would be business as usual with the new bank" affirmed United's promise to fulfill its contractual obligations—which, of course, was the very same promise embodied by each loan agreement. Some conduct may give rise to both a contract claim and an ICFA claim, *see LaBella Winnetka, Inc. v. Gen. Cas. Ins. Co.*, 259 F.R.D. 143, 149-50 (N.D. Ill. 2009), but not where, as here, the only allegedly wrongful conduct is a party's failure to comply with its contractual obligations. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act. … What plaintiff calls 'consumer fraud' or 'deception' is simply defendants' failure to fulfill their contractual obligations. … We believe that a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract.") (citation omitted); *see also Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901 (7th Cir. 2006).

Nor can the statement ground a promissory estoppel claim. "When there is an express contract governing the relationship out of which the promise emerged, and no issue of

consideration, there is no gap in the remedial system for promissory estoppel to fill.  To allow it to be invoked becomes in those circumstances gratuitous duplication." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999) (citation omitted).  The authority cited by the Borrowers, *First Nat'l Bank of Cicero v. Sylvester*, 554 N.E.2d 1063 (Ill App. 1990), is not to the contrary.  In *Sylvester*, it was unclear whether an express contract governed the promises that allegedly were breached, so the counterclaimant was permitted to proceed alternatively under contract and promissory estoppel theories.  *See id*. at 1065 (noting "alternative" claims); *id*. at 1070 ("if there was a question of fact precluding summary judgment on the issue of whether the line of credit agreement was in effect in February 1986, there was also a question of fact precluding summary judgment on the issue of whether the Bank merely promised to continue financing").  Here, by contrast, express contracts indisputably governed the promises between the Borrowers and United.

In addition to being futile, the third and fourth counterclaims were unduly delayed and would unduly prejudice United if allowed to proceed.  The Borrowers' original counterclaims did not invoke the ICFA or promissory estoppel and nowhere alleged that United's Vice President had promised that "everything would be business as usual."  These counterclaims, raised for the first time about a year into this extremely vigorous litigation, would alter the focus of the case and open an new discovery front.  Leave to amend is denied for this reason as well.

When the Borrowers moved to voluntarily dismiss their original counterclaims without prejudice, the court noted United's fear "of these counterclaims coming back in a different guise."  11/23/2010 Tr. at 2 (Doc. 423-1 at 3).  And in rejecting United's argument that any dismissal of the original counterclaims should be with prejudice, the court warned that "[i]f the Kanan parties come back and try to revivify their counterclaims, they're going to have a pretty

steep hill to climb under Rule 15." *Ibid*. Fashions has satisfied its burden with respect to the first counterclaim, and the Borrowers' motion for leave to file counterclaims is granted to that extent. The motion otherwise is denied.

May 13, 2011

                                         United States District Judge