```
                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS

x- - - - - - - - - - - - - - - x
UNITED CENTRAL BANK,              .  Case No. 10-CV-00331
                                  .  Chicago, Illinois
          Plaintiff,             .
                                  .
     -vs-                         .  November 3, 2011
                                  .
KANAN FASHIONS, et al             .
                                  .
          Defendants.             .
                                  .
x- - - - - - - - - - - - - - - x

                      TRANSCRIPT OF HEARING
             BEFORE THE HONORABLE MICHAEL T. MASON
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs              BOODELL & DOMANSKIS, LLC
                            BY:  Vilia Dedinas, Esq.
                                 Andrew Abrams, Esq.
                            205 N. Michigan Ave., Suite 4307
                            Chicago, IL 60601


For Defendants Kanan        McJESSY CHING & THOMPSON, LLC
Fashions, et al             BY:  Kevin McJessy, Esq.
                            3759 N Ravenswood, Suite 231
                            Chicago, IL 60613


For Plaintiff American      MELTZER PURTILL & STELLE, LLC
Charter                     BY:  Steven Rogovin, Esq.
                            300 South Wacker Dr., Suite 3500
                            Chicago, IL 60606


ECRO Operator:

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

**TERRY GRIBBEN'S TRANSCRIPTION SERVICE**
**27 Beach Road, Unit 4**
**Monmouth Beach, NJ  07750**
**800 603-6212**
**(732) 263-0044    Fax No. 732-263-0075**
www.tgribbentranscription.com

A D D I T I O N A L   A P P E A R A N C E S:


For Bank of America          LAMDA LEGAL
America                      BY:  Timothy Carraher, Esq.
                             11 East Adams, Suite 1008
                             Chicago, IL 60603


For United Central Bank      THOMAS FOX, ESQ.
11-2603

Colloquy                                           3

1           THE CLERK: 10-C-331 United Central Bank versus Kanan

2    Fashions, 10-C-6405, United Central Bank versus Ramoni

3    Incorporated.

4           MS. DEDINAS:  Good morning Your Honor Vilia Dedinas

5    and Andrew Abrams on behalf of United Central Bank.

6           THE COURT: Good morning.

7           MR. ROGOVIN:  Steve Rogovin on behalf of America

8    Charter in the 10-C-6405.

9           THE COURT:  Okay.

10          MR. McJESSY:  Good morning Your Honor, Kevin McJessy

11   on behalf of the Kanan defendants, Varsha Shah, Mehul Shah.

12          MR. CARRAHER:  Tim Carraher on behalf of Bank of

13   America as defendants 10-C-6405

14          MR. FOX:  Good morning Your Honor, Thomas Fox on

15   behalf of the United Central Bank as plaintiff in case 11-2603.

16          THE COURT:  Okay, good morning everybody.  Let me go

17   through a series of questions that I have that will pertain to

18   the two of you mostly I think, but anybody can answer.  You

19   were directed to meet and confer regarding UCB's motion to

20   compel outstanding discovery and the defendants were to produce

21   responses by October 31st.  Did this happen?

22          MR. McJESSY:  Yes, it did Your Honor.  We had

23   produced I think the responses even before the last hearing on

24   the outstanding, on the two outstanding discovery submissions.

25   I think it was before the last hearing, I could be wrong, maybe

1    it was right after, regarding the discovery that had not been

2    answered at all.

3           We met and conferred, the other element of their

4    motion was a number of discovery requests that they had sent a

5    37:2 letter on saying we want responses to these requests.

6           I called Ms. Dedinas as to the document request that

7    they were taking issue with. We talked about it a couple of

8    times actually between then and now. I agreed with her

9    position and most of those document requests were appropriate

10   and should have been responded to. And we will do that to the

11   extent we haven't already. My client believed that many of

12   those documents have already been produced. There may be an

13   issue about that, but if they haven't been, we will.

14          There was one interrogatory that was part of that

15   series of requests as well. That I believe is more

16   appropriately answered by referring to the documents that were

17   being produced. It was one of those questions, I don't

18   remember it specifically, but it was identify every transaction

19   or something like that. And we're already producing the

20   documents that were sort of responsive to that interrogatory.

