IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED CENTRAL BANK | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 CV 331 |
| | ) | |
| v. | ) | District Judge Gary Feinerman |
| | ) | |
| KANAN FASHIONS, INC., et al. | ) | Magistrate Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge.

Currently pending before this Court is plaintiff United Central Bank's ("plaintiff" or "UCB") Petition for Fees and Costs Related to Its Motion for Sanctions (the "fee petition") [505]. UCB is seeking $332,929.34 in fees and costs incurred as a result of defendants' spoliation of evidence. For the reasons set forth below, we grant UCB's fee petition in part, and we award UCB fees and costs in the amount of $322,416.84.

## **I. Background**

UCB filed this action against defendants Kanan Fashions, Inc., Creative Warehousing (Chicago) LLC, Kanan Cruises, Inc., Kanan Holdings, LLC, Varsha Shah, and Mehul Shah ("defendants") on January 18, 2010. UCB alleges that defendants breached four loan agreements and seeks damages in excess of $26 million. In response, defendants have denied the material allegations in the complaint. Defendants have also asserted two affirmative defenses, and filed a counterclaim for breach of contract.

1

Discovery of defendants' electronically stored information ("ESI") has not been an easy process in this case. Defendants maintained ESI on a number of different computer servers, one of which was located at a warehouse in Aurora, Illinois ("the warehouse server"). On several occasions, defendants, through their former counsel Bailey Borlack Nadelhoffer LLC ("Bailey Borlack"), represented to the Court and to UCB that all of defendants' computer servers were within defendants' control and that appropriate procedures had been put in place to avoid any spoliation issues. Despite these representations, on August 20, 2010, UCB received notice from Bailey Borlack that defendants did not, in fact, have access to or control of the warehouse server because the warehouse had been foreclosed upon and was now owned by First Midwest Bank ("FMB"). Although defendants removed almost all of their belongings from the warehouse prior to the foreclosure, the warehouse server was left behind. Defendants claimed that they attempted to buy back the lease on the warehouse server from FMB, but before they could reach an agreement, FMB abruptly sold the server to an unknown entity located in Dubai. Counsel for UCB made several attempts to track down the warehouse server and locate the purchaser in Dubai but they were unsuccessful.

The warehouse server contained information that was directly relevant to UCB's claims, as well as its defenses to defendants' counterclaim. On September 24, 2010, UCB filed a motion for sanctions against defendants and Bailey Borlack for spoliation of evidence [206]. In the motion, UCB claimed that both defendants and Bailey Borlack were responsible for the spoliation. Defendants and Bailey Borlack blamed each other

2

for the loss of the server. The parties engaged in extensive written and oral discovery, and submitted a number of briefs on these issues [207, 272, 309, 320, 355, 369]. In addition, this Court held a five-day evidentiary hearing, which included testimony from ten witnesses and 240 exhibits. The parties also submitted post-hearing briefs [407, 410, 412].

Ultimately, this Court found that there was strong circumstantial evidence that defendants actually orchestrated the "sale" of the server, and then went to great effort to hide their actions from both UCB and Bailey Borlack.[1] As a result, we found that "the evidence amply demonstrate[d] defendants acted wilfully and in bad faith" [425]. We recommended that the District Court grant UCB's Motion for Sanctions and award UCB "all fees and expenses incurred in bringing the Motion for Sanctions," including "fees and expenses incurred in all discovery related to the Motion, as well as briefing the Motion and preparing for and participating in the five-day evidentiary hearing" [425].[2] The District Court subsequently adopted our Report and Recommendation over defendants' objections [486].[3] UCB then filed this fee petition.

---

[1] The facts surrounding the disappearance of the server are complicated to say the least. For a full recitation of these underlying facts, see this Court's Report and Recommendation to the District Court [425], and the District Court's Memorandum Opinion and Order, *United Central Bank v. Kanan Fashions, Inc.,* 10 C 331, 2011 WL 4396856 (N.D. Ill. Sept. 21, 2011).

[2] In addition to the fees, we also recommended that defendants be barred from introducing any evidence at trial regarding information on the server, and that the jury be instructed that defendants' failure to preserve the server may be considered evidence that the server contained information unfavorable to defendants' position.