21   So I don't, it would be a very laborious interrogatory to

22   respond to. I don't think it's appropriate as an

23   interrogatory, but the document request which, I think there

24   was one interrogatory and six document requests. I thought the

25   document requests were actually objections that the prior

Colloquy                                              5

1    counsel had made were probably not appropriate and they should

2    be responded to.

3                THE COURT:  Do you have anything you want to add?

4                MS. DEDINAS:  Just that we have not received the

5    documents yet, so I think that we still need some time to --

6                THE COURT:  So, do you want to enter and continue the

7    motion to compel?

8                MS. DEDINAS:  Yes.

9                THE COURT:  As opposed to withdrawing it?

10               MS. DEDINAS:  Yes.

11               THE COURT:  All right.  Then defendants were to make

12   the Great Plains database available to UCB by, you've got

13   another four days, I guess, November 7th.  Will this happen?

14               MS. DEDINAS:  Well, I'm assuming.  We have an

15   appointment and we have, they have an IT guy.  And our IT guy

16   has spoken to his IT guy.

17               THE COURT:  I have questions about the IT guys too.

18               MS. DEDINAS:  So they apparently understand what

19   they're going to be doing and there will be some sort of

20   meeting on the 7th.

21               THE COURT:  And if there is going to, if there is a

22   dispute between the IT people, then I think you need to bring

23   them in if you motion anything to compel, like you did in the

24   past.  And Mr. McJessy you weren't involved in that before and

25   you can thank your lucky stars for that.  But anyway.

1          MR. McJESSY:  Yeah, and I did get, just to follow up

2    on that point Judge, I did get notice from our expert who said

3    he's spoken to their ESI consultants and the parties, it

4    sounded like they had worked out between themselves the method

5    for doing what they needed to do.

6          THE COURT:  Okay.  As long as they're happy.  That's

7    the main thing I guess.  And then defendants were to contact

8    Digital Wreath (phonetic) and report to UCB regarding status of

9    back up tapes from the defunct server by October 31st.  Did

10   that happen?

11         MR. McJESSY:  We did try to contact Digital Wreath.

12   We did not get a response.  I issued a subpoena to Digital

13   Wreath to produce the tapes on Tuesday.

14         THE COURT:  Tuesday.

15         MR. McJESSY:  I issued it on Tuesday.

16         THE COURT:  Okay, two days ago.

17         MR. McJESSY:  So that's, I can't make them call me.

18         THE COURT:  No, I know you can't.

19         MR. McJESSY:  So that's where that's at.

20         THE COURT:  Okay.  And then what's the status of the

21   third related case that's pending before Judge Darrah.

22         MR. FOX:  Your Honor, I can speak to that.

23         THE COURT:  Go ahead.

24         MR. FOX:  We actually have a motion for reassignment

25   ready to go.  We have not filed yet, but I plan on filing it

Colloquy                                    7

1   today.

2           THE COURT:  Today?

3           MR. FOX:  Yes.

4           THE COURT: Okay.  And there's different counsel

5   representing UCB in that one?

6           MS. DEDINAS:  We have a conflict.

7           THE COURT:  Okay.  And who is that?

8           MR. FOX:  I am.

9           THE COURT:  You are?

10          MR. FOX:  Yes.

11          THE COURT:  Okay, I'm sorry.  All right, so that's

12  going to be done today.  And then we've got UCB's motion to

13  compel request to admit, that's fully briefed and we'll rule on

14  that shortly by mail.  Also the issue of which defendants are

15  to be sanctioned will be ruled on shortly by mail.

16          Now just, discovery cut off dates.  You've indicated

17  that you need additional time to determine the scope of ESI and

18  yet you submitted an ESI agreement on October 28th.  Are you

19  saying that you need more time to add to this ESI agreement or

20  this is it?

21          MS. DEDINAS:  The agreement that we have is accurate

22  as of right now.  In terms of actually knowing what the

23  proposed discovery schedule would look like, I think that we're

24  not prepared to do that because it's going to depend on how

25  much ESI there is.  So we really need to get back to looking at

1    what each side really wants, what custodians we really want and

2    what key searches we really want.