[3] The District Court adopted the Report and Recommendation in its entirety with one exception: it referred the matter back to this Court for a determination as to whether

## II. Analysis

"District courts possess wide latitude in fashioning appropriate sanctions and evaluating the reasonableness of the attorneys' fees requested." *Heriaud v. Ryder Transp. Services*, 03 C 289, 2006 WL 681041, at *2 (N.D. Ill. Mar. 14, 2006) (quoting *Johnson v. Kakvand*, 192 F.2d 656, 661 (7th Cir. 1999)). In order to determine a reasonable fee, we use the lodestar method, "multiplying the number of hours reasonably expended on the litigation...by a reasonable hourly rate." *Pickett v. Sheridan Health Care Ctr,* 664 F.3d 632, 639 (7th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party requesting fees bears the burden of documenting the appropriate hours expended and establishing its entitlement to reasonable hourly rates. *Hensley*, 461 F.3d at 433. "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett,* 664 F.3d at 639.

### A. Reasonable Hourly Rates

In order to determine a reasonable fee under the lodestar method, we first look at the proposed billing rates for UCB's attorneys. A reasonable hourly rate is determined by "the market rate for the services rendered." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). The market rate is the "rate that lawyers of similar

---

some or all defendants should be liable for the sanctions [486]. After further briefing on this issue, we held that all defendants were equally liable [530]. Defendants have objected to this finding [532], and the matter is currently pending before the District Court.

ability and experience in their community normally charge their paying clients for the type of work in question." *Id.* at 555; *Williams v. Z.D. Masonry Corp.*, No. 07 C 6207, 2009 WL 383614, at *2 (N.D. Ill. Feb. 17, 2009). The attorney's actual billing rate for comparable work is "presumptively appropriate" to use as the market rate. *Denius v. Dunlap,* 330 F.3d 919, 930 (7th Cir. 2003)*.*

In its fee petition, UCB has listed six attorneys and four paralegals who worked on the issues raised in the motion for sanctions. The attorneys listed have experience ranging from five years to thirty-five years and their hourly billing rates range from $200 to $350. The experience of the paralegals ranges from five to six years, and each paralegal has an hourly billing rate of $125. UCB has also included an affidavit from its lead attorney, Vilia Dedinas, in which Ms. Dedinas describes the role and responsibilities for each attorney and paralegal in the briefing, discovery and evidentiary hearing on the motion for sanctions. She also avers to each attorney and paralegal's experience, credentials and billing rate. In addition, Ms. Dedinas attests that UCB has paid all invoices (tendered to UCB as of the date of the affidavit) on this matter at the proposed hourly rates.

Because UCB counsel has attested that their clients actually pay these billing rates, these rates are "presumptively appropriate." *See, e.g., DeBartolo v. Health & Welfare Dept. of the Constr. & General Laborer's Dept.*, No 09 C 39, 2011 WL 1131110, at *7 (N.D. Ill. Mar. 28, 2011) ("The best evidence of the market value of legal services is what people will pay for it"). Defendants do not assert that the proposed rates are too high, and given the experience and expertise of plaintiff's counsel, we find these rates of

$125 for the paralegals and $200-$350 for the attorneys to be entirely reasonable. Accordingly, we will award UCB its fees at the proposed rates, and we move on to the remaining issue of whether the time expended on the sanctions motion was reasonable.

### B. Reasonable Number of Hours Expended

According to the fee petition, UCB counsel (both attorneys and paralegals) spent a total of 1309.85 hours on all matters related to the motion for sanctions. It is our job to determine whether these hours were reasonably expended. "An hour reasonably expended is an hour that is not excessive, redundant or otherwise unnecessary." *Williams,* 2009 WL 383614, at *1. Where a party has "failed to exclude or otherwise tailor unreasonable time entries, the district court may reduce the number of hours accordingly." *Lizak v. Great Masonry,* No. 08 C 1930, 2010 WL 3001906, at *4 (N.D. Ill. July 29, 2010). As the party requesting reimbursement of attorneys' fees, UCB counsel is expected to exercise "billing judgment." *Heriaud*, 2006 WL 681041, at *3. Billing judgment requires counsel to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Spegon,* 175 F.3d at 552 (citing *Hensley*, 461 U.S. at 434).