3          The way we've done it at least prior counsel was they

4    gave us their custodian list and their search terms and we ran

5    those searches as against a limited of custodians and came up

6    with a hit list.

7          THE COURT:  Okay.

8          MS. DEDINAS:  And the hit list was fairly large.  So

9    we had been in the process of renegotiating that.  The problem

10   that we have is that we can only run these searches on

11   custodian ESI once we load the custodian ESI onto our system.

12   The process of loading is fairly expensive.  So we really want

13   to make sure that we are dealing with the right custodians.

14         THE COURT:  And how do you do that?

15         MS. DEDINAS:  Well I think they have to, we want the

16   defendants to take another look at their initial custodian list

17   and see if they can pare that down based on what they really

18   think is going to be relevant.

19         One of the issues before was this question of whether

20   Mutual Bank did anything wrong in refusing to renew the loan.

21   That issue is off the table now.  So that may change a lot of

22   the ESI that was, that they were seeking.

23         So I don't know, I think that we need to come up

24   first with a better custodian list before we can do hits.  And

25   then when we know how many hits there are going to be, if it's

1    going to be too much, maybe we need to modify that so that we

2    get down to a universe of reasonable amounts.  I mean we were

3    looking at a tremendous amount of ESI before.

4           So I really have just no idea whether it's going to

5    take us, you know, six months or 3 years, I hope not, to go

6    through the kind of ESI --

7           THE COURT:  It's going to take a long time for sure.

8           MS. DEDINAS:  Right.

9           THE COURT:  It looks like it.

10          MS. DEDINAS:  And I think they're in a little bit of

11   a different situation.  I don't know, but I think, I don't know

12   whether you have to load it onto a platform for it to be

13   searchable and whether that's going to have any expense or not.

14          MR. McJESSY:  I actually believe Judge from talking

15   to our expert that all of the data should be loaded and

16   searchable within a very short time for us.  And by that I mean

17   probably within a month.  And the, I also, it's my

18   understanding and I need to get better clarification of this,

19   but if you recall there was a server that had some problems, it

20   was defunct.

21          THE COURT:  Right.

22          MR. McJESSY:  And that was the reason I think these

23   back up tapes were sent out.  I believe from speaking to, from

24   the communication, I haven't actually spoke to my expert yet,

25   but I received a communication.  It's my understanding that

Colloquy                    10

1    they were actually able to image some of those drives that were

2    previously believed to be not working.

3              Now, they couldn't, my understanding is they couldn't

4    do all of them.  I do need to confirm all of this.  I want to

5    make sure that's clear on the record.  But it does appear that

6    he was more effective than the prior ESI individuals that have

7    been engaged in getting that done.

8              So I don't know if all of the back up tapes that are

9    with Digital Wreath are still relevant, you know.  If the

10   drives are actually able to be imaged, then I'm presuming that

11   that means that they can also be, data can be compiled and

12   searched.

13             But I'll have a better, I mean this guy only started

14   last week and he's made leaps and bounds of progress in getting

15   this done.  All of the computers and data bases that are

16   working have been imaged and even part of the one that, my

17   understanding is part of the one that previously had a problem,

18   has been imaged.

19             THE COURT:  So you have a different expert?

20             MR. McJESSY:  We brought in somebody different than

21   all of the prior people that were --

22             THE COURT:  And you know who that is?

23             MS. DEDINAS:  Yes.

24             THE COURT:  Okay.

25             MR. McJESSY:  So, yeah, he's been in direct

1    communication with her person.  I'm not quite sure what counsel

2    means.  Counsel mentioned that the issue is off the table about

3    Mutual Bank not renewing the loan.  I'm not quite sure what

4    that is.  I heard that comment by her.

5              THE COURT:  I heard that also.

6              MR. McJESSY:  Yeah.  I'm not quite sure what she

7    meant by that, but I was --

8              THE COURT:  We'll give her a chance --

9              MR. McJESSY:  We did agree that the basic tenor of

10   what she was saying is that we agreed to relook at the

11   custodian list that had been previously provided by counsel.