Defendants have made numerous objections to the amount of time UCB counsel expended on the motion for sanctions. Indeed, defendants' response brief includes 18 exhibits, totaling 61 pages, objecting to most of UCB counsel's time. For the most part, we find these objections unpersuasive. The motion for sanctions raised a number of complex and fact intensive issues, all of which were the direct result of defendants'

6

wilful and inappropriate conduct.  Defendants' spoliation of evidence led to extensive discovery and a lengthy evidentiary hearing, and plaintiff's counsel was required to expend a considerable amount of time pursuing its request for sanctions.  Defendants cannot now object to the fees incurred as a direct result of their own wrongful conduct.  Nevertheless, we do find that some of defendants' objections have merit and we address each of their objections below.

### 1. Secretarial or Clerical Tasks and Overhead Costs

Defendants first argue that plaintiff should not recover fees for certain tasks that were secretarial or clerical in nature.  (Ex. H to Defs' Br.)  Defendants are correct that a plaintiff should not be reimbursed for clerical tasks "that are easily delegable to non-professional assistance."  *Spegon*, 175 F.3d at 553.  In particular, "[c]ourts have found organizing file folders, preparing documents, copying documents, assembling filings, electronically filing documents, sending materials, docketing or 'logging' case events into an internal case tracking system, and telephoning court reporters to be clerical."  *Delgado v. Village of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *2 (N.D. Ill. Oct. 21, 2006).

Here, defendants argue that plaintiff should not be reimbursed for 17.1 hours paralegal David West spent communicating with court reporters and coordinating with a conference room center regarding upcoming depositions, preparing and delivering copies of pleadings to the court house, ordering deposition transcripts, conferring with a process server regarding service of subpoenas and organizing files.  (Ex. H to Defs' Br.)  Except for .5 hours Mr. West spent conferring with a process server, we agree with

defendants that these tasks are clerical in nature, and UCB should not be reimbursed for this time. *See, e.g., Delgado,* 2006 WL 3147695, at *2 (disallowing time spent updating database, phone calls with clerks, filing documents and deliveries); *Heriaud*, 2006 WL 681041, at *3 (disallowing time for communicating with court reporter). This adjustment reduces plaintiff's fee award by $2,075.00.

Similarly, defendants argue that 2.5 hours spent by lead attorney Vilia Dedinas should also be disallowed because the work was secretarial or clerical. In particular, Ms. Dedinas spent .5 hours "communicat[ing] with [an] investigator regarding service of subpoenas" and 2.0 hours "organiz[ing] files, briefs and research materials." (Ex. H to Defs' Br.) While we do not believe that Ms. Dedinas' time spent conferring with the investigator should be stricken, we agree that her time spent organizing files is clerical in nature and should be disallowed. *Delgado*, 2008 WL 3147695, at *3 (time spent organizing case database was disallowed because it was clerical in nature). Taking this adjustment into consideration, UCB's fee request is reduced by another $700.

Defendants also argue that $2,650 in fees for the use of the Summit Executive Conference Center (a conference room in UCB counsel's building) for depositions is part of the overhead cost of doing business for a law firm and should not be passed along to defendants. Defendants assert that it was UCB counsel's choice to use this conference room, rather than a conference room within their own firm, and this charge should not be included in their fee request. We agree with defendants and we will deduct this charge from the final amount to which they are entitled as well. *See, e.g., Mason v. Smithkline Beacham Corp.*, 05 C 1252, 2008 WL 5397579, at *3 (C.D. Ill. Oct.

8

7, 2008) (denying reimbursement for fees for the rental of a conference room for a deposition because "such fees are more akin to administrative fees incurred in the cost of doing business"); *Bosch v. Ball-Kell*, No 03 C 1408, 2007 WL 2994085, at *2 (C.D. Ill. Oct. 11, 2007) (disallowing conference room rental fee).

## 2. **Excessive Time and Insufficient Detail in Time Entries**

Defendants also argue that many of UCB counsel's time entries should be disallowed because the entries do not include sufficient detail and the time expended was excessive. A court may reduce the number of hours where the description of the work performed is inadequate. *Lopez v. City of Chicago,* No. 01 C 1823, 2007 WL 4162805, at *5 (N.D. Ill. Nov. 20, 2007). However, a "court should not require any more than the level of detail paying clients find satisfactory." *Garcia v. City of Chicago*, No. 01 C 8945, 2003 WL 22175620, at *3 (N.D. Ill. Sept. 19, 2003). In addition, if a fee request includes excessive, redundant or otherwise unnecessary expenses, the district court may reduce the number of hours accordingly. *Hensley*, 461 U.S. at 433.