12   And I did agree to do that.  That doesn't mean we'll agree to

13   pull anybody off of that list necessarily.  Prior counsel

14   thought those were the relevant custodians and I certainly want

15   to, that may have been appropriate decision and that may be

16   right.  But I did agree with counsel to take a look at that.

17             My understanding is that they've loaded data from

18   five custodians into their data based or something about that.

19   And I don't remember what the number of custodians was that was

20   provided.

21             MS. DEDINES: Like 14.

22             MR. McJESSY:  So I told her that I would take a look

23   at that and see if there's some that should come off of that,

24   that we would agree should come off of that list.  But I don't

25   want that, I don't want to misrepresent that we've agreed to

                                    Colloquy                    12

1    remove anybody from the list at this point.

2              THE COURT:  But you think you're going to have

3    everything done by 30, within 30 days?

4              MR. McJESSY:  From my, on my side?

5              THE COURT:  Yes.

6              MR. McJESSY:  Yes, I believe that's probably about

7    right.  It's going to depend on, of all of the materials we

8    have, yes.

9              THE COURT:  Okay.

10             MR. McJESSY:  The issue is going to be whether we

11   need to, whether we're able to get these tapes from Digital

12   Wreath.  I assumed that their subpoena, they'll have to respond

13   but we may end up in front of Your Honor on a motion on that.

14             And if we get those tapes back, then those, my

15   understanding is it takes longer to image the, to essentially

16   the tapes.  I'm not quite sure how you image a tape, but to do

17   the same process of imaging the hard drive.

18             THE COURT:  You don't know how to do it?

19             MR. McJESSY:  That's why I've got somebody else doing

20   this because I know very little about it.  But my understanding

21   is it takes considerably longer to get the data off the tapes

22   and into the kind of data base that they need so they can

23   search it.  That can take, I don't know, just depends on when

24   we get the tapes.  But pretty much everything is together.

25             One other issue that I'm not sure that was addressed

Colloquy                                                    13

1    is there were a number of computers, Your Honor recalls --

2              THE COURT:  That were left out there.

3              MR. McJESSY:  That were left at the warehouse.  We

4    had quite some time ago brought those computers and put them

5    with --

6              THE COURT:  How many were there?

7              MR. McJESSY:  Gosh, 20.

8              MS. DEDINAS:  Twenty.

9              THE COURT:  Really?

10             MR. McJESSY:  About that or must be pretty close.

11             THE COURT:  Yes.

12             MR. McJESSY: They were put at Elijah Technologies

13   (phonetic) is a computers forensics firm here in town that I

14   know some courts have used as a Court designated experts.  They

15   were -- all we did was gather them, put them in a room at

16   Elijah and made them available to the United Central Bank.  I

17   don't know if they've looked at them yet, but they don't have

18   to contact us to go look at them.  I gave them the name of

19   Elijah Technologies, said here you go, you want them, whatever

20   you want to do.

21             But I don't want to maintain those computers forever.

22   There's an expense to maintaining them there.

23             THE COURT:  Sure.  When did you make them available?

24             MS. DEDINAS:  This summer.

25             MR. McJESSY:  June.

Colloquy                                        14

1          THE COURT:  And have you looked at them yet?  Have

2     you had your expert?

3          MS. DEDINAS:  Yeah, our expert went out.  And I

4     understand that some of the more, there's definitely a list of

5     them and I think there, some of them were imaged.  I don't know

6     that all of them were.

7          And I don't have a problem with you taking them away

8     from Elijah.  I just, I guess my concern is if you're asking us

9     can you now destroy them, I'm not sure I'm going to agree to

10     that because I think --

11          THE COURT:  That I understand.  Don't destroy them.

12          MR. McJESSY:  Yeah, I don't want to destroy them.  I

13     just don't want to have to pay Elijah to maintain them.

14          THE COURT:  No, I understand.

15          MR. McJESSY:  And if they get dropped or something

16     happens to them while they're in my client's possession, God

17     forbid, I want it to be clear that everybody had a chance to

18     look at these computers before we took possession back.