Several of defendants' objections can be dismissed without much analysis. For example, defendants assert that plaintiff's counsel has failed to provide sufficient detail for time spent on "preparation of documents." (Ex. K to Defs' Br.) But we have reviewed these entries and we find that plaintiff's counsel provided sufficient descriptions for these entries. (*See, e.g.*, "Preparing of documents received from First Midwest in response to subpoena for production to opposing counsel in preparation of D. Clark deposition;" "Prepare documents for Blumenthal deposition;" and "Prepare documents received from third-parties for attorney review"). Defendants also refer the

Court to a number of other entries that they claim are "impermissibly vague." (Exs. R-S to Defs' Br.) But again, we find that these entries include more than enough information to allow the court to assess the work that counsel performed. (*See, e.g.*, "Meeting with V. Didinas and A. Rylko regarding documents produced by First Midwest Bank;" "Meeting with V. Dedinas re: preparation for S. Blumenthal deposition and newly filed documents;" and "Preparations for Bhansali deposition"). Nothing about these entries strikes us as "impermissibly vague."

### a. Legal Research

Defendants also object to time UCB counsel spent on "legal research," arguing that plaintiff has not provided sufficient detail about the particular issue that was the subject of the research. (Exs. B-C to Defs' Br.) While it is true that a party must specify the "nature and the purpose of the legal research," we believe plaintiff has satisfied this burden here. *In re Rockford Prods Corp*, No. 07–71768, 2009 WL 2707236, at *6 (N.D. Ill. Bankr. Aug. 24, 2009). The time records specify legal research regarding "motion for sanctions," "hearing issues," "evidentiary issues" or "post-hearing brief." (Exs. B-C to Defs' Br.) Because all the time that is the subject of the fee petition relates in some way to the motion for sanctions, we do not believe that plaintiff's counsel needed to be any more specific in recording their time. *In re Rockford Prods Corp*, 2009 WL 2707236, at *6 (allowing time for researching "authority regarding ESOP litigation"); *see also Greenfield Mills, Inc. v. Carter*, 569 F.Supp.2d 737, 751, n.15 (N.D. Ind. 2008) (allowing time spent on "legal research" when that research coincided with drafting a brief and it appeared the research related to the issues raised in the brief).

10

Defendants also argue that plaintiff is not entitled to recover fees for legal research for certain issues because UCB counsel should have had independent knowledge of these issues. (Ex. D to Defs' Br.) In particular, defendants refer to research regarding Bailey Borlack's motion to file its response to the sanctions motion under seal. We disagree with defendants that this legal research should not have been necessary. This motion raised a number of complicated legal issues, including attorney-client privilege and the rules of professional conduct [263]. Plaintiff's counsel spent 21.3 hours on research and drafting their brief in opposition [283], and this Court ultimately agreed with UCB on the issue [313]. We do not find that UCB counsel spent an unreasonable amount of time on this issue.

### b. Preparing for the Evidentiary Hearing

Next, defendants object to 167.8 hours spent preparing for the evidentiary hearing. Defendants assert that UCB counsel's time was excessive and that these time entries lack sufficient detail. (Ex. F to Defs' Br.) We have reviewed these entries and, for the most part, we find that there is sufficient detail to justify the time spent preparing for the hearing. As we have noted, the hearing took place over five days, and included ten witnesses and 240 exhibits. Any reasonable attorney would have to spend a considerable amount of time on preparation, and it is not necessary for an attorney to detail every task that went into the preparations. *Delgado v. Mak*, 06 C 3757, 2009 WL 211862, at *4-5 (N.D. Ill. Jan. 29, 2009) ("the standard for evaluating the amount of itemization and detail in time entries in a fee petition, to the extent that there can be said to be one, appears to be based on the market-that is, 'the level of detail paying clients

find satisfactory'"); *Catalan v. RBC Mortg. Co.*, No. 05 C 6920, 2009 WL 2986122, at *4 (N.D. Ill. Sept. 16, 2009) ("while the time entries of Plaintiff's counsel are not as detailed as they might have been, they are not outside the boundaries of what paying clients would accept, nor are they so cryptic as to preclude reasonable analysis").