19          THE COURT:  Why don't you talk to your expert, make

20     sure they've done everything they want to do and then notify

21     Mr. McJessy and, so he won't have to continue paying on that.

22          MS. DEDINAS:  Yeah, I have an email in to verify

23     that.

24          THE COURT:  Okay.  And do you have your same expert

25     or do you have a different expert?

Colloquy                              15

1           MS. DEDINAS:  Yes.

2           THE COURT:  Okay.  So you have somebody who's been

3    with you from the get go on this, which is fortunate.  And you

4    have a new person which I think is very fortunate also.

5           MR. McJESSY:  It is actually somebody who had a brief

6    involvement in the case back on --

7           THE COURT:  Who's that?

8           MR. McJESSY:  Pardon?

9           THE COURT:  Who is that?

10          MR. McJESSY:  It's Christopher Sitter.

11          THE COURT:  Okay.

12          MR. McJESSY:  S I T T E R.  He had come in only

13   briefly and only informally when the parties had a hard time

14   finding where the Great Plain's data base was.  The prior

15   experts couldn't find the data base on the server and so he

16   came in.  He was able to locate it and make a back up copy

17   quite some time ago, last year I think, in order to make sure

18   that nothing happened to it.

19          And then, that was all he did.  But he was very good

20   and so obviously he's been very effective in the last week or

21   two.

22          THE COURT:  And then the missing server has never

23   shown up I take it.

24          MR. McJESSY:  No.

25          MS. DEDINAS:  Not until they dredge the river.

Colloquy                                    16

1          THE COURT:  Which one?

2          MR. McJESSY:  Your Honor I would object to that.

3    That's a little, with all due respect to counsel.

4          THE COURT:  That will be stricken, that will be

5    stricken.

6          MS. DEDINAS:  Withdrawn, my apologies.

7          THE COURT:  All right.  Then, let's see, the motions

8    for letter of request for discovery in Hong Kong, the proposed

9    order is fine.

10         MR. FOX:  Judge, excuse me Your Honor.  I teed that

11   up for November 9th.

12         THE COURT: Okay.

13         MR. FOX:  Fancy Company, Fancy Creations Company

14   Limited, to default, but nevertheless sent a copy to Hong Kong,

15   Tokyo, Federal Express, overnight fastest delivery possible and

16   then I put it on for November 9th.

17         MR. McJESSY:  Judge, if I may with respect to the

18   order, I did have a couple of, a couple of comments on that.

19   And I wondered if it wouldn't be possible, there were a couple

20   of things in the order that I did, I don't want the order to

21   purport to make findings or to make rulings of law or anything

22   of the sort.  So there were a few things in the order that I

23   did object to.

24         And I also, since this is sort of akin to a basically

25   a subpoena, I also wanted to have the opportunity rather than

1    issue a similar request if this is going to go out, to add

2    additional documents on to the end of this that they could

3    produce.

4                Right now the only records I can think of are records

5    for any loan documents or loan agreements between Creative, or

6    Fancy Creations and any of the parties involved.  Because, I

7    don't think the Bank would have them but they're also asking

8    for corporate records and things like that.  And I'm not sure

9    that loan documents fell within the scope of their request.

10   And it seems to me that would be pertinent and they would

11   probably want those too.

12               MR. FOX: I don't have an objection to adding loan

13   agreements.  In terms of the, there was a prefatory section of

14   the order, I was trying to capture that the prime means of this

15   evidence, it was relevant.  That the Hong Kong Court, that it's

16   needed here.  That was the spirit of my research that I was

17   trying to capture.  So I did add a footnote --

18               THE COURT: Why don't you have a, why don't you have

19   a meet and confer on this.  And I'll give you --

20               MR. McJESSY: I'm sure we can work it out.  My

21   objections are very minor on the language of it, but there were

22   a few things that went a little far.  But I understand why

23   counsel put it in there.  That's fine.  We can talk and I'm

24   sure we can work it out.

25               MR. FOX: Okay, so we're back to --

Colloquy                                    18

1          THE COURT:  I'll give you a week to try to do that,

2     okay?