However, we do agree with defendants that some of the paralegals' entries for preparation for the hearing should have included more detail in order to justify the amount of time expended. For example, over the course of nine days leading up the hearing, paralegal David West spent a total of 80.7 hours on "prepare for sanctions hearing" without any further description of the tasks performed. (*See, e.g.*, 01/19/11, 10.5 hours, "Prepare for sanctions hearing"; 01/20/11, 9.7 hours, "Prepare for sanctions hearing"; 01/21/11, 11.6 hours, "Prepare for sanctions hearing"). We do not believe that this is sufficient detail to justify reimbursing plaintiff for such large blocks of a paralegal's time. While it is true that there were 240 exhibits to prepare and organize into binders, the billing summaries also indicate that in addition to the 80.7 hours, Mr. West and the other paralegals billed another 51.2 hours during this same period for preparing and organizing the exhibits for the hearing. Because we agree that Mr. West's large blocks of time should have included additional details, we will reduce this time by 50% (from 80.7 hours to 40 hours). This will reduce plaintiff's fees by $5,087.50.

### c. UCB Counsel's Fees and Costs Related to Depositions

Next, defendants argue that the amount of time UCB counsel spent preparing deposition and trial subpoenas, preparing for depositions and summarizing the deposition transcripts was excessive. We disagree. First, as plaintiff points out, it

12

subpoenaed eight individuals (some more than once), and service on a few of these individuals was complicated. UCB spent 18.2 hours drafting and coordinating service of these subpoenas and we do not find that this amount of time is excessive.

We also do not find that the amount of time spent preparing for depositions was excessive. Defendants point to four depositions in particular: defendant Mehul Shah, Paresh Joshi, Stephen Blumenthal and Dave Clark. (Exs. L-N to Defs' Br.) These four individuals were critical witnesses at the evidentiary hearing. Plaintiff's counsel spent 27.65 hours preparing for and attending the deposition of Steven Blumenthal, approximately 40 hours preparing for the deposition of Dave Clark, and 23.1 hours preparing for the depositions of both Mehul Shah and Paresh Joshi. Plaintiff's billing summaries indicate that the time spent preparing for the depositions included time spent reviewing written discovery for relevant documents. Based on our knowledge of the facts and the central role these individuals played in the loss of the warehouse server, we do not find this time to be excessive.

We also disagree that plaintiff's counsel spent an unreasonable amount of time summarizing the deposition transcripts. (Ex. J to Defs' Br.) There were eight depositions taken during this time, on an expedited schedule, all of which were directly relevant to the hearing on the motion for sanctions. It was not unreasonable for plaintiff's counsel to have this testimony summarized for use during the hearing and the post-hearing briefing. Only those attorneys billing at the lower rates ($200-$225 an hour) performed this work, and we do not find that the amount of time spent on these summaries was excessive.

We also dismiss defendants' argument that the court reporter fees for the depositions of Snehal and Pareg Bhansali should be disallowed. Defendants argue that because UCB did not use these depositions at the hearing, they were unnecessary. However, because there was circumstantial evidence linking these two individuals to the sale of the warehouse server, even if UCB did not use these depositions at the hearing, it was perfectly reasonable for UCB to depose them.

### d. Drafting Pleadings

Next, defendants argue that UCB counsel spent too much time drafting the reply brief on the sanctions motion (45.4 hours) and responding to defendants' objections to this Court's Report and Recommendation on the sanctions motion (38.3 hours). (Exs. O, Q to Defs' Br.) UCB's reply brief was 20 pages long, incorporated the facts obtained during discovery (which were not previously included in plaintiff's opening brief), and responded to defendants' brief, as well as Bailey Borlack's response brief. We do not believe 45 hours on this task is excessive. Similarly, plaintiff's response to defendants' objection to this Court's Report and Recommendation was 15 pages long and incorporated the testimony from the five-day evidentiary hearing. We do not agree that spending 38.3 hours to research and draft this brief was excessive.