3          MR. FOX:  Can we do it before that?  Just so --

4          THE COURT:  Sure, you can do it much sooner.  You can

5     do it --

6          UNIDENTIFIED: I just, Your Honor because it's noticed

7     for November 9th, I'd like it to be no later than -- if we

8     could work it out by the 8th.

9          MR. McJESSY:  Well I'm available today so I think

10    that we could probably talk after the hearing this morning when

11    we get back to our offices and just get it done.

12         UNIDENTIFIED: Okay.

13         THE COURT: Okay.

14         UNIDENTIFIED: And if we don't get it done, we'll tell

15    you.

16         MR. McJESSY: It's a 10 minute conversation.  It's not

17    --

18         UNIDENTIFIED: I know, okay.

19         THE COURT: All right.

20         UNIDENTIFIED: Thank you.

21         THE COURT:  And then Judge Feinerman, he stayed

22    briefing on the motion for summary judgment after he granted

23    the motion to reassign the case, is that correct?

24         MS. DEDINAS:  Yes, Your Honor.  We took some limited

25    discovery with respect to that motion.  And there's a court

1    reporter who apparently it takes a really long time to prepare

2    the transcripts.  We've been waiting like eight weeks already.

3             The first transcript took about six weeks and we

4    haven't gotten the other one.  So we, because it was taking so

5    long, we asked Judge Feinerman to stay it until we get the

6    deposition transcript.  And we've been following up with her

7    regularly.

8             THE COURT:  Is that his regular court reporter?

9             MR. McJESSY:  No, it's one I've used in the past.  I

10   apologize.  I mean, it's not my fault, but I still apologize.

11            THE COURT:  Yes it is, Mr. McJessy.  Don't use her

12   again.

13            MR. McJESSY:  Yeah, obviously.

14            THE COURT:  Your next status is before Judge

15   Feinerman on November 30th.  And he's going to set a new

16   briefing schedule, assuming you get the transcripts I suppose,

17   by then.

18            All right, now what about times for discovery?  You

19   want to set those today and do you want to wait and see what

20   happens with the things that you're going to provide?

21            MR. McJESSY:  I think it might make sense to wait to

22   set the discovery dates at this point.  At least get us a

23   better sense of, I can get back to them on the custodian list

24   and they can and I'll have an idea from my expert within,

25   hopefully within a couple of weeks exactly where we stand.

                              Colloquy                        20

1          It would be also nice to know if we're going to get

2     those tapes from Digital Wreath and how quickly.

3          THE COURT:  Yes.

4          MR. McJESSY:  I mean if they just produce them, then

5     that's fine.  I don't think there's any fee dispute with my

6     clients.  There may be a fee dispute with Bailey Borlack

7     however.

8          I'm not aware of any agreements between my clients

9     and Digital Wreath.  So that's where I suspect the sticking

10    factor may be.  But I didn't know what else to do, so.

11         MS. DEDINAS:  So I just want to clarify, you think in

12    30 days we can agree on custodians and search terms?  And have

13    hit lists and have a universe of ESI?

14         THE COURT:  Type of drive, size of drive, whether the

15    drive contains the necessary software and that sort of stuff.

16         MR. FOX:  We had, actually I think the experts have

17    the Great Plains data base from the email I got.  I think

18    they've worked out an agreeable way and again, don't, work that

19    out, but I think they worked out an agreeable way to actually

20    put the data in useable format so that it may not be an issue

21    about accessing software, that kind of thing.

22         We had talked about having all of the ESI essentially

23    done by the end of the year.  I think that's reasonable.  Can

24    we do the hit list, custodians and all that by the end of the

25    month, I think that might be tough.  I just, I have a trial as

Colloquy                                21

1   Your Honor knows starting on Monday for two weeks, so that's --

2            THE COURT: Where?

3            MR. FOX: Judge Schenkier.

4            THE COURT: Okay.  So when do you want to come back

5   for a status?  And then we'll set a date at that time.

6            MR. McJESSY: I would think it would make sense to

7   come back after a status in front of Judge Feinerman, so maybe

8   early December.

9            THE COURT:  Well, here's what you can do.  Why don't

10  you stop by here, chambers, after -- what time is your status

11  with Judge Feinerman?  Do you know?