Defendants also object to the 89.5 hours UCB counsel spent preparing the fee petition. (Ex. P to Defs' Br.) "Time spent in preparation of a fee petition is compensable so long as the time spent is not disproportionate to that spent on the merits of the case." *Delgado*, 2006 WL 3147695, at *4. The relevant inquiry is whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours

14

spent litigating the merits of the case. *Spegon*, 175 F.3d at 554. Courts in this Circuit have held that time spent on a fee petition is reasonable where it amounts to less than 10% of the time spent litigating the merits. *Delgado*, 2006 WL 3147695, at *4 (collecting cases). Here, plaintiff seeks to be reimbursed for 1220.35 hours litigating the merits of the motion for sanctions (excluding the time spent on the fee petition). We have reduced this amount to 1161.05 hours. The 89.5 hours spent on the fee petition is 7.7% of the time spent on the underlying motion, and in our review of the billing entries for this work, we do not believe any of the work was excessive or unnecessary.

### e. Excessive Interoffice Communications

Next, defendants argue that UCB counsel spent an excessive amount of time on intra-firm conferences. (Ex. R to Defs' Br.) However, as UCB points out, defendants have made a number of misstatements and mischaracterizations here. For example, defendants state that on 09/23/12 attorney Nada Djordjevic spent 5.3 hours on "[c]orrespondence to/from V. Dedinas re: same." In fact, the actual time entry states: "*Draft motion for sanctions and* correspondence to/from V. Dedinas re: same (5.3 hours)." (See Ex. A to Pl's Fee Petition [505] (emphasis added).) Thus, defendants have blatantly mischaracterized UCB counsel's time. This example is not the only instance in which defendants omitted relevant portions of UCB's time entries.

We have reviewed UCB counsel's *actual* billing summaries, and we do not find that any of counsel's time was excessive. "There is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." *Edwards v. Rogowski,* 06 C 3110, 2009 WL 742871, at *8 (N.D. Ill. Mar. 18,

2009) *(quoting Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 661 (7th Cir. 2007)). "Multiple lawyers, working together, may lead to more efficiency and reduced costs" and "[a]s long as the meetings are appropriate and necessary and the billing is reasonable, the court will not exclude the hours." *Id.* Here, plaintiff was required to engage in extensive discovery and prepare for an evidentiary hearing within a matter of months. It was reasonable for UCB to involve a number of attorneys and other staff to work on these issues, and of course, this requires intra-firm communication. We do not find that UCB counsel's time conferring with one another was excessive or unreasonable in any way.

### 3. Plaintiff's Counsel Did Not Provide Actual Billing Records

Defendants also object to the fee petition on the grounds that plaintiff did not produce actual billing records. Instead, plaintiff provided this Court with summaries of its billing records along with an affidavit, attesting to the veracity of the summaries. Plaintiff also explained that it did not file actual billing records because these records included privileged information and attorney time that did not relate to the sanctions motions. UCB offered to provide the Court with copies of any billing records for an *in camera* review if necessary. We agree with plaintiff that it was not required to provide the Court with actual billing records, and we found the billing summaries adequate for purposes of resolving the fee petition.

### 4. Costs Incurred for Expert Susan Cheng

Finally, defendants object to the $7,425 in costs and expenses incurred for plaintiff's expert witness, Ms. Susan Cheng, arguing that Ms. Cheng's testimony was

unnecessary. Again, we disagree. As part of its sanctions motion, UCB was required to prove that it was prejudiced by the loss of the evidence. UCB believes that the warehouse server contains evidence that defendants overstated their inventory (the collateral for the loans at issue in the complaint) and engaged in accounting fraud, all of which would be defenses to defendants' affirmative defenses and counterclaim. Ms. Cheng testified that there were significant discrepancies in the accounting records of defendants and one of its customers. This testimony is directly relevant to the issue of prejudice. As a result, we believe that plaintiff should be reimbursed for the costs and expenses incurred in connection with Ms. Cheng's testimony.

## III. CONCLUSION

For the foregoing reasons, we grant UCB's fee petition in part and award UCB $322,416.84 in fees and costs incurred in connection with the motion for sanctions.

ENTERED:

_____

MICHAEL T. MASON
United States Magistrate Judge

Dated: April 23, 2012