12           MS. DEDINAS:  I think 9:00 a.m.

13           MR. McJESSY:  Yeah, I was going to say 8:30.

14           THE COURT:  Stop by here afterwards.  Let us know

15  what happened.  We won't put it on the record.

16           MR. McJESSY:  Okay.

17           THE COURT:  And then we'll set a date after that

18  time.  How's that?

19           MS. DEDINAS:  That's good.

20           THE COURT:  Does anybody else have anything they want

21  to say?

22           UNIDENTIFIED:  I really have nothing to add at this

23  time Your Honor, I think we are in agreement.

24           THE COURT:  One second.  That's a good question.

25  Regarding this subpoena to Hong Kong, do you still want to come

Colloquy                                            22

1    in on that motion on the 9th?

2              UNIDENTIFIED:  This is what I did, a notice of motion

3    for presentment to November 9th.

4              THE COURT: Yes.

5              UNIDENTIFIED:  All parties have reserved except for

6    one before the Court.  The one party that's not here is Fancy

7    Creations Company, Ltd., which was found in default in August.

8    I mailed a copy of the request to Hong Kong on Monday, Tuesday

9    actually, so.

10             THE COURT:  Using regular mail?

11             UNIDENTIFIED: I used air, Federal Express

12   International --

13             THE COURT:  Okay.

14             UNIDENTIFIED: So, now, I guess theoretically they

15   were noticed for a hearing to appear here in November.  So

16   that, the Court -- I don't want to foreclose someone, I mean

17   there's a possibility, I think very, very, very, very, very

18   slim, someone from from Fancy Creations will show up here in

19   November 9th.

20             THE COURT:  Are they, who's their local counsel?

21             UNIDENTIFIED:  They've defaulted.  Never appeared.

22             THE COURT:  Nothing?

23             UNIDENTIFIED:  Service of process.

24             THE COURT:  All right.  We'll let it up, thank you.

25             UNIDENTIFIED:  But if I work out language with

Colloquy                                23

1   counsel in advance, I'm happy to present it.  I'm actually here

2   for another matter before you November 9th, so.

3            THE COURT:  I look forward to seeing you.

4            UNIDENTIFIED: But I'm happy to excuse other counsel.

5            THE COURT: That's fine, that's fine.

6            UNIDENTIFIED: Okay.

7            MR. FOX:  Well again, I'm on trial, so I'm not sure

8   -- but somebody will be here if they need to be.  But I, like I

9   said, it's a small issue.  I'm sure we can work it out.

10           THE COURT:  Work it out, if you can.  Anything else

11  anybody wants to?  So we'll wait to hear from you after the

12  status before Judge Feinerman on November 30th and we'll set a

13  status shortly after that to set dates hopefully.

14           Okay and by November 30th you should have a pretty

15  good idea where you are, okay.

16           UNIDENTIFIED: One minor housekeeping matter.

17           THE COURT: Sure.

18           UNIDENTIFIED: The Judge not only had set some dates.

19  And they've never been formally stricken from the docket.  I

20  think the spirit of the last status was the discovery cut offs

21  in the Judge Kennelly matter are kind of wiped out based on, I

22  wasn't here at the last status, so the spirit of the status and

23  some of the --

24           MR. FOX:  That's correct.  You said you would make

25  the dates parallel once we set dates here.

24

1       THE COURT:  I did.  So we'll strike those prior dates
2   that were set by Judge Kennelly without objection from anybody.
3       UNIDENTIFIED:  Thank you.
4       THE COURT:  Thank you.
5       MR. McJESSY:  Thank you Your Honor.
6       THE COURT:  Good luck.
7           * * * * *
8           **C E R T I F I C A T I O N**
9
10      I, **TRACY GRIBBEN**, court approved transcriber,
11  certify that the foregoing is a correct transcript from the
12  official electronic sound recording of the proceedings in the
13  above-entitled matter.
14
15  _____
16  /S/ TRACY GRIBBEN
17  TERRY GRIBBEN'S TRANSCRIPTION SERVICE  DATE: November 30, 2011
18
19
20
21
22
23
24